United States Department of Justice
Office of the United States Trustee
1100 Commerce Street, Room 976
Dallas, TX   75242
(214) 767-1079
Meredyth A. Kippes, Trial Attorney
State Bar No. 24007882

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Case No.   25-80121-mvl11 |
| | § | |
| **HIGHER GROUND EDUCATION, INC.,** | § | (Jointly Administered) |
| et al., | § | |
| | § | Chapter 11 |
| *Debtors-in-Possession*. | § | |

### United States Trustee's Objection to Debtors' Motion for Entry of an Order (I) Authorizing and Approving Assumption of the Restructuring Support Agreement, and (II) Granting Related Relief
### (Docket Entry No. 93)

TO THE HONORABLE MICHELLE V. LARSON,
UNITED STATES BANKRUPTCY JUDGE:

Lisa L. Lambert, the United States Trustee for Region 6 (the "United States Trustee"), files this Objection (the "Objection") to the *Debtors' Motion for Entry of an Order (I) Authorizing and Approving Assumption of the Restructuring Support Agreement, and (II) Granting Related Relief (the "RSA Motion," Docket Entry No. 93)* by the above-captioned debtors and represents the following:

### Summary

The United States Trustee objects to the RSA Motion for two reasons:  **(i)** The Restructuring Support Agreement (the "RSA") specifies terms whereby a reorganization plan was

to be adopted outside of the context of a chapter 11 plan in contravention of Fifth Circuit authority. **(ii)** Any order approving the RSA Motion should make clear that no party, other than the parties to the RSA, are bound by the RSA and that all objections to any plan of reorganization are preserved. Accordingly, the United States Trustee requests that the Court enter an order denying assumption of the RSA Motion. Furthermore, to the extent that the RSA describes a plan the terms of which have changed based upon negotiations and mediation with the Unsecured Creditors' Committee (the "UCC"), assumption of the RSA, even if otherwise appropriate, is moot because the RSA relates to a plan that has been amended.

## Background

1. The above-captioned Debtors filed their voluntary chapter 11 petitions on June 17 and June 18, 2025.

2. The RSA is dated June 17, 2025. *See RSA Motion, Exhibit B*.

3. The Debtors filed their plan (the "Plan," Docket Entry No. 94) on June 26, 2025.

4. The Debtors filed their disclosure statement (the "Disclosure Statement," Docket Entry No. 97) on June 27, 2025.

5. The UCC was appointed by the United States Trustee on July 8, 2025.

6. After several months of negotiations with 2HR Learning, Inc. ("2HR") and Guidepost Global Education, Inc. ("GG"), the Debtors proposed the RSA, which put in place the framework for a plan of reorganization and potential exit financing. The RSA Motion was filed on June 26, 2025. The RSA is described on pages 6 through 10 of the RSA Motion.

7. The Plan Sponsor under the RSA is 2HR.

8. Parties to the Restructuring Support Agreement (the "RSA") are as follows (collectively the "RSA Parties"):

    a. the Debtors;

    b. 2HR Learning, Inc. ("2HR"), as proposed plan sponsor;

    c. YYYYY, LLC ("Five Y"), as senior DIP financing lender;

    d. Guidepost Global Education, Inc. ("GG"), as junior DIP financing lender;

    e. Learn Capital Venture Partners IV, L.P. ("Learn");

    f. Cosmic Education America Limited ("Cosmic");

    g. Venn Growth GP Limited LP ("Venn");

    h. Venture Lending & Leasing IX, Inc. ("Venture");

    i. WTI Fund X, Inc., ("WTI");

    j. Yu Capital LLC ("Yu Capital");

    k. YuATI LLC ("YuATI");

    l. YuFICB LLC ("YuFICB");

    m. YuHGE A LLC ("YuHGE A");

    n. NTRC Equity Partners LP ("NTRC");

    o. Ramandeep Girn ("Mr. Girn"); and

    p. Rebecca Girn ("Mrs. Girn").

9. Mr. Girn is the Debtors' co-founder and former CEO. Mrs. Girn is the Debtors' co-founder and former CFO. *See* Disclosure Statement, Article II, page 2.

10. The Plan collectively defines Mr. and Mrs. Girn as "Girn." *See* Plan, Article I, section 1.1.15, p. 8.

11. The Plan is attached as Exhibit A to the RSA.

12. The RSA Motion provides that the RSA Parties will support confirmation of the Plan in substantially the form attached as Exhibit A to the RSA. The RSA specifies treatment of

different classes of creditors under the Plan. Thus, the RSA bakes in the Plan terms in toto, including treatment of creditor classes under the Plan.

13. Article II of the Plan sets forth the following classes of claims:

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1: | Bridge CN-3 Secured Lender Claim | Impaired | Entitled to Vote |
| Class 2: | WTI Secured Lender Claim | Impaired | Entitled to Vote |
| Class 3 | CN Note Claims | Impaired | Entitled to Vote |
| Class 4: | Other Secured Claims | Unimpaired | Deemed to Accept; Not Entitled to Vote |
| Class 5: | Non-Tax Priority Claims | Unimpaired | Deemed to Accept; Not Entitled to Vote |
| Class 6: | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 7: | Intercompany Claims | Impaired | Deemed to Reject; Not Entitled to Vote |
| Class 8: | Equity | Impaired | Deemed to Reject; Not Entitled to Vote |
| Class 9: | Subsidiary Equity Interests | Unimpaired | Deemed to Accept; Not Entitled to Vote |

14. Paragraph 11 of the RSA Motion states that, with the exception of former insider Mr. Girn, who will receive $500,000.00, on account of his Bridge CN-3 claim, "the Plan provides that the RSA Parties are waiving their rights to Plan distributions in an effort to ensure some recoveries for the Debtors' unsecured creditors" (the "RSA Parties Claim Waiver"). The Debtor assert that without the RSA Parties Claim Waiver, the unsecured creditors would receive nothing under the Plan as proposed. *See RSA Motion, ¶11.*

15. But the RSA Parties Claim Waiver comes with conditions. Class 3 claimants (CN Note Claims) only receive a distribution under the Plan if Class 3 accepts the Plan. Similarly, Class 6 claimants (General Unsecured Claims) only receive a distribution under the Plan if Class 6 accepts the Plan. *See Plan, Article III.*

16. Distributions to Class 3 and Class 6 are further complicated by the Junior Class Distribution Formula.

17. The Junior Class Distribution Formula is defined in Article I, Section 1.1.72 of the Plan:

> 1.1.72 "Junior Class Distribution Formula" means, (a) if both Class 3 and Class 6 vote to accept the Plan, then following distributions on account of all Allowed Class 5 Claims, the Class 2 distribution shall be contributed to Class 3 and Class 6 on a *pari passu* basis in proportion to their Allowed Claims, excluding Allowed Claims held by the Released Parties (except as otherwise expressly set forth in this Plan); and (b) if only one of Class 3 and Class 6 vote to accept the Plan, then the Class 2 distribution shall be contributed exclusively to such accepting Class. For the avoidance of doubt, if Class 3 or Class 6 does not vote to accept the Plan, then such Class is not entitled to the Class 2 distribution.

18. Class 5 Claims consist of the Non-Tax Priority Claims.[1] No dollar amount of the claims is included in the description of Class 5 treatment. The Plan provides that Class 5 shall be paid in full as soon as reasonably practicable after the Effective Date of the Plan. *See Plan, Article 3, section 3.11*.

19. Class 2 (WTI Secured Lender Claim) provides that "in the event that Class 3 or Class 6 accepts the Plan, the Holders of WTI Secured Lenders Claim [sic] agree that, following distributions on account of Allowed Class 5 Claims, the WTI Secured Lenders' distributions shall instead be distributed for the benefit of Holders of Allowed Class 3 and/or Class 6 Claims pursuant to the Junior Class Distribution Formula."

20. Accordingly, no Class 3 or Class 6 claimant will receive any distribution under the Plan until the Class 5 Claims are paid in full out. If Class 5 exhausts the distributions to which Class 2 would be entitled, Class 3 and/or Class 6 would receive nothing under the Plan, even if those classes accepted the Plan.

21. Next, section 10.3 of the Plan, Releases by Releasing Parties includes a broad third party release (the "Third Party Release"), which releases the following parties:

---

[1] The definition of Non-Tax Priority Claim excluded Administrative Expense Claims and Priority Tax Claims.

> 1.1.102    "Released Parties" means each of, and in each case in their capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) 2HR Learning, Inc., including without limitation in its capacities as Plan Sponsor; (d) YYYYY, LLC, including without limitation in its capacity as Senior DIP Lender; (e) Guidepost Global, including without limitation in its capacity as Junior DIP Lender; (f) Learn Capital, LLC; (g) Yu Capital; (h) WTI; (i) Girn; (j) Venn; (k) the Releasing Parties; (l) all Holders of Claims or Interests who do not affirmatively opt out of the releases provided by this Plan; (m) each current and former Affiliates of each Entity in clause (a) through the following clause (l); and each Related Party of each Entity in clause (a) through (l); provided that, in each case, an Entity shall not be a Released Party if it: (x) elects to opt out of the releases contained in Article 10.3 hereof or (y) timely objects to the releases contained in Article 10.3 hereof and such objection is not resolved before Confirmation.

See Plan, Article I, Section 1.1.102, definition of Released Parties.

22.    The definition of "Releasing Parties," Article I, Section 1.1.103 is similarly broad, which, beyond the named parties includes "(k) all Holders of Claims or Interests that vote to accept or reject this Plan and who do not affirmatively opt out of the releases by timely completing and submitting the Opt-Out Form before the Voting Deadline; (l) all Holders of Claims or Interests that are deemed to accept or reject this Plan and who do not affirmatively opt out of the releases by timely completing and submitting the Opt-Out Form before the Voting Deadline; (m) all Holders of Claims or Interests who abstain from voting on this Plan and who do not affirmatively opt out of the releases by timely completing and submitting the Opt-Out Form before the Voting Deadline; (n) current and former Affiliates of each entity in clause (a) through the following clause (m) for which such Entity is legally entitled to bind such Affiliates to the releases contained in this Plan under applicable Law or that have otherwise received proper notice of this Plan; and (o) each Related Party of each Entity in clause (a) through this clause (m) for which such Entity is legally entitled to bind such Related Party to the releases contained in this Plan under applicable Law or that have otherwise received proper notice of this Plan."

23. The Third Party Release is broad including direct and derivative claims, including derivative claims assertable on behalf of the Debtors, the Reorganized Debtors, and their Estates (thus, potentially hamstringing the UCC's ability to obtain derivative standing to pursue estate causes of action).

24. Further, while paragraph 9 of the RSA Motion describes a fiduciary out for the Debtors, the conditions surrounding when the Debtors may terminate the RSA, and thus exercise their fiduciary out, described in paragraph 15 of the RSA Motion throw up hurdles to the Debtors' exercise of that fiduciary out. The United States Trustee understands that language to resolve this issue has been negotiated between the Debtors and the UCC. As of the filing of this objection, the United States Trustee has not seen that language.

25. Upon information and belief, the UCC and the Debtors engaged in mediation on August 19-20, 2025 concerning the terms of the Plan. At the time of the filing of this Objection, the United States Trustee unaware of whether an agreement has been reached or the terms of any such agreement.

## Argument and Authority

### The Court should deny to approve the assumption of the RSA Motion because it deprives creditors of substantive rights under a plan process.

26. The Debtors argue that the RSA should assumed under 11 U.S.C. § 365. Indeed, the Debtors describe assumption of the RSA as "critical" in the RSA Motion, paragraph 8. The RSA locks-in plan terms and makes it difficult for the Debtors to consider or pursue other reorganization options or exercise its fiduciary out. Upon its execution on June 17, 2025, the RSA constituted a plan to do a plan. Once the Plan was filed, the Plan confirmation process governs approval of the terms of the Plan agreed to under the RSA. Assumption of the RSA serves no purpose other than to obtain this Court's pre-approval of the Plan terms.

27. A transaction that "attempts to specify the terms whereby a reorganization plan is to be adopted" requires the reviewing court to "scale the hurdles erected in Chapter 11." *Pension Benefit Guaranty Corp. et al. v. Braniff Airways, Inc., (In re Braniff, Inc.)*, 700 F.2d 935, 940 (5th Cir. 1983) (declining to approve a sale that, among other things, provided for significant restructuring of the rights of the debtor's creditor, compromises of claims, and releases for the debtor, its secured creditors, and its officers and directors) ("*Braniff*"). Such motions deprive creditors of their substantive rights under section 1125 (disclosure statement requirements), section 1126 (voting requirements), section 1129(a)(7) (best interest of creditors test), and 1129(b)(2)(B)(ii) (the absolute priority rule). *Cf. In re Institut'l Creditors of Continental Air Lines, Inc. v. Continental Air Lines, Inc. (In re Continental Air Lines, Inc.)*, 780 F.2d 1223, 1227 (5th Cir. 1986) ("*Continental*"). Accordingly, the Court should decline to approve the RSA.

28. Given that the parties to the RSA are bound by the RSA, assumption of the RSA would only serve to obtain this Court's blessing of a prepetition agreement that locks in plan treatment for creditors and other interest holders who had no involvement in the negotiation of the RSA and, therefore, no say in the terms of the Plan, which the RSA dictates.

29. The confirmation hearing and the plan process are the appropriate mechanisms for approval of plan treatment by this Court. Assumption of the RSA would give this Court's imprimatur to the Plan terms – by way of approval of an RSA that dictates the Plan terms – without creditors and other interest holders having the opportunity to evaluate the merits of the Plan and vote on whether to accept or reject the Plan.

30. Further conditioning payment for Classes 3 and 6 upon those classes accepting the Plan creates a deathtrap for those classes. And, even if Classes 3 and 6 accept the Plan, they would

not be entitled to a distribution until Class 5 is paid in full. The Court should not approve the assumption of an agreement, the RSA, that locks in such creditor treatment.

31. The restrictions in the RSA on termination of the RSA by the Debtors hampers the Debtors' ability to exercise their fiduciary duty to accept better offers should they come along, notwithstanding the fiduciary out language.

32. Further, to the extent that the mediation and negotiations between the Debtors and the UCC result in changes to the Plan, assumption of the RSA, even if otherwise appropriate, would be moot because the RSA relates to a plan that has been amended.

33. Finally, in the alternative, should the Court determine to approve assumption of the RSA, any order approving assumption of the RSA should specify that only the parties to the RSA are bound by the RSA and that all parties in interests' right to object to the Plan and the Disclosure Statement on any grounds are preserved.

Wherefore, for the reasons stated herein, the Court should deny to approve the assumption of the RSA Motion and grant to the United States Trustee such other and further relief as is just and proper.

DATED: August 25, 2025

Respectfully submitted,

LISA L. LAMBERT
UNITED STATES TRUSTEE

*/s/ Meredyth A. Kippes*
Meredyth A. Kippes
Trial Attorney
Texas State Bar No. 24007882
Office of the United States Trustee
1100 Commerce Street, Room 976
Dallas, Texas  75242
(214) 767-1079
meredyth.kippes@usdoj.gov

## Certificate of Service

      I certify that on August 25, 2025 copies of the foregoing document were served via ECF to those parties requesting service via ECF in this case and to the parties listed below via electronic mail.

                                                          */s/ Meredyth A. Kippes*
                                                          Meredyth A. Kippes

Holland N. O'Neil
FOLEY & LARDNER LLP
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
honeil@foley.com

Timothy C. Mohan
FOLEY & LARDNER LLP
1144 15th Street, Suite 2200
Denver, CO 80202
tmohan@foley.com

Nora J. McGuffey
Quynh-Nhu Truong
FOLEY & LARDNER LLP
1000 Louisiana Street, Suite 2000
Houston, TX 77002
nora.mcguffey@foley.com
qtruong@foley.com

Jason S. Brookner
Aaron M. Kaufman
Amber M. Carson
Emily F. Shanks
GRAY REED
1601 Elm Street, Suite 4600
Dallas, Texas 75201
jbrookner@grayreed.com
akaufman@grayreed.com
acarson@grayreed.com
eshanks@grayreed.com