

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

*Michelle V. Larson*

**Signed November 26, 2025**

_____
**United States Bankruptcy Judge**

---

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| Higher Ground Education, Inc., *et al.*,[1] | § | Case No.: 25-80121-11 (MVL) |
| | § | |
| Debtor. | § | (Jointly Administered) |
| | § | |

### ORDER (I) APPROVING THE DEBTORS' DISCLOSURE STATEMENT AND (II) CONFIRMING THE MODIFIED SECOND AMENDED JOINT PLAN OF REORGANIZATION OF HIGHER GROUND EDUCATION, INC., ITS AFFILIATED DEBTORS, AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal identification number, are: Higher Ground Education Inc. (7265); Guidepost A LLC (8540); Prepared Montessorian LLC (6181); Terra Firma Services LLC (6999); Guidepost Birmingham LLC (2397); Guidepost Bradley Hills LLC (2058); Guidepost Branchburg LLC (0494); Guidepost Carmel LLC (4060); Guidepost FIC B LLC (8609); Guidepost FIC C LLC (1518); Guidepost Goodyear LLC (1363); Guidepost Las Colinas LLC (9767); Guidepost Leawood LLC (3453); Guidepost Muirfield Village LLC (1889); Guidepost Richardson LLC (7111); Guidepost South Riding LLC (2403); Guidepost St Robert LLC (5136); Guidepost The Woodlands LLC (6101); Guidepost Walled Lake LLC (9118); HGE FIC D LLC (6499); HGE FIC E LLC (0056); HGE FIC F LLC (8861); HGE FIC G LLC (5500); HGE FIC H LLC (8817); HGE FIC I LLC (1138); HGE FIC K LLC (8558); HGE FIC L LLC (2052); HGE FIC M LLC (8912); HGE FIC N LLC (6774); HGE FIC O LLC (4678); HGE FIC P LLC (1477); HGE FIC Q LLC (3122); HGE FIC R LLC (9661); LePort Emeryville LLC (7324); AltSchool II LLC (0403). The Debtors' mailing address is 1321 Upland Dr. PMB 20442, Houston, Texas 77043.

4899-9946-3287.10

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**") having:[2]

a.   commenced, on June 17, 2025 and June 18, 2025 (collectively, the "**Petition Date**"), these chapter 11 cases (the "**Chapter 11 Cases**") by filing voluntary petitions in the United States Bankruptcy Court for the Northern District of Texas (the "**Bankruptcy Court**") for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and the Local Rules of the United States Bankruptcy Court for the Northern District of Texas (the "**Local Rules**");

b.   Filed,[3] on June 18, 2025, the *Declaration of Jonathan McCarthy in Support of First Day Motions* [Docket No. 15], detailing the facts and circumstances of these Chapter 11 Cases;

c.   continued to operate their business and manage their properties as debtors in possession in accordance with sections 1107(a) and 1108 of the Bankruptcy Code;

d.   Filed, on June 18, 2025, the *Debtors' Emergency Motion for Entry of an Order (I) Authorizing the Debtors to Serve a Consolidated List of Creditors; (II) Authorizing the Debtors to Redact Certain Personal Identification Information; (III) Approving the Form and Manner of Notifying Creditors of the Commencement of the Debtors' Chapter 11 Cases and Bar Dates; and (IV) Granting Related Relief* [Docket No. 5];

e.   obtained, on June 20, 2025, entry of the *Order (I) Authorizing the Debtors to Serve a Consolidated List of Creditors; (II) Authorizing the Debtors to Redact Certain Personal Identification Information; (III) Approving the Form and Manner of Notifying Creditors of the Commencement of the Debtors' Chapter 11 Cases and Bar Dates; and (IV) Granting Related Relief* [Docket No. 57] (the "**Bar Date Order**");

f.   Filed, on June 26, 2025 and June 27, 2025, (i) the *Joint Plan of Reorganization of Higher Ground Education, Inc. and Its Affiliated Debtors* [Docket No. 94] and (ii) the *Disclosure Statement for the Joint Plan of Reorganization of Higher Ground Education, Inc. and Its Affiliated Debtors* [Docket No. 97];

---

[2]   Capitalized terms used but not otherwise defined in these findings of fact, conclusions of law, and order (collectively, the "**Confirmation Order**") have the meanings given to them in the *Modified Second Amended Joint Plan of Reorganization of Higher Ground Education, Inc., Its Affiliated Debtors, and the Official Committee of Unsecured Creditors*, attached hereto as **Exhibit A** (as may be amended, supplemented, or otherwise modified from time to time, and including all exhibits and supplements thereto, the "**Plan**"). The rules of interpretation set forth in Article 1.2.2 of the Plan apply to this Confirmation Order.

[3]   Unless otherwise indicated, use of the term "Filed" herein refers also to the service of the applicable document filed on the docket in these Chapter 11 Cases, as applicable.

g.      Filed, on June 27, 2025, the *Debtors' Motion for Entry of an Order (I) Conditionally Approving the Disclosure Statement; (II) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing; (III) Establishing a Plan and Disclosure Statement Objection Deadline and Related Procedures; (IV) Approving the Solicitation and Notice Procedures; and (V) Granting Related Relief* [Docket No. 98];

h.      caused the Bar Date Order to be published in *The Wall Street Journal* (national edition) on June 26, 2025, as evidenced by the *Proof of Publication* [Docket No. 106];

i.      Filed, on October 6, 2025, (i) the *First Amended Joint Plan of Reorganization of Higher Ground Education, Inc., Its Affiliated Debtors, and the Official Committee of Unsecured Creditors* [Docket No. 528] and (ii) the *First Amended Disclosure Statement for the First Amended Joint Plan of Reorganization of Higher Ground Education, Inc., Its Affiliated Debtors, and the Official Committee of Unsecured Creditors* [Docket No. 530];

a.      Filed, on October 6, 2025, the *Notice of Filing of Revised Proposed Order (I) Conditionally Approving the Disclosure Statement; (II) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing; (III) Establishing a Plan and Disclosure Statement Objection Deadline and Related Procedures; (IV) Approving the Solicitation and Notice Procedures; and (V) Granting Related Relief* [Docket No. 531];

b.      Filed, on October 13, 2025, the (i) the *Second Amended Joint Plan of Reorganization of Higher Ground Education, Inc., Its Affiliated Debtors, and the Official Committee of Unsecured Creditors* [Docket No. 549] and (ii) the *Second Amended Disclosure Statement for the Second Amended Joint Plan of Reorganization of Higher Ground Education, Inc., Its Affiliated Debtors, and the Official Committee of Unsecured Creditors* [Docket No. 551] (the "**Disclosure Statement**");

c.      Filed, on October 13, 2025, the *Notice of Filing of Further Revised Proposed Order (I) Conditionally Approving the Disclosure Statement; (II) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing; (III) Establishing a Plan and Disclosure Statement Objection Deadline and Related Procedures; (IV) Approving the Solicitation and Notice Procedures; and (V) Granting Related Relief* [Docket No. 552];

d.      obtained, on October 15, 2025, entry of the *Order (I) Conditionally Approving the Disclosure Statement; (II) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing; (III) Establishing a Plan and Disclosure Statement Objection Deadline and Related Procedures; (IV) Approving the Solicitation and Notice Procedures; and (V) Granting Related Relief* [Docket No. 568] (the "**Solicitation Motion Order**"), approving the Disclosure Statement and approving: (i) the related solicitation and voting procedures (the "**Solicitation**

**and Voting Procedures**"), and (ii) the related notices, including the Notice of Non-Voting Status, forms (including the opt out form attached to the Ballots or Notice of Non-Voting Status, the "**Opt Out Forms**"), letter from the Committee and Ballots (collectively, the "**Solicitation Packages**");

e.  caused the Solicitation Packages, including the *Notice of (I) Hearing on the Disclosure Statement and Confirmation of the Joint Chapter 11 Plan of Reorganization of the Debtors and the Committee, (II) Deadline to Cast Votes to Accept or Reject the Plan and (III) Objection and Opt Out Right* (the "**Combined Notice**") to be served on October 17, 2025, in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the *Procedures for Complex Chapter 11 Bankruptcy Cases* for the United States Bankruptcy Court for the Northern District of Texas, the Solicitation Motion Order, and the Solicitation and Voting Procedures, as evidenced by the *Certificate of Service* [Docket No. 619] (together with all the exhibits thereto, the "**Solicitation Affidavit**");

f.  caused the Combined Hearing Notice to be published in *The Wall Street Journal* (national edition) on October 17, 2025, as evidenced by the *Proof of Publication* [Docket No. 623], (the "**Publication Affidavit**," and together with the Solicitation Affidavit, the "**Affidavits**");

g.  Filed, on November 10, 2025, the *Notice of Filing of Initial Plan Supplement* [Docket No. 631] (as it may be amended, the "**Plan Supplement**");

h.  Filed, on November 14, 2025, the *Notice of Filing of Amended Plan Supplement* [Docket No. 634];

i.  Filed, on November 20, 2025, the *Modified Second Amended Joint Plan of Reorganization of Higher Ground Education, Inc., Its Affiliated Debtors, and the Official Committee of Unsecured Creditors* [Docket No. 649] (as it may be amended or supplemented, the "**Plan**");

j.  Filed, on November 20, 2025, the *Declaration of Adam Gorman with respect to the Tabulation of Votes on the Modified Second Amended Joint Plan of Reorganization of Higher Ground Education, Inc., Its Affiliated Debtors, and the Official Committee of Unsecured Creditors* [Docket No.652] (the "**Voting Report**");

k.  Filed, on November 21, 2025, *Declaration of Marc Kirshbaum in Support of Confirmation of the Modified Second Amended Joint Plan of Reorganization of Higher Ground Education, Inc., Its Affiliated Debtors, and the Official Committee of Unsecured Creditors* [Docket No. 655] (the "**Kirshbaum Declaration**");

l.  Filed, on November 21, 2025, *Declaration of Sean Corwen in Support of Confirmation of the Modified Second Amended Joint Plan of Reorganization of Higher Ground Education, Inc., Its Affiliated Debtors, and the Official Committee of Unsecured Creditors* [Docket No. 653] (the "**Corwen Declaration**");

4899-9946-3287.10

m.    Filed, on November 21, 2025, the *Notice of Filing of Second Amended Plan Supplement* [Docket No. 654]; and

n.    Filed, on November 21, 2025, the *Debtors' Memorandum of Law in Support of (I) Final Approval of the Disclosure Statement for the Second Amended Joint Plan of Reorganization of Higher Ground Education, Inc., Its Affiliated Debtors, and the Official Committee of Unsecured Creditors; and (II) Confirmation of the Third Amended Joint Plan of Reorganization of Higher Ground Education, Inc., Its Affiliated Debtors, and the Official Committee of Unsecured Creditors* [Docket No. 656] (the "**Confirmation Brief**"); and

This Bankruptcy Court having:

a.    entered, on October 15, 2025, the Solicitation Motion Order conditionally approving, among other things, the Disclosure Statement as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code;

b.    set November 17, 2025, at 5:00 p.m. (prevailing Central Time) as the deadline for relevant parties to vote on the Plan (the "**Voting Deadline**");

c.    set November 17, 2025, at 5:00 p.m. (prevailing Central Time) as the deadline for Filing objections to confirmation of the Plan (the "**Objection Deadline**");

d.    set November 24, 2025, at 1:30 p.m. (prevailing Central Time) as the date and time for the Combined Hearing, pursuant to sections 1125, 1126, 1128, and 1129 of the Bankruptcy Code and Bankruptcy Rules 3017 and 3018, as set forth in the Solicitation Motion Order;

e.    reviewed the (i) Plan, (ii) the Disclosure Statement, (iii) the Solicitation Motion, (iv) the Solicitation Motion Order, (v) the Solicitation Packages, (vi) the Plan Supplement, (vii) the Confirmation Brief, (viii) the Kirshbaum Declaration, (ix) the Corwen Declaration, (x) the Affidavits, (xi) the Combined Notice, and (xii) all Filed pleadings, exhibits, statements, responses, and comments regarding confirmation of the Plan, including all objections, joinders, statements, and reservations of rights;

f.    considered the transactions incorporated and described in the Plan, including the Plan Supplement;

g.    held the Combined Hearing on November 24, 2025, at 1:30 p.m. (prevailing Central Time);

h.    heard the statements and arguments made by counsel in respect of Confirmation;

i.    considered all oral representations, testimony, documents, filings, exhibits, and other evidence regarding Confirmation;

5

j.    overruled (i) any and all objections to the Plan and to Confirmation, except as otherwise stated or indicated on the record, and (ii) all statements and reservations of rights not consensually resolved or withdrawn, unless otherwise indicated; and

k.    taken judicial notice of all pleadings and other documents Filed, all orders entered, and all evidence and arguments presented in these Chapter 11 Cases.

NOW, THEREFORE, it appearing to the Bankruptcy Court that the Combined Notice and the opportunity for any party in interest to object to final approval of the Disclosure Statement and Confirmation of the Plan having been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby, and the legal and factual bases set forth in the documents Filed in support of Confirmation of the Plan and other evidence presented at the Combined Hearing establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Bankruptcy Court makes and issues the following findings of fact and conclusions of law, and orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

**A.    Findings and Conclusions.**

1.    The findings and conclusions set forth herein and in the record of the Combined Hearing constitute the Bankruptcy Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014. To the extent any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

**B.    Jurisdiction, Venue, and Core Proceeding.**

2.    This Bankruptcy Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of whether the Disclosure Statement and the Plan comply with the applicable provisions of the Bankruptcy Code

6

constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). This Bankruptcy Court may

enter a final order consistent with Article III of the United States Constitution. Venue is proper in

this district pursuant to 28 U.S.C. §§ 1408 and 1409.

**C.**     **Eligibility for Relief.**

3.     The Debtors were and are Entities eligible for relief under section 109 of the

Bankruptcy Code, and the Debtors and the Committee are proper proponents of the Plan under

section 1121(a) of the Bankruptcy Code.

**D.**     **Commencement and Joint Administration of these Chapter 11 Cases.**

4.     On the Petition Date, each of the Debtors commenced a voluntary case under

chapter 11 of the Bankruptcy Code. In accordance with the *Order (I) Directing Joint*

*Administration of Chapter 11 Cases and (II) Granting Related Relief* [Docket No. 41], these

Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly

administered pursuant to Bankruptcy Rule 1015 and Local Rule 1015-1. The Debtors continue to

operate their business and manage their properties as debtors in possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in

these Chapter 11 Cases.

**E.**     **Appointment of the Committee.**

5.     On July 8, 2025, the U.S. Trustee appointed the official committee of unsecured

creditors pursuant to section 1102 of the Bankruptcy Code (the "**Committee**") [Docket No. 158]

to represent the interests of the Debtors' unsecured creditors in these Chapter 11 Cases. The current

members of the Committee are: (a) 214 E Hallandale Beach, LLC, (b) The School of Practical

Philosophy, (c) Sophiea Kim, Property Manager for Cathy Lim, (d) Pure Tempe Partnership, and

(e) RTS Orchards, LLC.

**F.      Judicial Notice.**

6.      The Bankruptcy Court takes judicial notice of (and deems admitted into evidence for purposes of final approval of the Disclosure Statement and Confirmation of the Plan) the docket of these Chapter 11 Cases maintained by the clerk of the Bankruptcy Court or its duly appointed agent, including all pleadings and other documents on file, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before the Bankruptcy Court during the pendency of these Chapter 11 Cases.

**G.      Plan Supplement.**

7.      The Debtors Filed the Plan Supplement on November 10, 2025, as amended on November 14, 2025, and November [●], 2025. The Plan Supplement (including as may be subsequently amended, supplemented, or otherwise modified from time to time in accordance with the Plan) complies with the Bankruptcy Code and the terms of the Plan, and the Debtors provided good and proper notice of the filing of the Plan Supplement in accordance with the Solicitation Motion Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and requirements. No other or further notice will be required with respect to the Plan Supplement or any of the documents contained therein or related thereto, unless any such documents are further modified. All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan. Subject to the terms of the Plan, and only consistent therewith, the Debtors reserve the right to alter, amend, update, or modify the Plan Supplement and any of the documents contained therein or related thereto pursuant to the terms of the Plan, this Confirmation Order, the Bankruptcy Code, and the Bankruptcy Rules.

**H.      Modifications to the Plan.**

8.      Pursuant to section 1127 of the Bankruptcy Code, the modifications to the Plan, and any additional modifications to the Plan described or set forth in this Confirmation Order

constitute technical or clarifying changes, changes with respect to particular Claims by agreement with Holders of such Claims, or modifications that do not otherwise materially and adversely affect or change the treatment of any other Claim or Interest under the Plan. These modifications are consistent with the disclosures previously made pursuant to the Disclosure Statement and the Solicitation Packages served pursuant to the Solicitation Motion Order and notice of these modifications was adequate and appropriate under the facts and circumstances of these Chapter 11 Cases.

9.      In accordance with Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes on the Plan under section 1126 of the Bankruptcy Code, and they do not require that Holders of Claims or Interests be afforded an opportunity to change previously cast votes accepting or rejecting the Plan. Accordingly, the Plan is properly before this Bankruptcy Court and all votes cast with respect to the Plan prior to such modifications shall be binding and shall apply with respect to the Plan.

**I.      Disclosure Statement**

10.     The Disclosure Statement contained (a) sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable nonbankruptcy laws, rules, and regulations, including the Securities Act, and (b) "adequate information" (as such term is defined in section 1125(a) of the Bankruptcy Code and used in section 1126(a) of the Bankruptcy Code) with respect to the Debtors, the Plan, and the transactions contemplated therein.  The filing of the Disclosure Statement satisfied Bankruptcy Rule 3016(b).  As such, the Disclosure Statement may be finally approved in conjunction with Confirmation of the Plan.

**J.      Solicitation Motion Order.**

11.     On October 15, 2025, the Bankruptcy Court entered the Solicitation Motion Order, setting November 17, 2025, at 5:00 p.m. (prevailing Central Time) as the deadline for (a) voting

to accept or reject the Plan and opt out of the Third-Party Release and (b) objecting to final approval of the Disclosure Statement and Confirmation of the Plan. The Debtors' use of the Combined Hearing process set forth in section 105(d)(2)(B)(vi) of the Bankruptcy Code was appropriate. The Debtors' use of the Disclosure Statement to solicit votes to accept or reject the Plan was authorized by the Solicitation Motion Order.

**K.      Burden of Proof—Confirmation of the Plan.**

12.      The Debtors and Committee, as proponents of the Plan, have met their burden of proving the applicable elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation. In addition, and to the extent applicable, the Plan is confirmable under the clear and convincing evidentiary standard. Each witness who testified on behalf of the Debtors in connection with Confirmation, including those who testified via written declaration, was credible, reliable, and qualified to testify as to the topics addressed in his or her testimony.

**L.      Notice.**

13.      As evidenced by the Affidavits and the Voting Report, the Debtors provided due, adequate, and sufficient notice of the commencement of these Chapter 11 Cases, the Plan (and the opportunity to opt out of the Third-Party Release), the Disclosure Statement, the Combined Hearing, the Plan Supplement, the Objection Deadline, and all other materials distributed by the Debtors in connection with Confirmation in compliance with the Bankruptcy Code, the Bankruptcy Rules, including Bankruptcy Rules 2002(b), 3017, 3019, and 3020(b), the Local Rules, and the procedures set forth in the Solicitation Motion Order. Further, the Combined Notice was published in *The Wall Street Journal* (national edition) on October 17, 2025, in accordance with Bankruptcy Rule 2002(l) and the Solicitation Motion Order. Such notice was adequate and sufficient under the facts and circumstances of these Chapter 11 Cases and was made in

compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Solicitation Motion Order. No other or further notice is or shall be required.

**M.    Solicitation.**

14.    As described in the Voting Report, distribution of the Disclosure Statement and the solicitation of votes on the Plan complied with the Solicitation and Voting Procedures, were appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, and complied with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable rules, laws, and regulations, including the registration requirements under the Securities Act.

15.    As described in the Voting Report and the Solicitation Affidavits, as applicable, the Solicitation Packages, including the Opt-Out Forms, were transmitted and served, including to all Holders in the Voting Classes (defined below), in compliance with the Bankruptcy Code, including sections 1125 and 1126 thereof, the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Local Rules, the Solicitation Motion Order, and any applicable nonbankruptcy law. Transmission and service of the Solicitation Packages was timely, adequate, and sufficient under the facts and circumstances of these Chapter 11 Cases. No further notice is required.

16.    As set forth in the Voting Report, the Solicitation Packages were distributed to Holders of Claims in Voting Class 1, 2, 3, 4, 5, and 8 that held a Claim or Interest as of September 1, 2025 (the "**Voting Record Date**"), as set by the Solicitation Motion Order. The establishment and notice of the Voting Record Date was reasonable and sufficient.

17.    The period during which the Debtors solicited acceptances of, or rejections to, the Plan was a reasonable and sufficient period of time for each Holder in the Voting Classes to make an informed decision to accept or reject the Plan.

4899-9946-3287.10

18.     Under section 1126(f) of the Bankruptcy Code, Holders of Claims in Class 6 (Other Secured Claims) and Class 7 (Non-Tax Priority Claims) (collectively, the "**Unimpaired Classes**") are Unimpaired and conclusively deemed to have accepted the Plan. The Debtors were not required to solicit votes from the Holders of Claims and Interests in Class 9 (Intercompany Claims), Class 10 (Equity), and Class 11 (Subsidiary Equity Interests) (the "**Deemed Rejecting Classes**," and together with the "Unimpaired Classes," the "**Non-Voting Classes**"), which were Impaired and deemed to reject the Plan under the Bankruptcy Code.

19.     Holders of Claims and Interests in Class 1 (Bridge CN-3 Secured Lender Claim), Class 2 (WTI Secured Lender Claim), Class 3 (CN-1 Note Claims), Class 4 (CN-2 Note Claims), Class 5 (CN-3 Note Claims), and Class 8 (General Unsecured Claims) (collectively, the "**Voting Classes**") are impaired and are entitled to vote to accept or reject the Plan.

20.     The Debtors served the Combined Hearing Notice on the Debtors' full creditor matrix and served the Notice of Non-Voting Status on all Non-Voting Classes. The Combined Hearing Notice adequately informed Holders of Claims or Interests of critical information regarding voting on (if applicable) and objecting to the Plan, including deadlines and the inclusion of release, exculpation, and injunction provisions in the Plan, and adequately summarized the terms of the Third-Party Release. Further, because the Opt-Out Form was included in both the Ballots and the applicable Notice of Non-Voting Status, every known stakeholder, including the Holders of Claims and Interests in all Classes, was provided with the means by which the stakeholders could opt out of the Third-Party Release, including via email which was reasonable and appropriate under the circumstances.

**N.     Voting.**

21.     As evidenced by the Voting Report, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in compliance with the Bankruptcy Code, the

Bankruptcy Rules, the Local Rules, the Disclosure Statement, the Solicitation Motion Order, and any applicable non-bankruptcy law, rule, or regulation. Based on the foregoing, and as evidenced by the Voting Report, at least one Impaired Class of Claims (excluding the acceptance by any insiders of the Debtors) has voted to accept the Plan in accordance with the requirements of sections 1124, 1126 and 1129 of the Bankruptcy Code.

**O.      Bankruptcy Rule 3016.**

22.      The Plan and all modifications thereto were dated and identified the Entities submitting such modification, thus satisfying Bankruptcy Rule 3016(a). The Debtors appropriately filed the Disclosure Statement and the Plan with the Court, thereby satisfying Bankruptcy Rule 3016(b). The injunction, release, and exculpation provisions in the Disclosure Statement and the Plan describe, in bold font and with specific and conspicuous language, all acts to be enjoined, released, and exculpated and identify the Entities that will be subject to the injunction, releases, and exculpations, thereby satisfying Bankruptcy Rule 3016(c).

**P.      The Plan Complies with the Requirements of Section 1129 of the Bankruptcy Code.**

23.      The Plan complies with all applicable provisions of the Bankruptcy Code, including sections 1122 and 1123 thereof, as required by section 1129(a)(1) of the Bankruptcy Code.

*(ii)      Sections 1122 and 1123—Proper Classification.*

24.      Article 2 of the Plan provides for the separate classification of Claims and Interests into eleven Classes. Valid business, factual, and legal reasons exist for the separate classification of such Classes of Claims and Interests. The classifications reflect no improper purpose and do not unfairly discriminate between, or among, Holders of Claims or Interests. Each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class. Accordingly, the Plan satisfies the requirements of sections 1122(a) and 1123(a)(1) of the Bankruptcy Code.

### (iii)    *Section 1123(a)(2)—Specified Unimpaired Classes.*

25.    Article 3 of the Plan specifies that Claims, as applicable, in the Classes 6 and 7 are Unimpaired under the Plan within the meaning of section 1124 of the Bankruptcy Code. Holders of Claims or Interests in Classes 6 (Other Secured Claims) and 7 (Non-Tax Priority Claims) are Unimpaired and conclusively presumed to have accepted the Plan and are not entitled to vote to accept or reject the Plan. Additionally, Article 3 of the Plan specifies that Allowed Administrative Claims, Allowed Professional Fee Claims, Allowed Priority Tax and Secured Tax Claims, Statutory Fees, the Allowed Senior DIP Lender Claim, and the Junior DIP Lender Claim will be paid in accordance with the terms of the Plan, although these Claims are not classified under the Plan. Accordingly, the Plan satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code.

### (iv)    *Section 1123(a)(3)—Specified Treatment of Impaired Classes.*

26.    Article 3 of the Plan specifies that Claims and Interests, as applicable, in the Classes 1, 2, 3, 4, 5, 8, 9, 10, and 11 (collectively, the "**Impaired Classes**") are Impaired under the Plan within the meaning of section 1124 of the Bankruptcy Code and describes the treatment of such Classes. Accordingly, the Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code.

### (v)    *Section 1123(a)(4)–No Discrimination.*

27.    The Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest. Accordingly, the Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

4899-9946-3287.10

### (vi)    *Section 1123(a)(5)—Adequate Means for Plan Implementation.*

28.    The provisions in Article 4 and elsewhere in the Plan, together with the exhibits and attachments to the Plan (including the Plan Supplement), provide, in detail, adequate and proper means for the Plan's implementation, including regarding: (a) the funding and sources of consideration for Plan distributions; (b) the global settlement between the Debtors, the Committee, and the Settlement Parties; (c) the establishment and creation of the Liquidating Trust, the execution of the Liquidating Trust Agreement, the appointment of the Liquidating Trustee, and the transfer of the Liquidating Trust Assets to the Liquidating Trust; (d) the preservation of the Debtors' Retained Causes of Action and respective assignment of certain causes of action to the Liquidating Trust; (e) the authorization and issuance of Reorganized HGE Common Stock; (f) the contribution of Guidepost Global Assets to Reorganized HGE for its benefit and for the benefit of the Plan Sponsor; (g) the transfer of the Designated EB-5 Entities (except for their assets unless otherwise specified in the Plan Supplement) to Guidepost Global; (h) the cancellation of Equity in the Debtors identified in the Plan Supplement; (i) the release of Liens with respect to any of the Debtors' Property; (j) the vesting of assets in Reorganized HGE (with the exception of the Liquidating Trust Assets transferred or issued to the Liquidating Trust); (k) providing for the exemption of certain securities law matters; (l) the authorization and approval to dissolve certain Debtors; and (m) the effectuation and implementation of documents and further transactions. Accordingly, the Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.

### (vii)    *Section 1123(a)(6)—Voting Power of Equity Securities.*

29.    Article 5.1 of the Plan provides that Reorganized HGE's Corporate Documents will comply with section 1123(a)(6) of the Bankruptcy Code. The Corporate Documents prohibit the issuance of non-voting equity securities only to the extent required to comply with

4899-9946-3287.10

section 1123(a)(6) of the Bankruptcy Code. Accordingly, the Plan satisfies the requirements of

section 1123(a)(6) of the Bankruptcy Code.

> **(viii)   *Section 1123(a)(7)—Directors and Officers.***

30.     Article 5.2 of the Plan provides that the current members of the Debtors' board of

directors and officers will no longer serve in any such capacity with Reorganized HGE. The

identities of the individuals proposed to serve as the directors and officers of Reorganized HGE

and Reorganized HGE Subsidiaries shall be disclosed in the Plan Supplement as <u>Exhibit A</u>, and

the identity of the Liquidating Trustee is disclosed in <u>Exhibit E</u> to the Plan Supplement, both of

which are consistent with the interests of creditors and equity holders and with public policy.

Accordingly, the Plan satisfies the requirement of section 1123(a)(7) of the Bankruptcy Code.

> **(ix)   *Section 1123(a)(8) and 1123(c)—Debtor Is Not an Individual.***

31.     The Debtors are not individuals. Accordingly, the requirements of

sections 1123(a)(8) and 1123(c) of the Bankruptcy Code are inapplicable.

> **(x)   *Section 1123(b)(1)—Impairment/Unimpairment of Classes.***

32.     Article 3 of the Plan impairs or leaves Unimpaired each Class of Claims and

Interests, as contemplated by section 1123(b)(1) of the Bankruptcy Code.

> **(xi)   *Section 1123(b)(2)—Treatment of Executory Contracts and Unexpired
> Leases.***

33.     Pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, the Plan provides

for the assumption, assumption and assignment, assignment, or rejection of certain Executory

Contracts and Unexpired Leases, effective as of the Effective Date except as otherwise provided

therein or herein or in a prior or pending notice, motion, and/or order, or as otherwise agreed to by

the counterparty to the Executory Contract or Unexpired Lease. Article 9.1 of the Plan provides

that, on the Effective Date, all Executory Contracts and Unexpired Leases (a) not listed in the Plan

4899-9946-3287.10

Supplement, (b) not assumed or assumed and assigned prior to the Effective Date or otherwise the subject of a motion or notice to assume or assume and assign filed on or before the Effective Date, and/or (c) that were not previously rejected, are rejected as of the Effective Date in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code. Further, each Reorganized HGE Contract or Lease assumed or assumed and assigned pursuant to the Plan shall vest or re-vest in and be fully enforceable by Reorganized HGE in accordance with its terms, except as modified by the provisions of the Plan or the Confirmation Order.

6.      Article 9.3 of the Plan provides that Reorganized HGE shall reject all employment, retirement, indemnification, and other compensation or benefits agreements or arrangements unless otherwise specified in the Plan, and Reorganized HGE shall not have any obligations related thereto following the Effective Date.

7.      Article 9.4 of the Plan provides that rights or arrangements or other assets that are useful to the Debtors' business that are not Designated EB-5 Entities or Liquidating Trust Assets, subject to the consent of the Plan Sponsor, will pass through the bankruptcy proceedings for the benefit of Reorganized HGE (if constituting Reorganized HGE Assets) and shall otherwise be unaltered and unaffected by the bankruptcy filings or the Chapter 11 Cases.

8.      Article 9.5 of the Plan provides that the D&O Insurance Policies and any agreements, documents, or instruments relating thereto issued to or entered into by the Debtors prior to the Petition Date shall not be considered Executory Contracts and shall neither be assumed nor rejected by the Debtors unless otherwise ordered by a court of competent jurisdiction; *provided*, *however*, that to the extent a court of competent jurisdiction determines that any D&O Insurance Policy is an Executory Contract, such D&O Policy shall be assumed by the Debtors and assigned to the Liquidating Trust as of the Effective Date; *provided*, *further*, that neither the Plan

17

Sponsor nor Reorganized HGE shall have any obligations or personal or direct or indirect liability whatsoever in connection with any of the foregoing.

34.     The Debtors' determinations regarding the assumption and rejection of Executory Contracts and Unexpired Leases are based on and within the sound business judgment of the Debtors, are necessary for the implementation of the Plan, and are in the best interests of the Debtors, their Estates, Holders of Claims, and other parties in interest in these Chapter 11 Cases. Accordingly, the Plan is consistent with section 1123(b)(2) of the Bankruptcy Code.

> **(xii)   *Section 1123(b)(3)—Settlement, Releases, Exculpation, Injunction, and Preservation of Claims and Causes of Action.***

35.     In accordance with section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, the provisions of the Plan constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, discharged, satisfied, or otherwise resolved pursuant to the Plan. The compromises and settlements embodied in the Plan are the result of extensive, arm's-length, good faith negotiations, and preserve value for the Debtors, their Estates, and all their stakeholders, avoid extended, uncertain, time-consuming, and value-destructive litigation, and represent a fair and reasonable compromise of all Claims, Interests, and controversies. Entry into such compromises and settlements represented a sound exercise of the Debtors' business judgment. The compromises and settlements in the Plan are fair, equitable, reasonable, and in the best interests of the Debtors and their Estates and satisfy the requirements of applicable Law for approval pursuant to Bankruptcy Rule 9019.

36.     Based upon the representations and arguments of counsel to the Debtors and all other testimony either actually given or proffered and other evidence introduced at the Combined

4899-9946-3287.10

Hearing and the full record of the Chapter 11 Cases, this Confirmation Order constitutes the Bankruptcy Court's approval of the settlements embodied in the Plan and this Confirmation Order, because, among other things: (a) each such settlement reflects a reasonable balance between the possible success of litigation with respect to each of the settled Claims and disputes, on the one hand, and the benefits of fully and finally resolving such Claims and disputes and allowing the Debtors to expeditiously exit chapter 11, on the other hand; (b) absent such settlement, there is a likelihood of complex and protracted litigation involving, among other things, such settlement, with the attendant expense, inconvenience, and delay that have a possibility to derail the Debtors' reorganization efforts; (c) each of the parties supporting such settlement, including the Debtors, the Committee, and the Settlement Parties is represented by counsel that is recognized as being knowledgeable, competent, and experienced; (d) such settlement is the product of arm's-length bargaining and good-faith negotiations between sophisticated parties; and (e) such settlement is fair, equitable, and reasonable and in the best interests of the Debtors, their respective Estates and property, Reorganized HGE, creditors, and other parties in interest, will maximize the value of the Estates by preserving and protecting the ability of Reorganized HGE to continue operating outside of bankruptcy protection and in the ordinary course of business, and is essential to the successful implementation of the Plan. Based on the foregoing, the compromises and settlements in the Plan satisfy the requirements of applicable law, including Fifth Circuit Law, for approval of settlements and compromises pursuant to Bankruptcy Rule 9019.

37.    **Debtor Release**. Article 10.2 of the Plan describes certain releases granted by the Debtors (*i.e.*, the Debtor Release). The Debtors have satisfied the business judgment standard under Bankruptcy Rule 9019 with respect to the propriety of the Debtor Release. Each of the Released Parties has made a substantial contribution to the Plan and to the Debtors' reorganization.

The Debtor Release is a necessary and integral element of the Plan, and is fair, equitable, reasonable, and in the best interests of the Debtors, the Estates, and Holders of Claims and Interests.

38.    For the reasons set forth herein and in the Kirshbaum Declaration, the Debtor Release: (a) reflects a reasonable balance between the possible success of litigation with respect to each of the settled Claims and disputes, on the one hand, and the benefits of fully and finally resolving such Claims and disputes and allowing the Debtors to exit chapter 11 expeditiously, on the other hand; (b) is a good-faith settlement and compromise of the Claims and Causes of Action released by the Debtor Release; (c) is provided in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitate and implement the Plan, following extensive, arm's-length negotiations between sophisticated parties represented by able counsel and advisors; (d) is given, and made, after due notice and opportunity for hearing; and (e) serves as a bar to any of the Debtors, their Estates, Reorganized HGE, or the Liquidating Trustee from asserting any Claim or Cause of Action of any kind whatsoever released pursuant to the Debtor Release. Further, as more fully described in the Kirshbaum Declaration, the Independent Director analyzed and considered all potential Claims and Causes of Action held by the Debtors and determined that granting the Debtor Release was appropriate and necessary under the circumstances. The Debtors', Reorganized HGE's, or the Liquidating Trustee's pursuit of any such Claims or Causes of Action against the Released Parties is not in the best interests of the Estates or the Debtors' various constituencies because the costs involved would likely outweigh any potential benefit from pursuing such Claims or Causes of Action.

39.    The Debtor Release appropriately offers protection to parties that participated in the global settlement. Each of the Released Parties made significant concessions and contributions

to these Chapter 11 Cases. The Debtors' Release for the Debtors, Independent Director, the Plan Sponsor, including the Reorganized HGE, is appropriate because each of these parties were instrumental in the filing, prosecution, confirmation, and implementation of these Chapter 11 Cases. The Debtor Release for the Settlement Parties is appropriate because it is an integral part of the global settlement and the global settlement will provide meaningful distributions through the Plan via the Settlement Party Payment and the waiver of the Settlement Parties' claims. The Debtor Release for the Committee and each member thereof is an integral component of the global settlement and appropriate because the Committee was instrumental in helping to achieve the global settlement. The Debtor Release for the Liquidating Trustee is appropriate because the Liquidating Trustee will help effectuate the global settlement and provide recoveries for unsecured creditors.

40.     The scope of the Debtor Release is appropriately tailored under the facts and circumstances of these Chapter 11 Cases. The Debtor Release is appropriate in light of, among other things, the value provided by the Released Parties to the Debtors' Estates and the critical nature of the Debtor Release to the Plan.

41.     **Third-Party Release**. The Third-Party Release, set forth in Article 10.3 of the Plan, is a necessary and integral element of the Plan, is fair, equitable, reasonable, and is in the best interests of the Debtors, the Estates, and all Holders of Claims and Interests. Also, the Third-Party Release: (a) is consensual; (b) represents a good-faith settlement and compromise of the Claims and Causes of Action released by the Third-Party Release; (c) is beneficial to and in the best interests of the Debtors, their Estates, and their stakeholders and is important to the overall objectives of the Plan to finally resolve certain Claims among or against certain parties in interest in these Chapter 11 Cases; (d) is fair, equitable, and reasonable; (e) is specific in language and

4899-9946-3287.10

scope; (f) is essential to the confirmation of the Plan; (g) is given in exchange for the substantial contributions made and the good and valuable consideration provided by the Released Parties; (h) is a condition to the global settlement; (i) is given and made after due notice and opportunity for hearing; (j) constitutes a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release; (k) facilitated participation of the Released Parties in both the Plan process and the Chapter 11 Cases generally; and (l) was instrumental in developing a plan that maximized value for all of the Debtors' stakeholders.

42.    The Third-Party Release was a negotiated and integral term of the Plan and was critical to incentivizing parties to support the Plan. The Third-Party Release is specific in language and a condition of the compromises and settlements embodied in the Plan. As such, the Third-Party Release appropriately offers certain protections to parties who constructively participated in the Debtors' restructuring process and the Debtors had a good-faith basis for including the Third-Party Release in the Plan.

43.    The Third-Party Release is consensual given that, among other things: (a) the Releasing Parties were provided adequate notice of these Chapter 11 Cases, the Plan, and the deadline to object to Confirmation; (b) applicable Holders of Claims and Interests provided the Third-Party Release solely upon their affirmative election to opt out of the Third-Party Release; (c) the release provisions of the Plan were conspicuous, emphasized with boldface type in the Plan, the Disclosure Statement, the Ballots, the applicable Notice of Non-Voting Status, and the Combined Hearing Notice; and (d) the Combined Hearing Notice was sent to all parties to receive notice in these Chapter 11 Cases (including those not entitled to vote on the Plan) and published in *The Wall Street Journal* (national edition) on October 17, 2025.

22

44.     The only Holders of Claims and Interests, including the non-voting parties, that have opted out of the Third-Party Release are those set forth in the tabulation summary attached as <u>Exhibit C</u> to the Voting Report, and are not considered Releasing Parties. For the avoidance of doubt, no party shall be bound by the Third-Party Release and not a Releasing Party if they did not receive notice and opportunity to opt-out of the Third-Party Release. For further avoidance of doubt, parties who vote to accept the Plan but who return also check the box on the opt-out form (*i.e.*, opted-out) are not Releasing Parties and shall not be bound by the Third-Party Release set forth in Article 10.3 of the Plan.

45.     There is an identity of interests between the Debtors and the Entities that will benefit from the Third-Party Release. Each of the Released Parties, as stakeholders and critical participants in the Debtors' Chapter 11 Cases and the Plan process, share a common goal with the Debtors in seeing the Plan succeed. The scope of the Third-Party Release is also appropriately tailored to the facts and circumstances of the Chapter 11 Cases. For the reasons set forth above, each of the Released Parties has made significant concessions and contributions to the Debtors' Chapter 11 Cases. Accordingly, the Third-Party Release, including its carveout for actual or criminal fraud, willful misconduct, or gross negligence, is fair, reasonable, and appropriate under the circumstances of the Chapter 11 Cases and is consistent with established practice in this jurisdiction.

46.     **Exculpation**. The exculpation described in Article 10.4 of the Plan (the "**Exculpation**") is appropriate under applicable law, and enforceable to the maximum extent allowed by *In re Highland Capital Mgmt., L.P.*, 48 F.4th 419 (5th Cir. 2022), because it was supported by proper evidence, proposed in good faith, was formulated following extensive good-faith, arm's-length negotiations with key constituents, and is appropriately limited in scope.

23

Without limiting anything in the Exculpation, each Exculpated Party has participated in these Chapter 11 Cases in good faith and in compliance with applicable Laws with regard to solicitation of votes and distribution of consideration pursuant to the Plan, and is appropriately released and exculpated from any Claim or Cause of Action arising from the Petition Date to the Effective Date in connection with or arising out of the administration of the Chapter 11 Cases, the formulation, documentation, preparation, dissemination, solicitation, negotiation, entry into, or Filing of the Disclosure Statement, the Plan, the Plan Supplement, the RSA, the DIP Loans, DIP Financing Documents, or any Definitive Document, or the Filing of the Chapter 11 Cases, the solicitation of votes for, or Confirmation or Consummation of, the Plan, the funding of the Plan, the occurrence of the Effective Date, the administration of the Plan or the property to be distributed under the Plan, the issuance of Securities under or in connection with the Plan, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or Reorganized HGE, if applicable, in connection with the Plan or the transactions contemplated therein, other than Claims or Causes of Action in each case arising out of or related to any act or omission of an Exculpated Party that is a criminal act or constitutes actual or criminal fraud, willful misconduct, or gross negligence as determined by a Final Order, but in all respects such Persons will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpation, including its carveout for actual or criminal fraud, willful misconduct, or gross negligence, is fair, reasonable, and appropriate under the circumstances of the Chapter 11 Cases and is consistent with established practice in this jurisdiction.

47.    Solely with respect to the Exculpation, notwithstanding anything to the contrary in the Plan or Plan Supplement, each of the Exculpated Parties and 1125(e) Exculpation Parties shall not incur liability for any Cause of Action or Claim related to any act or omission in connection

with, relating to, or arising out of, in whole or in part, (a) the solicitation of acceptance or rejection of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code or (b) the participation, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, in the offer, issuance, sale, or purchase of a Security, offered or sold under the Plan. No Entity or Person may commence or pursue a Claim or Cause of Action of any kind against any of the Exculpated Parties or 1125(e) Exculpation Parties that arose or arises from, in whole or in part, a Claim or Cause of Action subject to this paragraph 47 of this Confirmation Order, without this Bankruptcy Court (y) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim for actual fraud, gross negligence, or willful misconduct against any such Exculpated Party or 1125(e) Exculpation Party and such party is not exculpated; and (z) specifically authorizing such Entity or Person to bring such Claim or Cause of Action against any such Exculpated Party or 1125(e) Exculpation Party. The Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Causes of Action.

48.     **Injunction**. The injunction provision set forth in Article 10.5 of the Plan is essential to the Plan and is necessary to implement, preserve, and enforce the Debtors' discharge, the Debtor Release, the Third-Party Release, and the Exculpation. The injunction provision is appropriately tailored to achieve those purposes. Notwithstanding anything to the contrary in this Confirmation Order, no Person or Entity may commence or pursue a Claim or Cause of Action, as applicable, of any kind against the Debtors, Reorganized HGE, the Exculpated Parties, 1125(e) Exculpation Parties, or the Released Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action, as applicable, subject to Article 10.2, Article 10.3, and Article 10.4 of the Plan, without the Bankruptcy Court (a) first determining, after notice and a hearing, that such Claim or Cause of

25

Action represents a colorable Claim of any kind and (b) specifically authorizing such Person or

Entity to bring such Claim or Cause of Action, as applicable, against any such Debtor, Reorganized

Debtor, Exculpated Party, 1125(e) Exculpation Party, or Released Party, as applicable. The

Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable

Claim or Causes of Action.

49.     **Preservation of Causes of Action**. Pursuant to Article 4.4 of the Plan and in

accordance with section 1123(b) of the Bankruptcy Code, but subject to Article 10 of the Plan, the

Debtors reserve and, as of the Effective Date, assign to the Liquidating Trust the Debtors' Retained

Causes of Action identified in the Plan Supplement, and the Liquidating Trustee shall have the

right to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release,

withdraw, or litigate to judgment any such Debtors' Retained Causes of Action, other than the

Causes of Action released or exculpated by the Debtors pursuant to the releases and exculpations

contained in the Plan, including in Article 10 of the Plan, which shall be deemed released and

waived by the Debtors, their Estates, and Reorganized HGE as of the Effective Date.

50.     For the avoidance of doubt, pursuant to the global settlement, the Debtors have

stipulated and agreed to confer to the Committee derivative standing for the purposes of sending

one or more demands to one or more Non-Released D&Os and/or the applicable D&O Insurance

Carriers, and, on the Effective Date, all Debtors' Retained Causes of Action against all Non-

Released D&Os shall be transferred and assigned to, and shall vest in, the Liquidating Trust for

the benefit of the Liquidating Trust Beneficiaries.

51.     The provisions regarding the preservation of the Debtors' Causes of Action in the

Plan, including those contained in the Plan Supplement, are appropriate, fair, equitable, and

26

reasonable, and are in the best interests of the Debtors, the Estates, and Holders of Claims and Interests.

52.    **Lien Release**. The release and discharge of mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates described in Article 4.10 of the Plan (the "**Lien Release**") is essential to the Plan and necessary to implement the Plan. The provisions of the Lien Release are appropriate, fair, equitable, and reasonable and are in the best interests of the Debtors, their Estates, and Holders of Claims and Interests.

(xiii)    *Section 1123(b)(6)—Additional Plan Provisions.*

53.    The other discretionary provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.

(xiv)    *Section 1123(d)—Cure of Defaults.*

54.    Article 9.2 of the Plan provides for the satisfaction of Cure Claims associated with each Executory Contract and Unexpired Lease to be assumed or assumed and assigned in accordance with section 365 of the Bankruptcy Code or as otherwise agreed between the Debtors and the counterparty to each such assumed or assumed and assigned Executory Contract and Unexpired Lease. Any and all Cure Claims related to designation of an Executory Contract and Unexpired Lease by the Plan Sponsor shall be paid by the Plan Sponsor in addition to the funding of the Plan Sponsor Consideration. Any and all Cure Claims related to Transferred Executory Contracts / Unexpired Leases shall be paid by Guidepost Global, CEA, or TNC, as applicable.

55.    The assumption of any Executory Contract or Unexpired Lease shall result in the full release and satisfaction of any Cure Claims, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or any bankruptcy-related defaults, arising at any time on or prior to the

27

effective date of assumption. As such, the Plan provides that the Debtors will cure, or provide

adequate assurance that the Debtors will promptly cure, defaults with respect to assumed

Executory Contracts and Unexpired Leases. Accordingly, the Plan complies with section 1123(d)

of the Bankruptcy Code.

**Q.    Section 1129(a)(2)—Debtor Compliance with the Bankruptcy Code.**

56.    The Debtors have complied with the applicable provisions of the Bankruptcy Code

and, thus, satisfied the requirements of section 1129(a)(2) of the Bankruptcy Code. Specifically,

each Debtor:

a.    is eligible to be a debtor under section 109, and a proper proponent of the Plan under section 1121(a) of the Bankruptcy Code;

b.    has complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court; and

c.    complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126, the Bankruptcy Rules, the Local Rules, any applicable non-bankruptcy Law, rule and regulation, the Solicitation Motion Order, and all other applicable Law, in transmitting the Solicitation Packages, and related documents and notices, and in soliciting and tabulating the votes on the Plan.

57.    The Debtors and their agents have participated in good faith and in compliance with

the applicable provisions of the Bankruptcy Code with respect to the offering, issuance, and

distribution of recoveries under the Plan and, therefore are not and, on account of such

distributions, will not be liable at any time for the violation of any applicable Law, rule, or

regulation governing the solicitation of acceptances or rejections of the Plan or distributions made

pursuant to the Plan so long as such distributions are made consistent with and pursuant to the

Plan.

**R.    Section 1129(a)(3)—Plan Proposed in Good Faith.**

58.    The Debtors and the Committee have proposed the Plan in good faith and not by

any means forbidden by Law. In so determining, the Bankruptcy Court has examined the totality

of the circumstances surrounding the commencement of these Chapter 11 Cases, including the Plan, the Kirshbaum Declaration, the process leading to Confirmation, including negotiation of the global settlement and the overwhelming support of Holders of Claims voting in favor of the Plan, and the transactions to be implemented pursuant thereto. The Debtors' and the Committee's good faith is evident from the facts and the record of these Chapter 11 Cases, the Disclosure Statement, the hearing to conditionally approve the Disclosure Statement, and the record of the Combined Hearing and other proceedings held in these Chapter 11 Cases.

59.     The Plan is the product of good-faith, arm's-length negotiations by and among the Debtors, the DIP Lenders, the Plan Sponsor, the Settlement Parties, the Committee, and other parties in interest. These Chapter 11 Cases were Filed, and the Plan was proposed, with the legitimate purpose of allowing the Debtors to implement the transactions in the Plan and the restructuring transactions provided therein. The Plan itself and the process leading to its formulation provide independent evidence of the Debtors', the Committee's, and such other parties' good faith, serve the public interest, and assure fair treatment of Holders of Claims, Intercompany Interests, Equity, and Interests. Consistent with the overriding purpose of chapter 11, the Debtors Filed the Chapter 11 Cases with the belief that the Debtors were in need of reorganization, and the Plan was negotiated and proposed with the intention of accomplishing a successful reorganization and maximizing stakeholder value and for no ulterior purpose. Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

S.     **Section 1129(a)(4)—Payment for Services or Costs and Expenses.**

60.     The procedures set forth in the Plan for the Bankruptcy Court's review and ultimate determination of the fees and expenses to be paid by the Debtors in connection with these Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, has been

29

approved by or is subject to the approval of the Court as reasonable. Accordingly, the Plan satisfies the requirements of section 1129(a)(4) of the Bankruptcy Code.

**T.    Section 1129(a)(5)—Directors, Officers, and Insiders.**

61.    Article 5.2 of the Plan provides that on the Effective Date the identities of the members of the Board of Reorganized HGE, to the extent known, will have been disclosed in the Plan Supplement.    Accordingly, the Proponents have satisfied the requirements of section 1129(a)(5) of the Bankruptcy Code.    To the extent section 1129(a)(5) applies to the Liquidating Trustee, the Proponents have satisfied the requirements of this provision by, among other things, disclosing the identity of the Liquidating Trustee in the Plan Supplement.

**U.    Section 1129(a)(6)—No Rate Changes.**

62.    The Plan proposes no rate change subject to the jurisdiction of any governmental regulatory commission. Therefore, section 1129(a)(6) of the Bankruptcy Code is not applicable to these Chapter 11 Cases.

**V.    Section 1129(a)(7)—Best Interest of Creditors.**

63.    The liquidation analysis attached as Exhibit B to the Disclosure Statement, attached to the Corwen Declaration, and the other evidence related thereto, including the Corwen Declaration, in support of the Plan that was proffered, prior to, or in connection with the Combined Hearing: (a) are reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that Holders of Allowed Claims and Interests in each Class will recover at least as much under the Plan on account of such Claim or Interest, as of the Effective Date, as such Holder would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code. As a result, the

4899-9946-3287.10

Debtors have demonstrated that the Plan is in the best interests of their creditors, and the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

**W.      Section 1129(a)(8)—Acceptance by Certain Classes.**

64.      Classes 6 and 7 constitute the Unimpaired Classes, each of which is conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code. Classes 1, 2, 3, 4, 5 and 8 are Impaired and are entitled to vote to accept or reject the Plan. Classes 9, 10, and 11 are not entitled to vote and are Impaired and deemed to reject the Plan. As evidenced by the Voting Report, all of the Holders of Claims in Classes 1, 2, 3, 4, and 5 voted unanimously to accept the Plan.

65.      Class 8 is Impaired and has voted to reject the Plan, meaning the meaning that the requirements of Bankruptcy Code section 1129(a)(8) have not been met, but the Court will approve the Plan over the rejection of Class 8, subject to further protections specified in Bankruptcy Code section 1129(b), as discussed below.

**X.      Section 1129(a)(9)—Treatment of Claims Entitled to Priority Under Section 507(a) of the Bankruptcy Code.**

66.      The treatment of Allowed Administrative Claims, Professional Fee Claims, Priority Tax Claims, and Other Priority Claims under Article 3 of the Plan satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

**Y.      Section 1129(a)(10)—Acceptance by At Least One Impaired Class.**

67.      As evidenced by the Voting Report, the Holders of Claims in Class 1, 2, 3, 4, and 5 are Impaired and voted to accept the Plan by the requisite numbers and amounts of Claims, as determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code), as specified under the Bankruptcy Code. Accordingly, the requirements of section 1129(a)(10) of the Bankruptcy Code are satisfied.

4899-9946-3287.10

**Z.**     **Section 1129(a)(11)—Feasibility.**

68.     The evidence supporting Confirmation of the Plan proffered or adduced by the Proponents at, or prior to, the Combined Hearing, or in the Kirshbaum Declaration Filed in connection therewith (a) is reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilizes reasonable and appropriate methodologies and assumptions; (c) has not been controverted by other evidence; (d) establishes that the Plan is feasible and Confirmation is not likely to be followed by the liquidation, or the need for further financial reorganization, of Reorganized HGE or any successor to the Reorganized HGE under the Plan, except as provided in the Plan; and (e) establishes that sufficient funds will be available to satisfy the requirements of the global settlement and the Plan. Accordingly, the Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

**AA.**    **Section 1129(a)(12)—Payment of Fees.**

69.     Article 3.4 of the Plan provides that all fees due and payable pursuant to section 1930 of Title 28 of the United States Code ("**Statutory Fees**") shall be paid by each of the Debtors, Reorganized HGE, Guidepost Global, or the Liquidating Trustee, as applicable, until the earliest of the applicable Chapter 11 Case being converted, dismissed, or closed. Accordingly, the Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

**BB.**    **Section 1129(a)(13)—Continuation of Retiree Benefits.**

70.     The Debtors do not have any obligations to pay retiree benefits (as defined in section 1114 of the Bankruptcy Code). Therefore, section 1129(a)(13) of the Bankruptcy Code is not applicable to these Chapter 11 Cases and the Plan.

4899-9946-3287.10

**CC.    1129(a)(14), (15), and (16)—Non-Applicability of Certain Sections.**

71.    Sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to these Chapter 11 Cases. The Debtors owe no domestic support obligations, are not individuals, and are not nonprofit corporations.

**DD.    Section 1129(b)—"Cram Down" Requirements.**

72.    Notwithstanding the fact that the requirements of section 1129(a)(8) have not been met, the Plan may be confirmed pursuant to section 1129(b) of the Bankruptcy Code because the Proponents have demonstrated by a preponderance of the evidence that the Plan (a) satisfies all of the other requirements of section 1129(a) of the Bankruptcy Code and (b) does not "discriminate unfairly" and is "fair and equitable" with respect to the Rejecting Classes (defined below).

73.    Based upon the evidence proffered, adduced, and presented by the Proponents prior to or at the Combined Hearing, the Plan does not "discriminate unfairly" against any Holders of Claims in Class 8 (General Unsecured Claims), Class 9 (Intercompany Claims), Class 10 (Equity), or Class 11 (Subsidiary Equity Interests) (collectively, the "**Rejecting Classes**"), as required by section 1129(b)(1) of the Bankruptcy Code, because all similarly situated Holders of Claims and Interests will receive substantially similar treatment, and to the extent the Plan treats any Classes differently, there are valid business, legal, and factual reasons to do so.

74.    The Plan is also "fair and equitable" with respect to each Rejecting Class.  The Plan has been proposed in good faith, is reasonable, and meets the requirements that (a) no Holder of any Claim or Interest that is junior to each Rejecting Class will receive or retain any property under the Plan on account of such junior Claim or Interest and (b) no Holder of a Claim in a Class senior to any Rejecting Class is receiving more than 100% on account of its Claim.

4899-9946-3287.10

75.    Thus, the Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code and may therefore be confirmed despite the fact that not all Impaired Classes have voted to accept the Plan.

**EE.    Section 1129(c)—Only One Plan.**

76.    The Plan (including previous versions thereof) is the only chapter 11 plan Filed in each of these Chapter 11 Cases and, accordingly, satisfies section 1129(c) of the Bankruptcy Code.

**FF.    Section 1129(d)—Principal Purpose of the Plan.**

77.    As evidenced by its terms, the principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act. Accordingly, the requirements of section 1129(d) of the Bankruptcy Code have been satisfied.

**GG.    Section 1129(e)—Not Small Business Cases.**

78.    The Chapter 11 Cases are not small business cases, and accordingly, section 1129(e) of the Bankruptcy Code does not apply to the Chapter 11 Cases.

**HH.    Section 1125(e)—Good Faith Solicitation.**

79.    The Debtors and their agents have solicited and tabulated votes on the Plan and have participated in the activities described in section 1125 of the Bankruptcy Code fairly, in good faith within the meaning of section 1125(e). The Debtors, the Committee, and the 1125(e) Exculpation Parties have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code in connection with all of their respective activities relating to support of the Plan and Consummation, including, among other things, the issuance of the Reorganized HGE Common Stock and the solicitation of acceptances of the Plan, as applicable, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and all other applicable protections and rights provided for in the Plan and this Confirmation Order.

## II.      Satisfaction of Confirmation Requirements.

80.     Based on the foregoing, the Plan satisfies the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code.

## JJ.    Likelihood of Satisfaction of Conditions Precedent to the Effective Date.

81.     The Plan shall not become effective unless and until the conditions set forth in Article 11.2 have been satisfied or waived in accordance with Article 11.3 of the Plan.  Each of the conditions precedent to the Effective Date has been or is reasonably likely to be satisfied or, as applicable, waived in accordance with the Plan.

## KK.   Implementation.

82.     All documents necessary to implement the Plan, the global settlement, and the transactions contemplated therein,  including those contained in the Plan Supplement, and all other relevant and necessary or desirable documents have been negotiated in good faith and at arm's-length, are in the best interests of the Debtors, and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements, not avoidable and not in conflict with any federal, state, or foreign Law. The documents and agreements are essential elements of the Plan, and entry into and consummation of the transactions contemplated by each such document or agreement are in the best interests of the Debtors, the Estates, and the Holders of Claims, Intercompany Interests, Equity, and Interests. The Debtors have exercised reasonable business judgment in determining which documents and agreements to enter into and have provided sufficient and adequate notice of such documents and agreements. The Debtors are authorized to take any action reasonably necessary or appropriate to consummate such agreements and the transactions contemplated thereby.

4899-9946-3287.10

**LL.**     **Disclosure of Material Facts.**

83.     The Debtors have disclosed all material facts regarding the Plan, including: (a) the method and manner of distributions under the Plan; (b) the adoption, execution, and implementation of the other matters provided for in the Plan, including those involving corporate action to be taken by or required of the Debtors or Reorganized HGE, as applicable; (c) the adoption, execution, and implementation of the Liquidating Trust Agreement and the identity of the Liquidating Trustee; (d) the exception under section 1146(a) of the Bankruptcy Code; (e) the Debtors' Retained Causes of Action; and (f) the adoption, execution, and delivery of all contracts, leases, instruments, securities, releases, indentures, and other agreements related to any of the foregoing.

**MM.**     **Good Faith.**

84.     The Proponents and their respective directors, officers, management, counsel, advisors, and other agents, together with the Plan Sponsor, have proposed the Plan in good faith, with the legitimate and honest purpose of maximizing the value of the Estates for the benefit of their stakeholders. The Plan accomplishes this goal. Accordingly, the Debtors, the Committee, and Reorganized HGE, as applicable, and their respective officers, directors, and advisors have been, are, and will continue to act in good faith if they proceed to: (a) consummate and implement the Plan, the Liquidating Trust Agreement, and all agreements, settlements, transactions, and transfers contemplated thereby; and (b) take the actions authorized and directed by this Confirmation Order and the Plan to reorganize the Debtors' business and effectuate the documents and transactions related thereto.

**NN.**     **The Liquidating Trust.**

85.     As set forth in Article 4.3 of the Plan, on the Effective Date, the Debtors and the Liquidating Trustee shall enter into the Liquidating Trust Agreement and the Liquidating Trust

Assets shall be deemed to have transferred, assigned, and vested in the Liquidating Trust irrevocably and automatically, free and clear of all Claims, Liens, interests, charges, and other encumbrances. The transfers contemplated under the Plan from the Debtors to the Liquidating Trust shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use, or other similar tax. On and after the Effective Date, the Liquidating Trustee shall carry out the Liquidating Trust functions on behalf of the Liquidating Trust as set forth in the Liquidating Trust Agreement. The Liquidating Trust shall be administered and controlled by the Liquidating Trustee as set forth in the Plan and the Liquidating Trust Agreement.

86.    On and after the Effective Date, except as otherwise provided in the Plan, the Liquidating Trustee shall be deemed the owner of all Liquidating Trust Assets, with full power and authority to prosecute the Debtors' Retained Causes of Action and to use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action constituting Liquidating Trust Assets without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, except as otherwise provided in the Liquidating Trust Agreement.

**OO.    Vesting of Reorganized HGE Assets in Reorganized HGE.**

87.    Except as otherwise provided in the Plan, this Confirmation Order, the Plan Supplement, the Liquidating Trust Agreement, or any agreement, instrument, or other document incorporated therein or entered into in connection with or pursuant to the Plan or the Plan Supplement, on the Effective Date, all Reorganized HGE Assets shall vest or revest in Reorganized HGE, free and clear of all Liens, Claims, interests, and encumbrances of any kind. On and after the Effective Date, except as otherwise specifically provided in the Plan, Reorganized HGE may operate its business and may use, acquire, or dispose of any and all of the Reorganized HGE Assets without supervision of or approval by the Bankruptcy Court and free of any restrictions of the

37

Bankruptcy Code or Bankruptcy Rules. For the avoidance of doubt, Reorganized HGE shall not be treated as being liable on any Claim that is discharged pursuant to the Plan.

## **ORDER**

IT IS ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:

1.      **Findings of Fact and Conclusions of Law.** The above findings of fact and conclusions of law, as well as any additional findings of fact and conclusions of law announced by the Bankruptcy Court at the Combined Hearing, are hereby incorporated in this Confirmation Order.  To the extent that any finding of fact is determined to be a conclusion of law, it is deemed so, and vice versa.

2.      **Disclosure Statement, Solicitation Packages, and Solicitation Procedures.** The Disclosure Statement, the Solicitation Packages, and the Solicitation Procedures are APPROVED on a final basis in all respects pursuant to section 1125 of the Bankruptcy Code.

3.      **Confirmation of the Plan.** The Plan, attached hereto as **Exhibit A**, is approved in its entirety and CONFIRMED under section 1129 of the Bankruptcy Code. The terms of the Plan, the Plan Supplement, and the exhibits thereto are incorporated by reference into and are an integral part of this Confirmation Order; *provided* that, if there is any direct conflict between the terms of the Plan (including the Plan Supplement) and the terms of this Confirmation Order, the terms of this Confirmation Order shall control solely to the extent of such conflict.

4.      The terms of the Plan, the Plan Supplement, the exhibits thereto, and this Confirmation Order shall be effective and binding as of the Effective Date on all parties in interest, including the Debtors, Reorganized HGE, Holders of Bridge CN-3 Secured Lender Claims, Holders of WTI Secured Lender Claims, Holders of CN-1 Note Claims, Holder of CN-2 Note Claims, Holders of CN-3 Note Claims, Holders of General Unsecured Claims, the Committee, the Liquidating Trust, and any and all Holders of Claims, Equity, or Interests (irrespective of whether

38

such Claims, Equity, or Interests are presumed to have accepted or rejected the Plan, as applicable),

all Entities that are parties to or are subject to the settlements, compromises, releases, discharges,

and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and

all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

5.      **Objections Overruled.** All objections (including any reservations of rights

contained therein) to final approval of the Disclosure Statement or Confirmation of the Plan that

have not been withdrawn, waived, or settled prior to entry of this Confirmation Order, or are not

otherwise resolved as stated by the Debtors on the record of the Combined Hearing, are

OVERRULED and DENIED on the merits and in their entirety, and all withdrawn objections are

deemed withdrawn with prejudice.

6.      All objections to final approval of the Disclosure Statement or Confirmation not

Filed and served prior to the Objection Deadline set forth in the Combined Notice, if any, are

deemed waived and shall not be considered by the Bankruptcy Court.

7.      **Deemed Acceptance of Plan.** In accordance with section 1127 of the Bankruptcy

Code and Bankruptcy Rule 3019, all Holders of Claims and Interests who voted to accept the Plan

or who are conclusively presumed to accept the Plan are deemed to have accepted the Plan.

8.      **No Action Required.** Under section 1142(b) of the Bankruptcy Code and any other

comparable provisions under applicable Law, no action of the respective directors, equity holders,

managers, or members of any of the Debtors is required to authorize any of the Debtors, the

Liquidating Trustee, or Reorganized HGE, as applicable, to enter into, execute, deliver, File, adopt,

amend, restate, consummate, or effectuate, as the case may be, the Plan and any contract,

assignment, certificate, instrument, or other document to be executed, delivered, adopted, or

amended in connection with the implementation of the Plan, including the Liquidating Trust

4899-9946-3287.10

Agreement and Reorganized HGE's Corporate Documents; the appointment and election of the members of the Board of Reorganized HGE and the officers, directors, and/or managers of Reorganized HGE and Reorganized HGE Subsidiaries, as applicable; and the transfer of the Designated EB-5 Entities to Guidepost Global.

9.       Subject to the terms of Article 4 of the Plan, the Debtors, Reorganized HGE, Guidepost Global, and the Liquidating Trustee, as applicable, are also authorized from and after the date of entry of this Confirmation Order to negotiate, execute, issue, deliver, implement, file, or record any contract, instrument, release, or other agreement or document or take any action necessary or appropriate to implement the transactions contemplated by the Plan.

10.       **Binding Effect.** Subject to Article 13 of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan (including, for the avoidance of doubt, the documents contained in the Plan Supplement) shall be immediately effective and enforceable and deemed binding upon the Debtors, the Committee, Reorganized HGE, the Liquidating Trust, any and all Holders of Claims against or Interests in the Debtors (irrespective of whether such Holders have, or are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors. All Claims and Interests shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or Interest has voted on the Plan.

11.       **Vesting of Assets in Reorganized HGE and the Liquidating Trust.** Except as otherwise provided in the Plan, the Plan Supplement, or this Confirmation Order, or any

4899-9946-3287.10

agreement, instrument, or other document incorporated in, or entered into in connection with or pursuant to, the Plan or Plan Supplement, on the Effective Date, all Reorganized HGE Assets shall vest in Reorganized HGE free and clear of all Liens, Claims, interests, and encumbrances (except Liens securing Other Secured Claims that are Reinstated pursuant to the Plan, as applicable). On the Effective Date, the Liquidating Trust Assets shall vest or deem to be vested in the Liquidating Trust free and clear of all Liens, Claims, interests, and encumbrances (except Liens securing Other Secured Claims that are Reinstated pursuant to the Plan, as applicable). On and after the Effective Date, except as otherwise provided herein or in the Plan, Reorganized HGE and the Liquidating Trust, as applicable and relevant, may operate their business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules in all respects.

12.      **Effectiveness of All Actions.** All actions contemplated by the Plan are hereby effective and authorized to be taken on, prior to, or after the Effective Date, as applicable, under this Confirmation Order, without further application to, or order of the Bankruptcy Court, or further action by the respective officers, directors, managers, members, or equity holders of the Debtors, Reorganized HGE, Guidepost Global, and the Liquidating Trustee and with the effect that such actions had been deemed taken by unanimous action of such officers, directors, managers, members, or equity holders.

13.      **Release, Exculpation, Discharge, and Injunction Provisions.** The release, exculpation, discharge, and injunction provisions embodied in the Plan, including for the avoidance of doubt, those contained in Articles 10.1 through 10.5 of the Plan, are incorporated herein in their entirety, are hereby approved and authorized in their entirety, and shall be

41

immediately effective and binding on the Effective Date on all Persons and Entities to the extent
provided in the Plan, without further order or action by this Bankruptcy Court.

14.    **Preservation of Causes of Action.** In accordance with section 1123(b) of the
Bankruptcy Code, but subject to Article 10 of the Plan, Reorganized HGE shall retain and may
enforce all rights to commence and pursue, as appropriate, any and all Retained Causes of Action
constituting Reorganized HGE Assets and the Liquidating Trust shall retain and may enforce all
rights to commence and pursue, as appropriate, any and all Retained Causes of Action constituting
Liquidating Trust Assets, in each case whether arising before or after the Petition Date.
Reorganized HGE's and the Liquidating Trustee's, rights, as applicable, to commence, prosecute,
or settle such Retained Causes of Action shall be preserved notwithstanding the occurrence of the
Effective Date, other than the Causes of Action released or exculpated under the Plan (including,
without limitation, by the Debtors) pursuant to the releases and exculpations contained in the Plan,
including in Article 10 of the Plan, which shall be deemed released and waived by the Debtors,
their Estates, Reorganized HGE, and the Liquidating Trust as of the Effective Date.

15.    **No Successor Liability.** Except as otherwise expressly set forth in the Plan, to the
fullest extent permitted by applicable laws, Reorganized HGE and Plan Sponsor and its and their
Related Parties shall have no have liability, including without limitation, successor liability, arising
from or in connection with the Plan, this Order or the issuance of the Reorganized HGE Common
Stock or the transfer of Reorganized HGE Assets contemplated in the Plan.

16.    **Executory Contracts and Unexpired Leases.** The provisions governing the
treatment of Executory Contracts and Unexpired Leases set forth in Article 9 of the Plan (including
the procedures regarding the resolution of any and all disputes concerning the assumption,

4899-9946-3287.10

assumption and assignment, Cure Claims, or rejection, as applicable, of such Executory Contracts and Unexpired Leases) shall be, and hereby are, approved in their entirety, except as stated herein.

17.    On the Effective Date, except as otherwise provided in the Plan and Plan Supplement, all Executory Contracts or Unexpired Leases not otherwise assumed or rejected (to the extent applicable) will be deemed rejected by Reorganized HGE and/or Reorganized HGE Subsidiaries in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those that: (a) have been identified in the Plan Supplement; (b) have been previously assumed by the Debtors pursuant to a Final Order prior to the Effective Date; or (c) are the subject of a motion to assume or assume and assign that is pending as of the Effective Date.

18.    Unless a party to an Executory Contract or Unexpired Lease or a Transferred Executory Contract / Unexpired Lease has objected no later than the objection deadline specified in the applicable assumption motion or Plan to the Cure Claim amounts and any assumption or assumption and assignment of such Executory Contract or Unexpired Lease identified in the Plan Supplement and any amendments thereto, as applicable, the Debtors, Reorganized HGE, Plan Sponsor, Guidepost Global, CEA, or TNC, as applicable, shall pay such Cure Claim amounts in accordance with the terms of the Plan or as otherwise agreed between the Debtors and the counterparty to each such assumed or assumed and assigned Executory Contract or Unexpired Lease or Transferred Executory Contract / Unexpired Lease. The assumption or assumption and assignment of any Executory Contract or Unexpired Lease, pursuant to the Plan or otherwise, shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including relating to such assumption and assignment, defaults of provisions relating to any anti-assignment provisions or restricting the change in control or ownership interest

composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption or assumption and assignment. Any disputed Cure Claim amounts shall be determined in accordance with the procedures set forth in Articles 8.1 and 9.2 of the Plan, and applicable bankruptcy and non-bankruptcy law. For the avoidance of doubt, any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Plan or otherwise may not be terminated on account of such assumption or assumption and assignment or on account of the Plan, the transactions contemplated therein, or any change of control or ownership interest composition that may occur at any time before or on the Effective Date. Each Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Plan shall revest in, and be fully enforceable by, the applicable assignee in accordance with its terms, including in accordance with any amendments executed by the Debtors and the counterparties to the applicable Executory Contract or Unexpired Lease during these Chapter 11 Cases and effective upon the assumption by the Debtors, except as modified by the provisions of the Plan, this Confirmation Order, or any order of this Bankruptcy Court authorizing and providing for its assumption; *provided* that, prior to the Effective Date and in connection with such assumption, any such terms that are rendered unenforceable by the provisions of the Plan or the Bankruptcy Code shall remain unenforceable solely in connection therewith.

19.    The Debtors' determinations regarding the assumption, assumption and assignment, or rejection of Executory Contracts and Unexpired Leases are based on and within the sound business judgment of the Debtors, are necessary to the implementation of the Plan, and are in the best interests of the Debtors, their Estates, Holders of Claims or Interests, and other parties in interest in these Chapter 11 Cases. This Confirmation Order shall constitute a Final Order

4899-9946-3287.10

approving the assumptions, assumptions and assignments, and rejections of the Executory Contracts and Unexpired Leases as set forth in the Plan and the Executory Contracts and Unexpired Leases List pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

20.    **D&O Insurance Policies.** On the Effective Date, the Debtors shall transfer and assign all the Debtors' rights and interests in the D&O Insurance Policies to the Liquidating Trust for the benefit of the Liquidating Trust Beneficiaries; *provided*, *however*, that each of the D&O Insurance Policies and any agreements, documents, or instruments relating thereto issued to or entered into by the Debtors prior to the Petition Date shall not be considered Executory Contracts and shall neither be assumed nor rejected by the Debtors; *provided*, *further*, *however*, that to the extent a court of competent jurisdiction determines that any D&O Insurance Policy is an Executory Contract, such D&O Policy shall be assumed by Debtors and assigned to the Liquidating Trust as of the Effective Date and such assumption and assignment is approved pursuant to section 365 of the Bankruptcy Code. No payments are required to cure any defaults of the Debtors or Reorganized HGE existing as of the date of entry of this Confirmation Order with respect to the D&O Insurance Policies. Notwithstanding the foregoing, neither the Plan Sponsor nor Reorganized HGE shall have any obligations or personal or direct or indirect liability whatsoever in connection with any of the foregoing.

21.    Nothing in the Plan, the Plan Supplement, the Confirmation Order, or any other order of the Bankruptcy Court, (a) alters, modifies, or otherwise amends the terms and conditions of (or the coverage provided by) the D&O Insurance Policies or (b) alters or modifies the duty, if any, that the insurers or third-party administrators pay claims covered by the D&O Insurance Policies.

4899-9946-3287.10

22.    **Plan Supplement.** The Plan Supplement contains the following documents (each as defined in the Plan): (a) Reorganized HGE Corporate Documents and identities of the proposed directors and officers of Reorganized HGE and HGE Subsidiaries; (b) cancelled Equity Interests; (c) schedule of Designated EB-5 Entities; (d) Schedule of Debtors' Retained Causes of Action; (e) Liquidating Trust Agreement and the identity of the Liquidating Trustee; (f) schedule of the Transferred Executory Contracts / Unexpired Leases; (g) schedule of the Reorganized HGE Contracts and Leases; (h) schedule of Reorganized HGE Assets; (i) list of Reorganized HGE Subsidiaries; (j) identity and compensation of insiders employed or retained by Reorganized HGE Subsidiaries; and (k) election of subscription option.

23.    The Proponents reserve the right to alter, amend, modify, or supplement any document in the Plan Supplement in accordance with the Plan at any time before the Effective Date of the Plan or any such other date as may be provided for by the Plan or by order of the Bankruptcy Court. Notwithstanding anything in this Confirmation Order, the documents included in the Plan Supplement, whether filed by the Debtors prior to or after the Combined Hearing, remain subject in all respects to the consent, approval, and similar rights contained in the Plan.

24.    **Issuance of Reorganized HGE Common Stock.** On the Effective Date, 1,000 shares of Reorganized HGE Common Stock representing 100% of the equity of Reorganized HGE, shall be issued to the Plan Sponsor or an entity designated by the Plan Sponsor, in consideration for the Plan Sponsor Consideration and to the Senior DIP Lender, to the extent that it exercises the Subscription Option.

25.    The Reorganized HGE Common Stock shall be free and clear of all Liens, Claims, interests, and encumbrances of any kind. All the shares of Reorganized HGE Common Stock issued pursuant to the Plan shall be duly authorized, validly issued, fully paid, and non-assessable.

4899-9946-3287.10

On the Effective Date, none of the Reorganized HGE Common Stock will be listed on a national securities exchange. Reorganized HGE may take all necessary actions, if applicable, after the Effective Date to suspend any requirement to (a) be a reporting company under the Securities Exchange Act, and (b) file reports with the Securities and Exchange Commission or any other entity or party.

26.    **Establishment of the Liquidating Trust, Appointment of the Liquidating Trustee, and Approval of the Liquidating Trust Agreement.** On the Effective Date, as set forth in Article 4.3 of the Plan, John Madden shall be appointed the Liquidating Trustee, the Debtors and the Liquidating Trustee shall enter into the Liquidating Trust Agreement, and the Liquidating Trust Assets shall be assigned to, and vest in, the Liquidating Trust automatically without further action by any Person, free and clear of all Claims, Liens, and Interests, and such transfer shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use, or other similar tax. Under no circumstance shall the Debtors or Reorganized HGE or any other party be required to contribute any additional assets to the Liquidating Trust other than the Liquidating Trust Assets. The Liquidating Trustee shall be the exclusive administrator of the assets of the Liquidating Trust (including the Liquidating Trust Assets) for purposes of section 1123(b)(3)(B) of the Bankruptcy Code with respect to any matters involving Class 8 General Unsecured Claims under the Plan for purposes of carrying out the Liquidating Trustee's duties under Liquidating Trust Agreement. For the avoidance of doubt, the administration of the Liquidating Trust and fees and expenses of the Liquidating Trust shall be at the sole expense of the Liquidating Trust. Upon entry of this Confirmation Order, the Liquidation Trust shall be considered a legal entity and permitted to, among other things, obtain an EIN and open a bank account.

27.     **Cancelation of Existing Securities, Agreements, and Interests.** On the Effective

Date, except to the extent otherwise provided in the Plan or this Confirmation Order, all notes,

instruments, certificates, credit agreements, and other documents evidencing Claims, Interests or

Equity shall be canceled, and the obligations of the Debtors or Reorganized HGE thereunder or in

any way related thereto shall be discharged and deemed satisfied in full, released, canceled,

discharged, and of no force and effect, without any need for further action or approval by the

Bankruptcy Court for a Holder to take further action, and the Debtors or Reorganized HGE shall

have no duty, obligation, or liability thereunder except as provided in the Plan and this

Confirmation Order; *provided*, *however*, that the Subsidiary Equity Interests in the Designated

EB-5 Entities will not be retired, cancelled, extinguished and discharged and will be transferred to

Guidepost Global in accordance with the Plan and Confirmation Order.

28.     Holders of, or parties to, such canceled instruments, Claims, Equity, or Interests,

and other documentation will have no rights arising from or relating to such instruments, Interests,

and other documentation, or the cancellation thereof, except the rights provided for or reserved

pursuant to the Plan. Notwithstanding anything to the contrary herein, but subject to any applicable

provisions of Article 4.9 of the Plan.

29.     **Designation and Transfer of EB-5 Entities**. The Debtors shall designate certain

EB-5 Entities (but not their assets unless otherwise provided) in the Plan Supplement to be

transferred to Guidepost Global. On the Effective Date, in consideration for Guidepost Global

funding the Junior DIP Loan and contributing the Guidepost Global Assets, the Debtors will

transfer the Designated EB-5 Entities (but not their assets, except as otherwise set forth in the Plan

Supplement) and the Subsidiary Equity Interests in the Designated EB-5 Entities to Guidepost

Global free and clear of all liens, Claims, encumbrances, and other interests in the Designated EB-5 Entities.

30.     **Exemption from Registration Requirements.** Pursuant to section 1145 of the Bankruptcy Code, or, to the extent that section 1145 of the Bankruptcy Code is either not permitted or not applicable, section 4(a)(2) of the Securities Act, Regulation D promulgated thereunder, Regulation S under the Securities Act, and/or other available exemptions from registration, the offering, issuance, and distribution of Reorganized HGE Common Stock, in each case, as contemplated herein shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable U.S. federal, state, or local Laws requiring registration prior to the offering, issuance, distribution, or sale of securities.

31.     The Reorganized HGE Common Stock to be issued under the Plan on account of Allowed Claims in accordance with, and pursuant to, section 1145 of the Bankruptcy Code will be freely transferable under the Securities Act by the recipients thereof, subject to: (a) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 1145(b) of the Bankruptcy Code and compliance with any applicable securities laws and the rules and regulations of the SEC or state or local securities laws, if any, applicable at the time of any future transfer of such Securities or instruments; and (b) any restrictions on the transferability of such Reorganized HGE Common Stock in the Corporate Documents and any other applicable regulatory approvals.

32.     Any Reorganized HGE Common Stock that may be issued pursuant to the exemption from registration set forth in section 4(a)(2) of the Securities Act, Regulation D or Regulation S promulgated thereunder, and/or other available exemptions from registration of Securities will be considered "restricted securities" under the federal securities laws, will bear

49

customary legends and transfer restrictions, and may not be transferred except pursuant to an

effective registration statement or under an available exemption from the registration requirements

of the Securities Act or any similarly applicable exemption under state or local securities laws and

will be further subject to any restrictions on the transferability of such Reorganized HGE Common

Stock and any other applicable regulatory approvals.

33.     **Section 1146(a) Exemption.** To the fullest extent permitted by section 1146(a) of

the Bankruptcy Code, any transfers (whether from a Debtor to Reorganized HGE, the Liquidating

Trust, or to any other Person) of property under the Plan or pursuant to: (a) the issuance,

distribution, transfer, or exchange of any debt, equity Security, or other interest in the Debtors or

Reorganized HGE including the Reorganized HGE Common Stock, (b) the transactions

contemplated in the Plan; (c) the creation, modification, consolidation, termination, refinancing,

and/or recording of any mortgage, deed of trust, or other security interest, or the securing of

additional indebtedness by such or other means; (d) the making, assignment, or recording of any

lease or sublease; (e) the grant of collateral as security for Reorganized HGE's obligations; or

(f) the making, delivery, or recording of any deed or other instrument of transfer under, in

furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or

other instrument of transfer executed in connection with any transaction arising out of,

contemplated by, or in any way related to the Plan, shall not be subject to any document recording

tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax,

personal property transfer tax, sales or use tax, mortgage recording tax, Uniform Commercial Code

filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental

assessment, and upon entry of this Confirmation Order, the appropriate state or local governmental

officials or agents shall forego the collection of any such tax or governmental assessment and

accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

34.     **Distributions.** The procedures governing distributions in Article 7 of the Plan shall be, and hereby are, approved in their entirety. Except as otherwise set forth in the Plan, the Liquidating Trustee, as applicable, shall make all distributions required under the Plan. The timing of distributions required under the Plan or this Confirmation Order shall be made in accordance with, and as set forth in, the Plan or this Confirmation Order, as applicable.

35.     **Subordination.** The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Liquidating Trust reserves the right to re-classify or seek the reclassification of any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto; *provided*, *however*, that the Liquidating Trust may not re-classify or seek the reclassification of the Allowed Claims included in Class 4 (CN-2 Note Claims) and Class 5 (CN-3 Note Claims).

4899-9946-3287.10

36.      **Release of Liens.** Except as otherwise provided in the Plan, this Confirmation Order, or any contract, instrument, release, or other agreement or document created or entered into, in each case, pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to Reorganized HGE or the Liquidating Trust, as applicable, as set forth in Article 4.10 of the Plan.

37.      Any Holder of such Secured Claim shall be authorized and directed to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by Reorganized HGE or the Liquidating Trustee to evidence the release of such Liens and/or security interests, including the execution, delivery, and filing or recording of such releases. The presentation or filing of this Confirmation Order to or with any federal, state, provincial, or local agency, records office, or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

38.      To the extent that any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to the Plan, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps reasonably requested by the Debtors, the Liquidating Trustee, or Reorganized HGE that are necessary or desirable to record or effectuate the cancelation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or

52

recordings, and Reorganized HGE or the Liquidating Trustee, as applicable, shall be entitled to make any such filings or recordings on such Holder's behalf.

39. The provisions setting forth the release of Liens are appropriate, fair, equitable, and reasonable, and are in the best interests of the Debtors, the Estates, and Holders of Claims and Interests, and are approved in their entirety.

40. **Provisions Regarding Governmental Units.** Subject to the requirements applicable to Governmental Units set forth in the Bar Date Order and the provisions of section 362 of the Bankruptcy Code excepting certain governmental actions, nothing in the Plan or this Confirmation Order shall effect a release of any claim by any Governmental Unit or any state and local authority whatsoever, including, without limitation, any claim arising under the Internal Revenue Code, the environmental Laws, or any criminal Laws of the United States or any state or local authority against any party or Person, nor shall anything in the Plan or this Confirmation Order enjoin the United States or any state or local authority from bringing any claim, suit, action, or other proceedings against any party or Person for any liability of such Persons whatsoever, including, without limitation, any claim, suit, or action arising under the Internal Revenue Code, the environmental Laws, or any criminal Laws of the United States or any state or local authority against such persons, nor shall anything in the Plan or this Confirmation Order exculpate any party or Person from any liability to any Governmental Unit or any state and local authority whatsoever, including any liabilities arising under the Internal Revenue Code, the environmental Laws, or any criminal Laws of the United States or any state or local authority against any party or Person.

41. **Provision Regarding the Global Settlement.** The Plan incorporates and implements a global settlement, a compromise and settlement of numerous issues and disputes between and among the Debtors, the Committee, and Settlement Parties, and is designed to achieve

53

a reasonable and effective resolution of the Chapter 11 Cases. Except as otherwise expressly set forth herein or in the Plan, this global settlement constitutes a settlement of all potential issues and Claims between and among the Debtors, the Committee, and Settlement Parties. For the avoidance of doubt, pursuant to the global settlement, all Settlement Parties and the Girns shall be deemed to waive their distributions or other treatment under the Plan on account of their Claims or Interests, if any.

42.     **Compromise of Controversies.** In accordance with section 1123(b)(3)(A) of the Bankruptcy Code, and in consideration for the distributions and other benefits, including releases, provided under the Plan and with the support of the various creditors, stakeholders, and other parties in interest, including the Committee, the DIP Lenders, and the Settlement Parties, the provisions of the Plan constitute a good faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, or otherwise resolved under the Plan. Those settlements and compromises, including the global settlement, are fair, equitable, and reasonable, and the entry of this Confirmation Order constitutes approval of such settlements and compromises under Bankruptcy Rule 9019.

43.     **Approval of Consents and Authorization to Take Acts Necessary to Implement the Plan.** This Confirmation Order shall constitute all authority, approvals, and consents required, if any, by the laws, rules, and regulations of all states and any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts and transactions referred to in or contemplated by the Plan, the Plan Supplement, the Disclosure Statement, and any documents, instruments, securities, or agreements, and any amendments or modifications thereto. The Proponents are authorized to consummate the Plan after the entry of this Confirmation

4899-9946-3287.10

Order subject to satisfaction or waiver (by the required parties) of the conditions precedent to Consummation set forth in Article 11 of the Plan.

44.      **Professional Compensation.** All requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than forty-five (45) days after the Effective Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims in accordance with the procedures established by the Bankruptcy Court.

45.      Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors, Reorganized HGE, and the Liquidating Trustee, as applicable, may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court. Notwithstanding anything to the contrary in the Plan or Plan Supplement, the engagement or similar retention agreements of the Debtors' professionals shall remain in full force and effect, including after the Effective Date, solely for the purposes of payment of such professionals' Professional Fee Claims through the Effective Date.

46.      **Claim Objection Procedures.** Notwithstanding anything in the Plan or this Confirmation Order to the contrary, no Claim may be automatically expunged or disallowed absent further notice of or action, order, or approval of the Bankruptcy Court pursuant to Bankruptcy Rule 3007.

47.      **Continued Effect of Stays and Injunction.** Unless otherwise provided in the Plan or this Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court that is in

existence upon entry of this Confirmation Order shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or this Confirmation Order shall remain in full force and effect in accordance with their terms.

48. **Nonseverability of Plan Provisions Upon Confirmation.** Each term and provision of the Plan is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan; and (c) nonseverable and mutually dependent.

49. **Post-Confirmation Modifications.** Without need for further order or authorization of the Bankruptcy Court, the Debtors, Reorganized HGE, the Liquidating Trustee, or the Committee, as applicable, are authorized and empowered to make any and all modifications to any and all documents that are necessary or desirable to effectuate the Plan and transactions contemplated therein, in each case that are consistent with the Plan, subject to any applicable consents or consultation rights set forth therein. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Proponents expressly reserve their joint right to revoke or withdraw, or to alter, amend, or modify the Plan, one or more times after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or this Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

50. **Applicable Non-bankruptcy Law.** The provisions of this Confirmation Order, the Plan and related documents, and any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable federal, state, or foreign Law.

51.    **Waiver of Filings.** Any requirement under section 521 of the Bankruptcy Code or Bankruptcy Rule 1007 obligating the Debtors to File any list, schedule, or statement with the Bankruptcy Court or the U.S. Trustee is permanently waived as to any such list, schedule, or statement not Filed as of the Confirmation Date.

52.    **Governmental Approvals Not Required.** This Confirmation Order shall constitute all approvals and consents required, if any, by the Laws, rules, or regulations of any state, federal, or other governmental authority, with respect to the dissemination, implementation, or consummation of the Plan and the Disclosure Statement, any certifications, documents, instruments or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement, including the documents contained in the Plan Supplement, the implementation and consummation of the transactions contemplated therein, and any other documents that are necessary or desirable to implement or consummate those transactions.

53.    **Tennessee Department of Revenue.** Under section 503(b)(1)(D) of the Bankruptcy Code, the Tennessee Department of Revenue shall not be required to file a request for payment of an Administrative Claim.

54.    **Reporting.** After entry of this Confirmation Order, the Debtors or Reorganized HGE, as applicable, shall have no obligation to File with the Bankruptcy Court, serve on any parties, or otherwise provide any party with any other report that the Debtors or Reorganized HGE, as applicable, were obligated to provide under the Bankruptcy Code or an order of the Bankruptcy Court, including obligations to provide any reports to any parties otherwise required under the "first" and "second" day orders entered in these Chapter 11 Cases; *provided* that the Debtors, Reorganized HGE, or the Liquidating Trustee, as applicable, will comply with the U.S. Trustee's

4899-9946-3287.10

quarterly reporting requirements. From the Confirmation Date through the Effective Date, the Debtors will File such reports as are required under the Local Rules.

55.     **Notices of Confirmation and Effective Date.** The Debtors or Reorganized HGE, as applicable, shall cause service of the notice of entry of this Confirmation Order and the occurrence of the Effective Date, substantially in the form attached hereto as **Exhibit B** (the "**Notice of Effective Date**"), to be provided in accordance with Bankruptcy Rules 2002 and 3020(c) on all parties served with notice of the Combined Hearing within fourteen (14) Business Days after the Effective Date or as soon as reasonably practicable thereafter. Notwithstanding the above, no notice of Confirmation or Consummation or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed notice of the Combined Hearing, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address. For those parties receiving electronic service, filing on the docket is deemed sufficient to satisfy such service and notice requirements.

56.     The Notice of Effective Date will have the effect of an order of the Bankruptcy Court, will constitute sufficient notice of the entry of this Confirmation Order to filing and recording officers, and will be a recordable instrument notwithstanding any contrary provision of applicable non-bankruptcy law. The Combined Hearing Notice, this Confirmation Order, and the Notice of Effective Date are adequate under the particular circumstances of these Chapter 11 Cases, and no other or further notice is necessary.

57.     **Failure of Consummation.** If Consummation does not occur, the Plan shall be null and void in all respects, and nothing contained in the Plan or the Disclosure Statement shall:

(a) constitute a waiver or release of any Claims by the Debtors, the Committee, or any Holders of Claims against or Interests in the Debtors; (b) prejudice in any manner the rights of the Debtors, the Committee, any Holders of Claims against or Interests in the Debtors, or any other Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, the Committee, any Holders of Claims or Interests, or any other Entity, respectively.

58.    **Substantial Consummation.** On the Effective Date, the Plan shall be deemed to be substantially consummated (within the meaning set forth in section 1101(2) of the Bankruptcy Code) pursuant to section 1127(b) of the Bankruptcy Code.

59.    **References to and Omissions of Plan Provisions.** References to articles, sections, and provisions of the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan. The failure to specifically include or to refer to any particular article, section, or provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of the Bankruptcy Court that the Plan be confirmed in its entirety, except as expressly modified herein, and incorporated herein by this reference.

60.    **Headings.** Headings utilized herein are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

61.    **Effect of Conflict.** This Confirmation Order supersedes any Bankruptcy Court order issued prior to the Confirmation Date that may be inconsistent with this Confirmation Order. If there is any inconsistency between the terms of the Plan, Liquidating Trust Agreement, and the terms of this Confirmation Order, the terms of this Confirmation Order govern and control.

62.    **Final Order.** This Confirmation Order is a Final Order and the period in which an appeal must be Filed shall commence upon the entry hereof.

59

63.     **Waiver of 14-Day Stay.** Notwithstanding Bankruptcy Rule 3020(e), and to the extent applicable, Bankruptcy Rules 6004(h), 7062, and 9014, this Confirmation Order is effective immediately and not subject to any stay.

64.     **Dissolution of Committee.** On the Effective Date, the Committee and any other statutory committee appointed in the Chapter 11 Cases shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases; except with respect to (a) any continuing confidentiality obligations, (b) preparing and prosecuting requests for allowances of compensation and reimbursement of expenses incurred prior to the Effective Date, including the fees and expenses of the Committee's Professionals, and (c) in the event that the Bankruptcy Court's entry of this Confirmation Order is appealed, participating in such appeal if necessary. Reorganized HGE shall not be responsible for paying any fees or expenses incurred by the Committee Professionals after the Effective Date.

65.     **Retention of Jurisdiction.** The Bankruptcy Court may properly, and upon the Effective Date shall, to the full extent set forth in the Plan, retain jurisdiction over all matters arising out of, and related to, these Chapter 11 Cases, including the matters set forth in Article 12 of the Plan and section 1142 of the Bankruptcy Code. Notwithstanding anything in the Plan or this Confirmation Order to the contrary, this Bankruptcy Court retains jurisdiction to the maximum extent otherwise allowed by Law under the applicable circumstances.

###END OF ORDER###

4899-9946-3287.10

Submitted by:

*/s/ Holland N. O'Neil*
Holland N. O'Neil (TX 14864700)
Thomas C. Scannell (TX 24070559)
**FOLEY & LARDNER LLP**
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667
honeil@foley.com

-and-

Timothy C. Mohan (admitted *pro hac vice*)
**FOLEY & LARDNER LLP**
1144 15th Street, Suite 2200
Denver, CO 80202
Telephone: (720) 437-2000
Facsimile: (720) 437-2200
tmohan@foley.com

-and-

Nora J. McGuffey (TX 24121000)
Quynh-Nhu Truong (TX 24137253)
**FOLEY & LARDNER LLP**
1000 Louisiana Street, Suite 2000
Houston, TX 77002
Telephone: (713) 276-5500
Facsimile: (713) 276-5555
nora.mcguffey@foley.com
qtruong@foley.com

**COUNSEL TO DEBTORS**
**AND DEBTORS IN POSSESSION**

4899-9946-3287.10

# **Exhibit A**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

|  |  |  |
|---|---|---|
| In re: | § | Chapter 11 |
|  | § |  |
| Higher Ground Education, Inc., *et al.*,[1] | § | Case No.: 25-80121-11 (MVL) |
|  | § |  |
| Debtors. | § | (Jointly Administered) |

---

## MODIFIED SECOND AMENDED JOINT PLAN OF REORGANIZATION OF HIGHER GROUND EDUCATION, INC., ITS AFFILIATED DEBTORS, AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

Dated: November 20, 2025

Holland N. O'Neil (TX 14864700)
Thomas C. Scannell (TX 24070559)
**FOLEY & LARDNER LLP**
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667
honeil@foley.com
tscannell@foley.com

Timothy C. Mohan
(admitted *pro hac vice*)
**FOLEY & LARDNER LLP**
1144 15th Street, Suite 2200
Denver, CO 80202
Telephone: (720) 437-2000
Facsimile: (720) 437-2200
tmohan@foley.com

Nora J. McGuffey (TX 24121000)
Quynh-Nhu Truong (TX 24137253)
**FOLEY & LARDNER LLP**
1000 Louisiana Street, Suite 2000
Houston, TX 77002
Telephone: (713) 276-5500
Facsimile: (713) 276-5555
nora.mcguffey@foley.com
qtruong@foley.com

**COUNSEL TO DEBTORS AND DEBTORS IN POSSESSION**

Jason S. Brookner (TX Bar No. 24033684)
Aaron M. Kaufman (TX Bar No. 24060067)
Amber M. Carson (TX Bar No. 24075610)
Emily F. Shanks (TX Bar No. 24110350)
**GRAY REED**
1601 Elm Street, Suite 4600
Dallas, TX 75201
Telephone: (214) 954-4135
Facsimile: (214) 953-1332
jbrookner@grayreed.com
akaufman@grayreed.com
acarson@grayreed.com
eshanks@grayreed.com

**COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal identification number, are: Higher Ground Education Inc. (7265); Guidepost A LLC (8540); Prepared Montessorian LLC (6181); Terra Firma Services LLC (6999); Guidepost Birmingham LLC (2397); Guidepost Bradley Hills LLC (2058); Guidepost Branchburg LLC (0494); Guidepost Carmel LLC (4060); Guidepost FIC B LLC (8609); Guidepost FIC C LLC (1518); Guidepost Goodyear LLC (1363); Guidepost Las Colinas LLC (9767); Guidepost Leawood LLC (3453); Guidepost Muirfield Village LLC (1889); Guidepost Richardson LLC (7111); Guidepost South Riding LLC (2403); Guidepost St Robert LLC (5136); Guidepost The Woodlands LLC (6101); Guidepost Walled Lake LLC (9118); HGE FIC D LLC (6499); HGE FIC E LLC (0056); HGE FIC F LLC (8861); HGE FIC G LLC (5500); HGE FIC H LLC (8817); HGE FIC I LLC (1138); HGE FIC K LLC (8558); HGE FIC L LLC (2052); HGE FIC M LLC (8912); HGE FIC N LLC (6774); HGE FIC O LLC (4678); HGE FIC P LLC (1477); HGE FIC Q LLC (3122); HGE FIC R LLC (9661); LePort Emeryville LLC (7324); AltSchool II LLC (0403). The Debtors' mailing address is 1321 Upland Dr. PMB 20442, Houston, Texas 77043.

## TABLE OF CONTENTS

ARTICLE 1 DEFINITIONS, RULES OF INTERPRETATION, COMPUTATION OF
TIME, AND GOVERNING LAW .................................................................................1
    1.1     Definitions ...............................................................................................1
    1.2     Interpretation, Rules of Construction, Computation of Time, Settlement
             and Governing Law ..............................................................................18
    1.2.1   Defined Terms .......................................................................................18
    1.2.2   Rules of Interpretation ..........................................................................18
    1.2.3   Computation of Time ............................................................................19
    1.2.4   Governing Law ......................................................................................19
    1.2.5   Reference to Monetary Figures .............................................................19

ARTICLE 2 DESIGNATION OF CLAIMS AND INTERESTS .................................19

    2.1     Summary of Designation of Claim and Interests ..................................19

ARTICLE 3 TREATMENT OF CLAIMS AND INTERESTS ...................................20

    3.1     Unclassified Claims ..............................................................................20
    3.2     Administrative Expense Claims ............................................................20
    3.2.1   Application for Administrative Expense Claims ...................................20
    3.2.2   A request for payment of an Administrative ........................................20
    3.2.3   Treatment ..............................................................................................20
    3.2.5   Professional Compensation ...................................................................21
    3.3     Priority Tax Claims and Secured Tax Claims ......................................22
    3.5     Senior DIP Lender Claim ......................................................................23
    3.6     Junior DIP Lender Claim ......................................................................23
    3.7     Class 1 (Bridge CN-3 Secured Lender Claims) ...................................23
    3.8     Class 2 (WTI Secured Lender Claim) ..................................................23
    3.9     Class 3 (CN Note Claims). ...................................................................24
    3.10    Class 4 (Other Secured Claims) ...........................................................24
    3.11    Class 5 (Non-Tax Priority Claims) .......................................................25
    3.12    Class 6 (General Unsecured Claims) ....................................................26
    3.13    Class 7 (Intercompany Claims) ............................................................26
    3.14    Class 8 (Equity) ....................................................................................26
    3.14.1  Impairment ............................................................................................26
    3.14.2  Treatment ..............................................................................................26
    3.15    Class 9 (Subsidiary Equity Interests) ...................................................26
    3.15.1  Impairment ............................................................................................26
    3.15.2  Treatment ..............................................................................................27
    3.17    Voting Classes; Deemed Accepted .......................................................27
    3.18    Subordinated Claims .............................................................................27
    3.19    Controversy Concerning Impairment ...................................................27
    3.20    Nonconsensual Confirmation Pursuant to Section 1129(b) of the
             Bankruptcy Code ..................................................................................27

i

ARTICLE 4 MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN .......28

    4.1    Sources of Consideration for Plan Distributions .......28
    4.2    Global Settlement .......28
    4.2.1    The Settlement Party Payment .......28
    4.2.1.1.Settlement Party Payment True-Up Mechanism .......28
    4.2.2    Plan Sponsor Consideration .......28
    4.2.3    Junior DIP Lender Consideration .......28
    4.2.4    Pre-Effective Date Derivative Standing .......29
    4.2.4.1.Retained Causes of Action Against Non-Released D&Os. .......29
    4.2.4.2.D&O Insurance Policies .......29
    4.2.4.3.Post-Effective Date Standing .......29
    4.2.5    Settlement Parties Release of Certain Claims .......29
    4.2.6    Settlement Party Mutual Releases .......29
    4.3    Liquidating Trust. .......29
    4.4    Preservation of Debtors' Retained Causes of Action. .......30
    4.5    Authorization and Issuance of Reorganized HGE Common Stock .......31
    4.6    Contribution of Guidepost Global Assets .......32
    4.7    Assignment of Transferred Executory Contracts / Unexpired Leases to Guidepost Global. .......32
    4.8    Transfer of Designated EB-5 Entities to Guidepost Global .......32
    4.9    Cancellation and Surrender of Securities and Agreements .......32
    4.10    Release of Liens .......33
    4.11    Vesting of Reorganized HGE Assets and Operation of Businesses into Reorganized HGE .......33
    4.12    Satisfaction of Claims or Interests .......33
    4.13    Continuation of Bankruptcy Injunction or Stays .......33
    4.14    Administration Pending Effective Date .......34
    4.15    Exemption From Securities Laws .......34
    4.16    "Change of Control" Provisions .......34
    4.17    Substantive Consolidation of the Debtors for Voting and Distribution Purposes Only .......34
    4.18    Dissolution of Certain Debtors. .......34
    4.19    Dissolution of the Committee and Cessation of Fee and Expense Payments. .......35

ARTICLE 5 CORPORATE GOVERNANCE AND MANAGEMENT OF REORGANIZED HGE .......35

    5.1    Corporate Action and Existence .......35
    5.2    Management and Board of Reorganized HGE .......36
    5.3    Disclosure of any Insiders to be Employed or Retained by Reorganized HGE .......36

ARTICLE 6 VOTING .......36

    6.1    Voting Generally .......36

ii

| | | |
|---|---|---|
| 6.2 | Deemed Acceptance | 37 |
| 6.3 | Nonconsensual Confirmation | 37 |

**ARTICLE 7 DISTRIBUTIONS UNDER THE PLAN** ................................................ 37

| | | |
|---|---|---|
| 7.1 | Distributions to Holders of Allowed Claims Only | 37 |
| 7.2 | Delivery of Distributions | 37 |
| 7.2.1 | In General | 37 |
| 7.2.2 | Timing of Distributions | 37 |
| 7.2.3 | Distributions of Unclaimed Property | 37 |
| 7.3 | Time Bar to Cash Payments | 38 |
| 7.4 | Setoffs | 38 |

**ARTICLE 8 PROCEDURES FOR DISPUTED CLAIMS** ........................................... 38

| | | |
|---|---|---|
| 8.1 | Resolution of Disputed Claims | 38 |
| 8.2 | Estimation of Claims | 38 |
| 8.3 | No Partial Distributions Pending Allowance | 39 |
| 8.4 | Distributions After Allowance | 39 |

**ARTICLE 9 EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ...................... 39

| | | |
|---|---|---|
| 9.1 | Assumption or Rejection of Executory Contracts and Unexpired Leases | 39 |
| 9.2 | Cure of Defaults of Assumed Executory Contracts and Unexpired Leases | 39 |
| 9.3 | Rejection of Compensation and Benefit Programs | 40 |
| 9.4 | Pass-Through Assets | 40 |
| 9.5 | D&O Insurance Policies | 41 |
| 9.6 | Modifications, Amendments, Supplements, Restatements, or Other Agreements | 41 |
| 9.7 | Bar Date for Filing Claims for Rejection Damages | 41 |
| 9.8 | Reservation of Rights | 42 |

**ARTICLE 10 SETTLEMENT, RELEASES, INJUNCTIONS, AND DISCHARGE** ........ 42

| | | |
|---|---|---|
| 10.1 | Comprise and Settlement of Claims, Interests, and Controversies | 42 |
| 10.2 | Releases by the Debtors | 42 |
| 10.3 | Releases by Releasing Parties | 44 |
| 10.4 | Exculpation | 46 |
| 10.5 | Injunction | 47 |
| 10.5.3 | Violation of Injunctions | 49 |
| 10.6 | Discharge of Claims and Termination of Interests | 49 |

**ARTICLE 11 CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN** ........................................................................ 50

| | | |
|---|---|---|
| 11.1 | Conditions Precedent to Confirmation | 50 |
| 11.2 | Conditions Precedent to the Effective Date | 50 |
| 11.3 | Waiver of Conditions | 51 |
| 11.4 | Effect of Failure of Conditions | 51 |

11.5    Substantial Consummation................................................................................51

ARTICLE 12 RETENTION OF JURISDICTION............................................................52

12.1    Retention of Jurisdiction..................................................................................52

ARTICLE 13 MISCELLANEOUS PROVISIONS............................................................53

13.1    Immediate Binding Effect................................................................................53
13.2    Effectuating Documents; Further Transactions..............................................54
13.3    Entire Agreement.............................................................................................54
13.4    Exhibits............................................................................................................54
13.5    Exemption From Certain Transfer Taxes........................................................54
13.6    Amendment, Modification and Severability of Plan Provisions.....................54
13.7    Withholding and Reporting Requirements.......................................................55
13.8    Closing of Chapter 11 Cases...........................................................................55
13.9    Conflicts...........................................................................................................55
13.10   Service of Documents......................................................................................56
13.11   Binding Effect..................................................................................................57
13.12   No Admissions..................................................................................................57
13.13   Headings...........................................................................................................58

iv

Higher Ground Education, Inc. together with its affiliated Debtors, as debtors and debtors in possession, and the Official Committee of Unsecured Creditors propose this modified second amended joint plan of reorganization for the resolution of outstanding Claims against and Interests in the Debtors pursuant to Chapter 11 of the Bankruptcy Code. Capitalized terms used but not otherwise defined herein shall have the meanings given to such terms in <u>Article 1</u>. Holders of Claims and Interests should refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, historical financial information, projections of future operations, a liquidation analysis, as well as a summary and description of the Plan and certain related matters. The Debtors and the Committee are the Proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.

**ALL HOLDERS OF CLAIMS AND INTERESTS, TO THE EXTENT APPLICABLE, ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. NO MATERIALS, OTHER THAN THE DISCLOSURE STATEMENT AND ANY EXHIBITS AND SCHEDULES ATTACHED THERETO OR REFERENCED THEREIN, HAVE BEEN APPROVED BY THE PROPONENTS FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THE PLAN.**

**FOR AVOIDANCE OF DOUBT, THE PLAN APPLIES AND PRESERVES THE MAXIMUM GLOBAL JURISDICTION POSSIBLE UNDER APPLICABLE U.S. LAW, INCLUDING, WITHOUT LIMITATION, OVER THE ASSETS OF THE DEBTORS WHEREVER LOCATED.**

## ARTICLE 1
### DEFINITIONS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW

1.1     <u>Definitions</u>. As used in the Plan, the following terms shall have the following meanings:

1.1.1     "<u>1125(e) Exculpation Parties</u>" means, collectively, and in each case in its capacity as such: (a) each of the Exculpated Parties; (b) Reorganized HGE; (c) the Professional Persons retained in these Chapter 11 Cases; and (d) with respect to the foregoing parties, the Related Parties thereof to the extent permitted under section 1125(e) of the Bankruptcy Code.

1.1.2     "<u>Accounts Receivable</u>" means all accounts receivable of the Debtors as of the Effective Date.

1.1.3     "<u>Administrative Expense Claim</u>" means a Claim for costs and expenses of administration of the Estates pursuant to sections 328, 330, 331, 503(b), 507(a)(2), 507(b) or, if applicable, 1114(e)(2) of the Bankruptcy Code, including without limitation: (a) any actual and necessary expenses of preserving the Debtors' Estates, including wages, salaries or commissions for services rendered after the commencement of the Chapter 11 Cases, certain taxes, fines and penalties, any actual and necessary post-petition expenses

of operating the business of the Debtors, including post-petition indebtedness or obligations, including the Senior DIP Lender Claim and the Junior DIP Lender Claim, incurred by or assessed against the Debtors in connection with the normal, usual or customary conduct of their business, or for the acquisition or payment of goods or lease of property, or for providing of services to the Debtors; (b) expenses pursuant to section 503(b)(9) of the Bankruptcy Code; (c) all Statutory Fees; and (d) Professional Fee Claims. The Liquidating Trustee shall timely pay all post-confirmation quarterly fees related to distributions from the Liquidating Trust as they accrue until the date of the closing of the Chapter 11 Cases. For the avoidance of doubt, subject to <u>Article 3.2.2</u>, Ordinary Course Liabilities incurred by the Debtors under the DIP Loans shall be Allowed Administrative Expense Claim.

1.1.4 "<u>Administrative Claims Bar Date</u>" means the first business day that is thirty (30) days following the Effective Date, except as otherwise specifically set forth in the Plan or a Final Order.

1.1.5 "<u>Affiliate</u>" has the meaning set forth in section 101(2) of the Bankruptcy Code when used in reference to a Debtor, and when used in reference to an Entity other than a Debtor, means any other Entity that directly or indirectly wholly owns or controls such Entity or any other Entity that is directly or indirectly wholly-owned or controlled by such Entity.

1.1.6 "<u>Allowed</u>" means, with respect to any Claim or Interest, except as otherwise specified herein, any of the following: (a) a Claim or Interest that has been listed by the Debtors in their Schedules and is not identified as disputed, contingent, or unliquidated and as to which (i) no objection has been filed on or before the Claims Objection Deadline and (ii) no contrary Proof of Claim has been filed; (b) a Claim or Interest that is not a Disputed Claim or Interest, except to the extent that any such Disputed Claim or Interest has been allowed by a Final Order; (c) that is evidenced by a Proof of Claim filed by the Claims Bar Date and as to which no objection has been interposed on or before the Claims Objection Deadline or such other applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court; or (d) a Claim or Interest that is expressly allowed (i) by a Final Order, (ii) by an agreement between the Holder of such Claim or Interest and the Debtors or the Liquidating Trustee, or (iii) pursuant to the terms of the Plan; *provided, however,* that unless expressly waived by the Plan, the Allowed amount of a Claim shall be subject to and shall not exceed the limitations or maximum amounts permitted by the Bankruptcy Code, including sections 502 or 503 of the Bankruptcy Code, to the extent applicable.

1.1.7 "<u>Approved Budget</u>" means the budget agreed to by the Debtors, the DIP Lenders, and the Committee and attached as Exhibit A to the DIP Order (as may be amended or otherwise modified from time to time pursuant to the terms of the DIP Order).

1.1.8 "<u>Avoidance Actions</u>" means all Claims, Causes of Action, or remedies that have been or may be asserted by or on behalf of the Debtors or their Estates under the Bankruptcy Code or applicable non-bankruptcy law, including claims, Causes of

2

Action, or remedies under sections 502, 510, 542, 543, 544, 545, and 547 through 553 of the Bankruptcy Code, or under similar or related local, state, federal, foreign law, or common law.

1.1.9 "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as codified in title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, now in effect and as amended by the Bankruptcy Abuse Prevention and Consumer Prevention Act of 2005 or hereafter amended (to the extent any such amendments are applicable to the Chapter 11 Cases).

1.1.10 "Bankruptcy Court" means the United States Bankruptcy Court for the Northern District of Texas, or any other court having jurisdiction over these Chapter 11 Cases.

1.1.11 "Bankruptcy Rules" means, collectively, the (a) Federal Rules of Bankruptcy Procedure and (b) Local Rules of the Bankruptcy Court, all as now in effect or hereafter amended (to the extent any such amendments are applicable to the Chapter 11 Cases).

1.1.12 "Bridge CN-3 Notes" means the series CN-3 convertible promissory notes entered into on and after January 15, 2025. The Bridge CN-3 Notes are collateralized by a priming lien over the assets of Higher Ground Education, superior to the liens of WTI in a principal amount of up to $5,000,000.

1.1.13 "Bridge CN-3 Secured Lenders" means, individually and collectively, the Holders of Bridge CN-3 Notes.

1.1.14 "Business Day" means any day, excluding Saturdays, Sundays or "legal holidays" as defined in Bankruptcy Rule 9006(a), or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

1.1.15 "Cash" means legal tender of the United States of America including, but not limited to, bank deposits, checks and other similar items.

1.1.16 "Cash-on-Hand" means all Cash reflected on the Debtors' balance sheet as of the Effective Date, including, without limitation, all drawn and unutilized advances from the DIP Loans, and all Cash in their bank accounts, but excluding any Cash held or required to be held in the Professional Holdback Escrow Account.

1.1.17 "Causes of Action" means any: (a) claims, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, and franchises; (b) all rights of setoff, counterclaim, or recoupment and Claims on contracts or for breaches of duties imposed by law; (c) rights to object to Claims or Interests; (d) claims pursuant to sections 362, 510, 542, 543, 544, 545, 546, 547, 548, 549, 550, or 553 of the Bankruptcy Code; and (e) claims and defenses as fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code of any kind or character whatsoever, known or unknown, contingent or

3

non-contingent, matured or unmatured, suspected or unsuspected, whether arising before, on, or after the Petition Date including through the Effective Date, in contract, in tort, in law, or in equity, or pursuant to any other theory of law, and whether asserted or assertable directly or derivatively.

1.1.18 "CEA" means Cosmic Education Americas Limited and its Related Parties.

1.1.19 "Chapter 11 Cases" means the jointly administered bankruptcy cases of the Debtors commenced under Chapter 11 of the Bankruptcy Code, and jointly administered under *In re Higher Ground Education, Inc.*, *et al.* (Case 25-80121-11 (MVL).

1.1.20 "Claim" means a "claim," as defined in section 101(5) of the Bankruptcy Code, against any of the Debtors.

1.1.21 "Claims Bar Date" means the date or dates fixed by the Claims Bar Date Order or applicable provisions of the Bankruptcy Code.

1.1.22 "Claims Bar Date Order" means that certain order entered by the Bankruptcy Court on June 20, 2025 [Docket No. 57], establishing the Claims Bar Dates.

1.1.23 "Claims Objection Deadline" means the deadline for objecting to Proofs of Claim, which date shall be the date which is 180 days following the Effective Date, *provided* that Reorganized HGE or the Liquidating Trustee, as applicable, may seek additional extensions of this date from the Bankruptcy Court.

1.1.24 "Class" means a class of Claims or Interests as listed in Article 2 of the Plan pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code.

1.1.25 "Closing" means the closing of the transactions contemplated under Article 4 of the Plan.

1.1.26 "CN Notes" means, collectively, the CN-1 Notes, CN-2 Notes, and CN-3 Notes.

1.1.27 "CN-1 Notes" means, collectively, the first series of convertible promissory notes issued pursuant to the Note Purchase Agreement that are designated as CN-1 Notes and in the aggregate principal amount of approximately $33,566,465.

1.1.28 "CN-2 Notes" means, collectively, the second series of convertible promissory notes issued pursuant to the Note Purchase Agreement that are designated as CN-2 Notes and in the aggregate principal amount of approximately $41,304,319.

1.1.29 "CN-3 Notes" means, collectively, the third series of convertible promissory notes issued pursuant to the Note Purchase Agreement that are designated as CN-3 Notes and in the aggregate principal amount of approximately $42,967,148.

4

1.1.30 "<u>CN Note Claim</u>" means the Claims of holders of CN Notes, other than Bridge CN-3 Notes.

1.1.31 "<u>CN-1 Note Claim</u>" means the Claims of holders of CN-1 Notes.

1.1.32 "<u>CN-2 Note Claim</u>" means the Claims of holders of CN-2 Notes.

1.1.33 "<u>CN-3 Note Claim</u>" means the Claims of holders of CN-3 Notes, other than Bridge CN-3 Notes.

1.1.34 "<u>Combined Hearing</u>" means the hearing held by the Bankruptcy Court to consider confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code and final approval of the Disclosure Statement.

1.1.35 "<u>Committee</u>" means the statutory committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code by the U.S. Trustee on July 8, 2025, pursuant to the *Notice of Appointment of the Official Unsecured Creditors' Committee* [Docket No. 158].

1.1.36 "<u>Confirmation</u>" means the Bankruptcy Court's confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, following the Debtors' satisfaction of the elements of section 1129.

1.1.37 "<u>Confirmation Date</u>" means the day on which the Confirmation Order is entered by the Bankruptcy Court on its docket.

1.1.38 "<u>Confirmation Order</u>" means the order of the Bankruptcy Court approving Confirmation of the Plan, which shall be in form and substance acceptable to the Debtors, the Committee, and the Plan Sponsor.

1.1.39 "<u>Consenting Creditors</u>" means, collectively, the following, in each case in its capacity as such with each being a "<u>Consenting Creditor</u>": (a) all Holders of Claims or Interests that vote to accept or are deemed to accept the Plan <u>and</u> who do not check the box on the applicable form to affirmatively opt out of the releases contained in <u>Article 10.3</u>; and (b) all Holders of Claims or Interests that abstain from voting on the Plan, vote to reject the Plan, or are deemed to reject the Plan <u>and</u> who do not (i) check the box on the applicable form to affirmatively opt out of the releases contained in <u>Article 10.3</u> or (ii) object to the Plan in respect of the releases.

1.1.40 "<u>Consummation</u>" means the closing of transactions and delivery of payments to be made on or as soon as reasonably practicable after the Effective Date.

1.1.41 "<u>Corporate Documents</u>" means, as applicable, the certificate of incorporation and by-laws (or any other applicable organizational documents) of the Debtors in effect as of the Petition Date, as may be amended.

1.1.42 "<u>Cure Claim</u>" means a Claim (unless waived or modified by the applicable counterparty) based upon a Debtor's defaults under an Executory Contract or an

5

Unexpired Lease assumed by such Debtor under section 365 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

1.1.43 "D&O Claim Resolution" means the settlement or any other resolution of the Debtors' Retained Causes of Action against the Non-Released D&Os.

1.1.44 "D&O Insurance Carrier" means an Entity that issued a D&O Insurance Policies to the Debtors.

1.1.45 "D&O Insurance Policies" means any insurance policies to which one or more of the Debtors is a party that provides liability coverage for any of the Debtors' D&Os.

1.1.46 "D&O Insurance Proceeds" means any proceeds available from the D&O Insurance Policies arising from the Debtors' Retained Causes of Action against the Debtors' D&Os.

1.1.47 "Debtor Release" means the release given by the Debtors to the Released Parties as set forth in Article 10.2 of the Plan.

1.1.48 "Debtors" means, collectively, Higher Ground Education, Inc.; Guidepost A LLC; Prepared Montessorian LLC; Terra Firma Services LLC; Guidepost at Home LLC and each of the other Debtors and Debtors in Possession identified on **Schedule 1.1.48** to the Plan.

1.1.49 "Debtors' D&Os" means the Debtors' directors and officers, current and former.

1.1.50 "Debtors' Retained Causes of Action" means any and all potential Claims, Causes of Action, and Retained Causes of Action against the Non-Released D&Os and other Claims, Causes of Action, and Retained Causes of Action not acquired by the Plan Sponsor and/or DIP Lenders, as more specifically listed in the Plan Supplement. For the avoidance of doubt, the Debtors' Retained Causes of Action do not include any Claims or Causes of Action against a Released Party. Notwithstanding any other releases provided herein by the Debtors, the Debtors' Retained Causes of Action shall not be released.

1.1.51 "Debtors In Possession" means the Debtors when acting in the capacity of representative of each of their Estates in the Chapter 11 Cases.

1.1.52 "Definitive Documents" means, without limitation, (a) the DIP Financing Documents, (b) the Plan (including all Plan Supplements), (c) the Disclosure Statement, (d) the order approving the Disclosure Statement, (e) the Confirmation Order, (f) any other substantive motion or request for relief filed with the Bankruptcy Court, and (g) any other documents or exhibits related to or contemplated in the foregoing clauses (a) through (f), in each case in form and substance consistent with the Plan, and, except as

4899-3615-0649.1

otherwise set forth herein, reasonably acceptable to the Debtors, Committee, and Plan Sponsor.

1.1.53 "Designated EB-5 Entities" means those certain Debtor entities (but not their assets, except as otherwise designated on in the Plan Supplement) designated in the Plan Supplement to be transferred to Guidepost Global on the Effective Date.

1.1.54 "DIP Financing Order" means, together, the interim [Docket No. 63] and final [Docket No. 253] orders approving the Debtors' entry into the Senior DIP Loan and the Junior DIP Loan.

1.1.55 "DIP Financing Documents" means, together, the DIP Financing Order, the Senior DIP Promissory Note, and the Junior DIP Promissory Note.

1.1.56 "DIP Lender" means, individually and collectively, the Junior DIP Lender and the Senior DIP Lender.

1.1.57 "DIP Lender Claim" means, individually and collectively, the Senior DIP Lender Claim and the Junior DIP Lender Claim pursuant to the DIP Financing Documents.

1.1.58 "DIP Loans" means, individually and collectively, (i) the Senior DIP Loan in the aggregate amount of up to five million five hundred thousand dollars ($5,500,000) and (ii) the Junior DIP Loan in the amount of at least two million five hundred thousand dollars ($2,500,000), to be provided by the DIP Lenders to the Debtors on the terms and conditions set forth in the DIP Financing Order, the Senior DIP Promissory Note and the Junior DIP Promissory Note.  For the avoidance of doubt, subject to the terms thereof, the purpose of the DIP Loans is to fund the Ordinary Course Liabilities of the Debtors, including (a) working capital and general corporate purposes and (b) bankruptcy related fees, costs, and expenses, in each cash with respect to clauses (a) and (b), all in accordance with the Approved Budget.

1.1.59 "Disclosure Statement" means the *Second Amended Disclosure Statement for the Second Amended Joint Plan of Reorganization of Higher Ground Education, Inc., Its Affiliated Debtors, and the Official Committee of Unsecured Creditors*, dated October 13, 2025 and filed by the Debtors with the Bankruptcy Court, including all exhibits and schedules thereto, as may be amended or supplemented.

1.1.60 "Disputed Claim or Interest" means a Claim or Interest, or any portion thereof, as to which any one of the following applies:  (a) that is listed on the Schedules as unliquidated, disputed, contingent, or unknown (b) that is the subject of a timely objection or request for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules, any applicable order of the Bankruptcy Court, the Plan or applicable non-bankruptcy law, which objection or request for estimation has not been withdrawn, resolved or overruled by a Final Order; or (c) that is otherwise designated as a "Disputed Claim" pursuant to the Plan.

1.1.61  "Distribution Date" means the date on which the Liquidating Trustee first makes distributions from the Liquidating Trust Assets.

1.1.62  "EB-5 Investors" means the investors in Designated EB-5 Entities who invested in Designated EB-5 Entities under the EB-5 immigrant investor visa program of the Immigration and Nationality Act and related regulations.

1.1.63  "EB5AN" means, collectively, EB5AN Investment Management, LLC and EB5AN, LLC.

1.1.64  "Effective Date" means the first Business Day after the Confirmation Date on which (a) the conditions to the occurrence of the Effective Date have been satisfied or waived pursuant to Article 11 hereof and (b) no stay of the Confirmation Order is in effect.

1.1.65  "Entity" means an entity as such term is defined in section 101(15) of the Bankruptcy Code.

1.1.66  "Estate" or "Estates" means, individually, the estate of each Debtor in the Chapter 11 Cases, or, collectively, the estates of all of the Debtors in the Chapter 11 Cases, created pursuant to section 541 of the Bankruptcy Code.

1.1.67  "Equity" means any interest in Higher Ground Education represented by ownership of common or preferred stock, including, to the extent provided by applicable law, any purchase right, warrant, stock option or other equity or debt security (convertible or otherwise) evidencing or creating any right or obligation to acquire or issue any of the foregoing, including all unissued and/or authorized shares of such common or preferred stock; *provided*, *however*, that Subsidiary Equity Interests shall be excluded from the definition of Equity, and shall not be treated as Equity or Equity Interests under the Plan.

1.1.68  "Excess Surplus DIP Cash" means the sum of all Surplus DIP Cash and Plan Sponsor Consideration in excess of $500,000.

1.1.69  "Exculpated Parties" means collectively, and in each case in its capacity as such: (a) the Debtors; (b) the Independent Director; and (c) the Committee and each of its members.

1.1.70  "Executory Contract" means a contract to which a Debtor is a party that is subject to assumption or rejection pursuant to section 365 of the Bankruptcy Code.

1.1.71  "Final Order" means, as applicable, an order or judgment entered by the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, stayed, modified or amended, and as to which the time to appeal, petition for certiorari, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari, or motion or other proceedings for a new trial, reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, move for a new trial, reargue, or rehear shall have been waived in writing in form and substance satisfactory to the Debtors or, in the

8

event that an appeal, writ of certiorari, new trial or reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court or other applicable court shall have been affirmed by the highest court to which such order or judgment was appealed, or certiorari has been denied, or from which a new trial, reargument or rehearing was sought, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument, or rehearing shall have expired; *provided, however,* that the possibility that a motion under section 502(j) of the Bankruptcy Code, Rules 59 or 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules may be but has not then been filed with respect to such order or judgment shall not cause such order or judgment not to be a Final Order.

1.1.72 "General Unsecured Claim" means any prepetition Claim against the Debtors that is not an Administrative Expense Claim, Priority Tax Claim, Secured Tax Claim, Bridge CN-3 Secured Lender Claim, WTI Secured Lender Claim, CN Note Claim, Other Secured Claim, Non-Tax Priority Claim, Intercompany Claim, Equity Interest, Subsidiary Equity Interest, or a Claim that is otherwise paid in full prior to the Effective Date pursuant to an order of the Bankruptcy Court.

1.1.73 "Girns" means, individually and collectively, Ramandeep (Ray) Girn and Rebecca Girn.

1.1.74 "Governing Body" means, in each case in its capacity as such, the board of directors, board of managers, manager, managing member, general partner, investment committee, special committee, or such similar governing body of any of the Debtors or Reorganized HGE, as applicable.

1.1.75 "Guidepost Global" means Guidepost Global Education, Inc.

1.1.76 "Guidepost Global Assets" means (a) Guidepost Global's entire rights and interests in its current elementary, middle and high school curriculum assets, including associated instructional videos and the Montessorium brand and trademarks and (b) an "as is" fully paid up, perpetual "right to use" license to Guidepost Global's intellectual property, including the Altitude learning management system.

1.1.77 "Higher Ground Education" means Higher Ground Education, Inc.

1.1.78 "Holder" means the beneficial holder of any Claim or Interest.

1.1.79 "Immigration Information" means all documents and certifications reasonably necessary for the EB-5 Investors to complete their visa interviews and petitions to remove conditions on permanent resident status and to respond to any other document requests from U.S. Citizenship and Immigration Services.

1.1.80 "Impaired" means, when used with reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

4899-3615-0649.1

1.1.81 "<u>Independent Director</u>" means Marc D. Kirshbaum.

1.1.82 "<u>Insider</u>" has the meaning set forth in section 101(31) of the Bankruptcy Code.

1.1.83 "<u>Instrument</u>" means any share of stock, security, promissory note, bond, or any other 'Instrument,' as that term is defined in section 9-102(47) of the Uniform Commercial Code in effect on the Petition Date.

1.1.84 "<u>Intercompany Claim</u>" means any Claim held by a Debtor against another Debtor.

1.1.85 "<u>Interest</u>" means the interest of any holder of an "equity security" (as defined in section 101(16) of the Bankruptcy Code) represented by any issued and outstanding shares of Equity, Subsidiary Equity Interests, or other Instrument evidencing a present ownership interest in any of the Debtors, whether or not transferable, or any option, warrant or right, contractual or otherwise, to acquire any such interest and any redemption, conversion, exchange, voting, participation and dividend rights and liquidation preferences relating to any such equity securities.

1.1.86 "<u>Judicial Code</u>" means title 28 of the United States Code, 28 U.S.C. §§ 1-4001.

1.1.87 "<u>Junior DIP Financing Documents</u>" means, together, the DIP Financing Order and the Junior DIP Promissory Note.

1.1.88 "<u>Junior DIP Lender</u>" means Guidepost Global, in its capacity as lender under the Junior DIP Financing Documents, upon Bankruptcy Court approval of the DIP Financing Order.

1.1.89 "<u>Junior DIP Lender Claim</u>" means any and all Claims arising from, under or in connection with the Junior DIP Financing Documents.

1.1.90 "<u>Junior DIP Loan</u>" means the loans made by Junior DIP Lender pursuant to the Junior DIP Financing Documents.

1.1.91 "<u>Junior DIP Promissory Note</u>" means the Junior Debtor In Possession Promissory Note, in form and substance attached to the DIP Financing Order, as executed by the Debtors following the approval of the DIP Financing Order by the Bankruptcy Court.

1.1.92 "<u>Learn</u>" means Learn Capital, LLC and its Related Parties.

1.1.93 "<u>Lien</u>" has the meaning set forth in section 101(37) of the Bankruptcy Code.

10

1.1.94 "<u>Limited EB-5 Interests</u>" means the interests held by EB-5 Investors in Designated EB-5 Entities as of the Effective Date.

1.1.95 "<u>Liquidating Trust</u>" means that certain trust that will come into existence on the Effective Date, which shall be formed pursuant to, and governed by, the provisions of the Plan and the Liquidating Trust Agreement.

1.1.96 "<u>Liquidating Trust Agreement</u>" means the agreement establishing and governing the Liquidating Trust dated as of the Effective Date, substantially in the form included in the Plan Supplement.

1.1.97 "<u>Liquidating Trust Assets</u>" means, collectively, the following assets: (a) the Surplus DIP Cash; (b) the Settlement Party Payment; (c) all rights of the Debtors or their Estates existing on the Effective Date under the D&O Insurance Policies, including the D&O Insurance Proceeds and Causes of Action against insurers providing such policies; (d) the Debtors' Retained Causes of Action; (e) the Plan Sponsor Consideration; and (f) the Debtors' attorney-client privilege and work product as necessary to prosecute the Debtors' Retained Causes of Action.  Except as otherwise prescribed by this Plan or the Liquidating Trust Agreement, the Liquidating Trust Assets shall be transferred to the Liquidating Trust by the Debtors, Holders of Claims, and Holders of Interests, or by any other Person then in possession of Liquidating Trust Assets, as applicable, on the Effective Date.

1.1.98 "<u>Liquidating Trust Beneficiaries</u>" means Holders of beneficial interests in the Liquidating Trust.

1.1.99 "<u>Liquidating Trustee</u>" means the Person or Entity (or any successor thereto) appointed by the Committee, in consultation with the Debtors and Plan Sponsor, who or which shall have the rights, powers, and duties as set forth in this Plan and the Litigation Trust Agreement.

1.1.100 "<u>Non-Released D&Os</u>" means Greg Mauro, Rob Hutter, Zheng Yu Huang, Ramandeep (Ray) Girn, and Jonathan McCarthy, each solely in their capacity as a director or officer, as applicable.

1.1.101 "<u>Non-Tax Priority Claim</u>" means a Claim, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

1.1.102 "<u>Note Purchase Agreement</u>" means the Note Purchase Agreement (together with the related exhibits, schedules, and transaction documents) by and between Higher Ground Education, as borrower, and each lender on the Schedule of Lenders thereto, dated May 31, 2024, as amended by the Amendment to Note Purchase Agreement, effective as of June 10, 2024, as amended by the Second Amendment to Note Purchase Agreement, effective as of September 30, 2024, as amended by the Third Amendment to Note Purchase Agreement, effective as of December 31, 2024 (as amended, supplemented or otherwise modified).

1.1.103 "Ordinary Course Liabilities" means indebtedness arising in the ordinary course of the Debtors' business operations, solely to the extent provided for in the Approved Budget, and the postpetition financing incurred to fund such business operations following Bankruptcy Court approval.

1.1.104 "Other Secured Claim" means any Secured Claim other than the DIP Lender Claims, Bridge CN-3 Lender Claim, WTI Secured Lender Claims, CN Note Claims, and Secured Tax Claims.

1.1.105 "Pass-Through Assets" shall have the meaning set forth in Article 9.4 of the Plan.

1.1.106 "Person" has the meaning set forth in section 101(41) of the Bankruptcy Code.

1.1.107 "Petition Date" means, together, June 17, 2025 and June 18, 2025, the dates on which each of the Debtors filed their voluntary petitions under Chapter 11 of the Bankruptcy Code commencing these Chapter 11 Cases.

1.1.108 "Plan" means this joint plan of reorganization and any schedules, exhibits, and other attachments hereto, as it may be amended, modified, or supplemented from time to time.

1.1.109 "Plan Sponsor" means 2HR Learning, Inc.

1.1.110 "Plan Sponsor Consideration" means the amount paid by the Plan Sponsor to the Liquidating Trust, which shall total the amount of $5.5 million *minus* the Senior DIP Lender Claim.

1.1.111 "Plan Supplement" means the compilation of documents, including any exhibits to this Plan not included herewith, that the Proponents shall file by the Plan Supplement Deadline with the Bankruptcy Court in one or more parts of volumes, as the same may be amended, supplemented, or modified from time to time on the terms set forth herein, containing, without limitation: (a) the form of Liquidating Trust Agreement; (b) a schedule of the Transferred Executory Contracts / Unexpired Leases; (c) a schedule of the Reorganized HGE Contracts or Leases; (d) a schedule of Debtors' Retained Causes of Action; (e) a schedule of Reorganized HGE Assets; (f) a schedule of the Reorganized HGE Subsidiaries; (g) the identity and compensation of the Liquidating Trustee; and (h) Reorganized HGE Corporate Documents. The Plan Supplement shall be deemed incorporated into and part of this Plan as if set forth herein in full; *provided* that in the event of a conflict between this Plan and the Plan Supplement, the Plan shall control.

1.1.112 "Plan Supplement Deadline" means such date that is at least seven (7) days prior to the Voting Deadline and the deadline to object to confirmation of the Plan (or such later date as may be authorized by the Bankruptcy Court) or if such date is not a Business Day, the first date proceeding that date that is a Business Day.

1.1.113 "Priority Tax Claim" means a Claim that is entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.

1.1.114 "Professional Fee Claims" means the Claims of (a) Professional Persons and (b) any Person making a Claim for compensation or expense reimbursement under section 503(b) of the Bankruptcy Code, in each case for reasonable compensation or reimbursement of reasonable costs and expenses relating to services performed during the period commencing on the Petition Date and ending on (and including) the Effective Date.

1.1.115 "Professional Fee Order" means the *Order (I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals and (II) Granting Related Relief* entered by the Bankruptcy Court in these Chapter 11 Cases at Docket No. 319.

1.1.116 "Professional Holdback Amount" means the aggregate amount of all expected Allowed Professional Fee Claims under the Approved Budget, including those fees of Professional Persons billed to the Estates during the Chapter 11 Cases that are held back pursuant to the Professional Fee Order or any other order of the Bankruptcy Court, which amount is to be deposited in the Professional Holdback Escrow Account as of the Effective Date.  The Professional Holdback Amount shall not be considered Property of the Debtors, Reorganized HGE, or the Liquidating Trust.  When all Professional Fee Claims have been paid, amounts remaining in the Professional Holdback Escrow Account, if any, shall be remitted to the Liquidating Trust for distribution in accordance with the Plan.

1.1.117 "Professional Holdback Escrow Account" means the escrow account established by the Debtors or the Liquidating Trust, as applicable, into which Cash equal to the Professional Holdback Amount shall be deposited on the Effective Date for the payment of Allowed Professional Fee Claims to the extent not previously paid or disallowed.

1.1.118 "Professional Person" means a Person or Entity who is employed pursuant to a Final Order in accordance with sections 327, 328, 363, or 1103 of the Bankruptcy Code and is to be compensated for services rendered prior to the Confirmation Date pursuant to sections 327, 328, 329, 330, 331, or 363 of the Bankruptcy Code.

1.1.119 "Proof of Claim" means any proof of claim that is filed by a Holder of a Claim filed in these Chapter 11 Cases.

1.1.120 "Property" means any and all right, title and interest in and to all property of any kind or nature whatsoever owned by the any of the Debtors or their Estates on the Effective Date as defined by 11 U.S.C. § 541, whether real, personal, or mixed, and whether tangible or intangible.

1.1.121 "Proponents" means the Debtors and the Committee, collectively, as joint proponents of this Plan.

1.1.122 "Reinstated" means either (a) leaving unaltered the legal, equitable, and contractual right to which a Claim entitles the Holder of such Claim so as to leave such Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code or (b) notwithstanding any contractual provision or applicable law that entitles the Holder of such Claim to demand or receive accelerated payment of such Claim after the occurrence of a default, (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code or of a kind that section 365(b)(2) expressly does not require to be cured; (ii) reinstating the maturity of such Claim as such maturity existed before such default; (iii) compensating the Holder of such Claim for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; (iv) if such Claim arises from any failure to perform a nonmonetary obligation, other than a default arising from failure to operate a nonresidential real property lease subject to section 365(b)(1)(A) of the Bankruptcy Code, compensating the Holder of such Claim (other than the Debtors or an Insider) for any actual pecuniary loss incurred by such holder as a result of such failure; or (v) not otherwise altering the legal, equitable, or contractual rights to which such Claim entitles the Holder of such Claim.

1.1.123 "Related Parties" means, with respect to (and in each case solely in their capacity as such to such person or Entity) (a) the Debtors; (b) the Independent Director; (c) Reorganized HGE; (d) the Committee and its members; (e) the Liquidating Trustee; and (f) the Settlement Parties, current and former directors, managers, officers, members of any Governing Body, affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, successors, assigns, subsidiaries, Affiliates, partners, limited partners, general partners, principals, fund advisors or managers, employees, agents, financial advisors, attorneys, accountants, investment bankers, and representatives.

1.1.124 "Released Parties" means each of, and in each case in their capacity as such: (a) the Debtors; (b) the Independent Director; (c) Reorganized HGE; (d) the Committee and its members; (e) the Liquidating Trustee; (f) the Settlement Parties; (g) each current and former Affiliate of each Person in clause (a) through the following clause (f), but only in their capacity as such; and (h) each Related Party of each Entity in clause (a) through (f), but only in their capacity as such; *provided*, *however*, that for the avoidance of doubt, the Non-Released D&Os shall not be a Released Party under this Plan except as may be provided under a D&O Claim Resolution; *provided*, *further*, that Venn shall not be a Released Party under this Plan.

1.1.125 "Releasing Parties" means each of, and in each case in their capacity as such: (a) the Debtors; (b) Reorganized HGE; (c) the Committee; (d) the Liquidating Trustee; (e) the Settlement Parties; (f) the Consenting Creditors; (g) current and former Affiliates of each Entity in clause (a) through the following clause (f) for which such Entity is legally entitled to bind such Affiliates to the releases contained in this Plan under applicable Law or that have otherwise received proper notice of this Plan; and (h) each Related Party of each Entity in clause (a) through this clause (f) for which such Entity is legally entitled to bind such Related Party to the releases contained in this Plan under applicable Law or that have otherwise received proper notice of this Plan;

14

*provided*, *however*, that for the avoidance of doubt, the Non-Released D&Os shall not be a Releasing Party under this Plan except as may be provided under a D&O Claim Resolution. Notwithstanding the foregoing, and for the avoidance of doubt, no party shall be a Releasing Party to the extent that such party did not receive proper notice and service of a Third-Party Release opt-out form.

1.1.126 "<u>Reorganized HGE</u>" means Higher Ground Education, on and after the Effective Date, together with any and all Reorganized HGE Subsidiaries retained, directly or indirectly, by Higher Ground Education pursuant to the Plan, each as vested with the property of the Reorganized HGE Assets.

1.1.127 "<u>Reorganized HGE Assets</u>" means, except as otherwise set forth in the Plan, all property of the Debtors' Estates, including without limitation, all (a) School Assets, (b) Guidepost Global Assets, (c) Reorganized HGE Contracts or Leases, (d) Pass-Through Assets, (e) Subsidiary Equity Interests in the Reorganized HGE Subsidiaries, (f) corporate documentation and corporate records, (g) all Causes of Action that are not Debtors' Retained Causes of Action, and (h) property identified on the Schedule of Reorganized HGE Assets. For the avoidance of doubt, the Liquidating Trust Assets are not included in the definition of "Reorganized HGE Assets."

1.1.128 "<u>Reorganized HGE Common Stock</u>" means 100% of the equity interests in Reorganized HGE issued on the Effective Date to the Plan Sponsor in exchange for the Plan Sponsor Consideration, and to the Senior DIP Lender under and subject to the Subscription Option, if exercised, in the total amount of 1,000 shares, free and clear of all Liens, Claims, Equity Interests and encumbrances of any kind, except as provided in the Plan.

1.1.129 "<u>Reorganized HGE Contracts or Leases</u>" means those Executory Contracts and Unexpired Leases that are assumed under the Plan and identified in the Plan Supplement.

1.1.130 "<u>Reorganized HGE Subsidiaries</u>" shall mean the reorganized Debtors identified as Reorganized HGE Subsidiaries in the Plan Supplement.

1.1.131 "<u>Retained Causes of Action</u>" means all rights, Claims, Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses that the Debtors had immediately prior to the Effective Date on behalf of the Estates or of themselves in accordance with any provision of the Bankruptcy Code or any applicable non-bankruptcy law, including any actions specifically enumerated herein, and such rights to commence, pursue, prosecute, and/or settle such claims or Causes of Action (including any Avoidance Action, preference, or other claim pursuant to section 362 or chapter 5 of the Bankruptcy Code, including sections 502(d), 544, 545, 547, 548, 549, 550, 551, or 553(b) of the Bankruptcy Code).

1.1.132 "<u>RSA</u>" means the Restructuring Support Agreement, dated June 17, 2025 (as amended, supplemented, or otherwise modified) which, effective as of September 12,

2025 and pursuant to Section 10 of the RSA, the Debtors, in their business judgment, exercised their fiduciary out to terminate the RSA and pursue Confirmation of this Plan.

1.1.133 "Schedules" means the schedules of assets and liabilities, the list of equity interests, and the statements of financial affairs filed by the Debtors with the Bankruptcy Court pursuant to section 521 of the Bankruptcy Code and Bankruptcy Rule 1007(b), as the same may be amended or supplemented from time to time.

1.1.134 "School Assets" means any and all tangible and intangible personal property of every kind and nature utilized for the operation of Debtors' school businesses and operations.

1.1.135 "Secured" means when referring to a Claim secured by a Lien on Property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

1.1.136 "Secured Tax Claim" means any Secured Claim which, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code.

1.1.137 "Securities Act" means the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa, together with the rules and regulations promulgated thereunder.

1.1.138 "Security" means a security as defined in section 2(a)(1) of the Securities Act.

1.1.139 "Senior DIP Financing Documents" means, together, the DIP Financing Order and the Senior DIP Promissory Note.

1.1.140 "Senior DIP Lender" means YYYYY, LLC, in its capacity as lender under the Senior DIP Financing Documents, upon Bankruptcy Court approval of the DIP Financing Order.

1.1.141 "Senior DIP Lender Claim" means any and all Claims arising from, under or in connection with the Senior DIP Loan.

1.1.142 "Senior DIP Loan" means loans made by Senior DIP Lender pursuant to the Senior DIP Financing Documents.

1.1.143 "Senior DIP Promissory Note" means the Senior Debtor in Possession Promissory Note, in form and substance attached to the DIP Financing Order, as executed by the Debtors following the approval of the DIP Financing Order by the Bankruptcy Court.

4899-3615-0649.1

1.1.144 "Settlement Parties" means, collectively, 2HR Learning, Inc.; YYYYY, LLC; Guidepost Global; Learn; CEA; Yu Capital; WTI; TNC; and each of the aforementioned parties' Related Parties; *provided*, *however*, that no Non-Released D&O shall be considered a Settlement Party.

1.1.145 "Settlement Party Payment" is defined in Article 4.2.1.

1.1.146 "Statutory Fees" mean the fees payable pursuant to section 1930 of the Judicial Code in the manner set forth in Article 3.4 of the Plan.

1.1.147 "Subclass" means a subdivision of any Class described herein.

1.1.148 "Subscription Option" means the right of the Senior DIP Lender to, at its option, convert up to 100% of the outstanding Allowed Senior DIP Lender Claim into shares of Reorganized HGE Common Stock at a rate of 10% of the Allowed Senior DIP Lender Claim for 60 shares of Reorganized HGE Common Stock, up to a maximum of 100% of the Allowed Senior DIP Lender Claim for 600 shares out of the total 1000 shares of Reorganized HGE Common Stock. The Plan Sponsor reserves the right to modify the Subscription Option; *provided* that such modification (a) shall not adversely impact the Plan treatment of other creditors and (b) is approved by the Senior DIP Lender.

1.1.149 "Subsidiary Equity Interest" means any Interest of the Debtors other than the Equity in Higher Ground Education, including any Interest of such Debtors in subsidiaries or Affiliates.

1.1.150 "Surplus DIP Cash" means any Cash-on-Hand as of the Effective Date, after payment of or otherwise providing for payment of Allowed Administrative Claims.

1.1.151 "Third-Party Release" means the release set forth in Article 10.3 of this Plan.

1.1.152 "TNC" means TNC Schools, LLC.

1.1.153 "Transferred Executory Contracts / Unexpired Leases" means those Executory Contracts and/or Unexpired Leases designated in the Plan Supplement as having been sold or foreclosed upon prior to the Petition Date in connection with the WTI, Learn and/or Yu Capital foreclosures and which have not been assumed and assigned by the Debtors and approved by the Bankruptcy Court pursuant to a Final Order.

1.1.154 "Unexpired Lease" means a lease of nonresidential real property to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

1.1.155 "Unimpaired" means, when used with reference to a Claim or Interest, a Claim or Interest that is not Impaired.

1.1.156 "United States Trustee" means the Office of the United States Trustee for Region 6.

1.1.157 "Upper Tier Debtors" means collectively, Higher Ground Education, Guidepost A LLC, Prepared Montessorian LLC and Terra Firma Services LLC.

1.1.158 "Venn" means Venn Growth GP Limited LP and its Affiliates.

1.1.159 "Voting Deadline" means November 17, 2025, at 5:00 p.m. (prevailing Central Time).

1.1.160 "WTI" means, collectively, Venture Lending & Leasing IX, Inc., WTI Fund X, Inc., and each of their Related Parties.

1.1.161 "WTI Secured Lender Claim" means the Allowed Secured post-foreclosure deficiency claim of WTI in the collective amount of at least $4,680,970.83 under: (a) the Loan and Security Agreement, dated as of February 19, 2021, among the Upper Tier Debtors, as borrowers, and Venture Lending & Leasing IX, Inc., as lender, in the Allowed amount of at least $153,801.58; and (b) the Loan and Security Agreement, dated as of November 8, 2023, among the Upper Tier Debtors, as borrowers, and WTI Fund X, Inc., as lender, in the Allowed amount of at least $4,527,169.25.

1.1.162 "Yu Capital" means, collectively, Yu Capital, LLC, YuATI LLC, YuFICB LLC, YuHGE A LLC, NTRC Equity Partners, LP, Guidepost FIC A LLC, Advance Guard Global Limited, and each of their Related Parties.

1.2    Interpretation, Rules of Construction, Computation of Time, Settlement and Governing Law.

1.2.1    Defined Terms.  Any term used in the Plan that is not defined in the Plan, either in Article 1.1 or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules has the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

1.2.2    Rules of Interpretation.  For purposes of the Plan:  (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) any reference in the Plan to a contract, Instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, but if there exists any inconsistency between a summary of, or reference to, any document in the Plan or Confirmation Order and the document itself, the terms of the document as of the Effective Date shall control; (c) any reference in the Plan to an existing document or Plan Supplement that is filed or to be filed means such document or Plan Supplement, as it may have been or may subsequently be amended, modified or supplemented; (d) unless otherwise specified in a particular reference, all references in

4899-3615-0649.1

the Plan to "section," "article" and "Plan Supplement" are references to a section, article and Plan Supplement of or to the Plan; (e) the words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan; (f) captions and headings to articles and sections are inserted for convenience or reference only and are not intended to be a part of or to affect the interpretation of the Plan; (g) unless otherwise specified herein, all references herein to "Articles" are references to Articles of the Plan; (h) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (i) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (j) any docket number references in the Plan shall refer to the docket number of any document filed with the Bankruptcy Court in the Chapter 11 Cases; (k) references to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "Holders of Interests," "Disputed Interests," and the like, as applicable; (l) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; (m) any immaterial effectuating provisions may be interpreted by the Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; (n) except as otherwise provided, any references to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter; and (o) any reference to an Entity as a Holder of a Claim or Interest includes such Entity's permitted successors and assigns.

      1.2.3   <u>Computation of Time</u>.   Unless otherwise specifically stated herein, in computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

      1.2.4   <u>Governing Law</u>.   Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Texas, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, Instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided*, *however*, that corporate governance matters relating to the Debtors or Reorganized HGE shall be governed by the laws of the state of incorporation of the relevant Debtor or Reorganized HGE, as applicable.

      1.2.5   <u>Reference to Monetary Figures</u>.   All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

## ARTICLE 2
## DESIGNATION OF CLAIMS AND INTERESTS

2.1  <u>Summary of Designation of Claim and Interests</u>.  The following is a designation of the Classes of Claims and Interests under the Plan.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified and are excluded from the following Classes.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest is within the description of that Class and is classified in another Class to the extent that any remainder of the Claim or Interest qualifies within the description of such other Class or Classes.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest is an Allowed Claim or Allowed Interest and has not been paid, released or otherwise satisfied before the Effective Date.

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1: | Bridge CN-3 Secured Lender Claim | Impaired | Entitled to Vote |
| Class 2: | WTI Secured Lender Claim | Impaired | Entitled to Vote |
| Class 3 | CN-1 Note Claims | Impaired | Entitled to Vote |
| Class 4: | CN-2 Note Claims | Impaired | Entitled to Vote |
| Class 5: | CN-3 Note Claims | Impaired | Entitled to Vote |
| Class 6: | Other Secured Claims | Unimpaired | Deemed to Accept; Not Entitled to Vote |
| Class 7: | Non-Tax Priority Claims | Unimpaired | Deemed to Accept; Not Entitled to Vote |
| Class 8: | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 9: | Intercompany Claims | Impaired | Deemed to Reject; Not Entitled to Vote |
| Class 10: | Equity | Impaired | Deemed to Reject; Not Entitled to Vote |
| Class 11: | Subsidiary Equity Interests | Impaired | Deemed to Reject; Not Entitled to Vote |

## ARTICLE 3
## TREATMENT OF CLAIMS AND INTERESTS

3.1  <u>Unclassified Claims</u>.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims are not classified, are Unimpaired, and are not entitled to vote on the Plan.

3.2  <u>Administrative Expense Claims</u>.

3.2.1  <u>Application for Administrative Expense Claims</u>.  Except as otherwise provided by a Final Order entered by the Bankruptcy Court, requests for payment of Administrative Expense Claims must be Filed and served on the Debtors, its counsel, counsel to the Committee and, if filed after the Effective Date, Reorganized HGE and the Liquidating Trustee, no later than the Administrative Claims Bar Date.  Each request for payment of an Administrative Expense Claim must set forth, at a minimum, (a) the name of the Holder of the Administrative Expense Claim, (b) the amount of the Administrative Expense Claim, and (c) a detailed basis for the Administrative Expense Claim.  A failure to file any such request by the Administrative Claims Bar Date shall result in the Administrative Expense Claim in question being discharged and its Holder being forever barred, estopped, and enjoined from asserting such Administrative Expense Claim

20

against the Debtors, their Estates, Reorganized HGE, the Liquidating Trust, or any other Entity.

3.2.2   A request for payment of an Administrative Expense Claim that has been properly and timely Filed and served shall become an Allowed Administrative Expense Claim unless an objection is filed by the date that is thirty (30) days after such request has been Filed and served.  If a timely objection is Filed, the Administrative Expense Claim in question shall become Allowed only to the extent set forth in a Final Order of the Bankruptcy Court.

3.2.3   <u>Treatment</u>.   Except to the extent that a Holder of an Allowed Administrative Expense Claim has been paid by the Debtors prior to the Effective Date or  such other treatment has been agreed to by the Holder of such Administrative Expense Claim and the Debtors, each Holder of an Allowed Administrative Expense Claim (other than a Professional Fee Claim, except as otherwise provided in <u>Article 3.2.5.3</u>), in full and final satisfaction, release, settlement and discharge of such Administrative Expense Claim, shall be paid in full, in Cash by the Debtors, in such amounts as (a) are incurred in the ordinary course of business by the Debtors when and as such Claim becomes due and owing, (b) are Allowed by the Bankruptcy Court upon the later of the Effective Date, the date upon which there is a Final Order allowing such Administrative Expense Claim, or any other date specified in such order, or (c) may be agreed upon between the Holder of such Administrative Expense Claim and the Debtors.

**3.2.4   HOLDERS OF ADMINISTRATIVE EXPENSE CLAIMS THAT ARE REQUIRED TO, BUT DO NOT, FILE AND SERVE A REQUEST FOR PAYMENT OF SUCH ADMINISTRATIVE EXPENSE CLAIMS BY THE ADMINISTRATIVE CLAIMS BAR DATE SHALL BE FOREVER BARRED, ESTOPPED, AND ENJOINED FROM ASSERTING SUCH ADMINISTRATIVE EXPENSE CLAIMS AGAINST THE DEBTORS, REORGANIZED HGE, THE ESTATES, THE LIQUIDATING TRUST, OR THE PROPERTY OF ANY OF THE FOREGOING, AND SUCH ADMINISTRATIVE EXPENSE CLAIMS SHALL BE DEEMED DISCHARGED AS OF THE EFFECTIVE DATE.**

3.2.5   <u>Professional Compensation</u>.

3.2.5.1.      <u>Final Fee Applications</u>.  All final requests for payment of Professional Fee Claims, including the Professional Holdback Amount, must be filed with the Bankruptcy Court and served on the Liquidating Trust and Reorganized HGE no later than forty-five (45) calendar days after the Effective Date.  After notice and a hearing, if any, in accordance with the procedures established by the Bankruptcy Code and any applicable orders of the Bankruptcy Court, the Allowed amounts of such Professional Fee Claims shall be determined as directed by the Bankruptcy Court.

3.2.5.2.      <u>Post-Effective Date Fees and Expenses</u>.  Except as otherwise specifically provided in the Plan, from and after the Effective Date, each of Reorganized HGE and the Liquidating Trustee shall, in the ordinary

course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash their respective reasonable legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by Reorganized HGE or Liquidating Trust.

3.2.5.3.    Professional Holdback Escrow Account.  Pursuant to the global settlement among the Debtors, the Settlement Parties, and the Committee, the DIP Lenders (a) have funded or (b) shall fund, no later than two (2) business days following entry by the Bankruptcy Court of the order conditionally approving the Disclosure Statement and solicitation of the Plan, which shall be in a form reasonably acceptable to the DIP Lenders, the Professional Holdback Escrow Account in the full amount of the Professional Holdback Amount.  The Professional Holdback Escrow Account shall be held for the sole benefit of the Professional Persons until all Allowed Professional Fee Claims have been paid in full up to the amount of Professional Fee Claims agreed to in the Approved Budget.   No Liens, claims, or interests of any kind shall encumber the Professional Holdback Escrow Account or the Cash contained therein in any way. Funds held in the Professional Holdback Escrow Account shall not be considered property of the Debtors' Estates or of Reorganized HGE.  Any funds remaining in the Professional Holdback Escrow Account after payment of all Allowed Professional Fee Claims shall become Liquidating Trust Assets and shall be distributed pursuant to the terms of this Plan and the Liquidating Trust Agreement.

Upon Allowance of a Professional Fee Claim, the same shall be paid as soon as reasonably practicable in Cash by the Liquidating Trustee from the funds held in the Professional Holdback Escrow Account; *provided* that the Debtors' and the Liquidating Trustee's obligations to pay Allowed Professional Fee Claims shall not be limited or be deemed limited to funds held in the Professional Fee Escrow Account.  To the extent that there are insufficient funds in the Professional Fee Escrow Account to satisfy all Allowed Professional Fee Claims in full, any such Allowed Professional Fee Claims (or portions thereof that remain unpaid from the Professional Fee Escrow Account) shall be paid as an Allowed Administrative Claim in accordance with Article 3.2.3.

For the avoidance of doubt, any Allowed Professional Fee Claims greater than the amounts set forth in the Approved Budget shall not negatively impact the amount of the Excess Surplus DIP Cash that can be utilized by the Settlement Parties to reduce the amount of the Settlement Party Payment.

3.2.6    Post-Effective Date Fees and Expenses.  Upon the Effective Date, any requirement that Professional Persons comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and Reorganized HGE and the Liquidating Trustee, as applicable, may employ and pay any Professional Person in the ordinary course of

22

business without any further notice to or action, order, or approval of the Bankruptcy Court.

3.3     Priority Tax Claims and Secured Tax Claims.  Except to the extent that a Holder of an Allowed Priority Tax Claim or Secured Tax Claim has been paid by the Debtors prior to the Effective Date or agrees to a different treatment, each Holder of an Allowed Priority Tax Claim and Secured Tax Claim, in full and final satisfaction, release, settlement and discharge of such Priority Tax Claim or Secured Tax Claim, shall receive on account of such Claim, payment in full in Cash as soon as reasonably practicable after the Effective Date or such other treatment in accordance with the terms set forth in section 1129(a)(9)(c) of the Bankruptcy Code.

3.4     Statutory Fees.  All Statutory Fees shall be paid by each of the Debtors, Reorganized HGE or the Liquidating Trustee, respectively, with respect to the disbursements incurred by each of them, respectively, for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first; *provided*, *however*, that all fees attributable to Guidepost Global on account of the transfer of the Designated EB-5 Entities (if any) to Guidepost Global shall be paid by Guidepost Global.  For avoidance of doubt, the U.S. Trustee shall not be required to File any Administrative Claim in the Chapter 11 Cases and shall not be treated as providing any release under the Plan in connection therewith.

3.5     Senior DIP Lender Claim.  The Senior DIP Lender Claim shall be Allowed in the full amount of all amounts advanced under the Senior DIP Loan, plus accrued interest.  Pursuant to the Subscription Option, the Senior DIP Lender shall have the option to convert up to 100% of the outstanding Allowed Senior DIP Lender Claim into shares of Reorganized HGE Common Stock at a rate of 10% of the Allowed Senior DIP Lender Claim for 60 shares of Reorganized HGE Common Stock, up to a maximum of 100% of the Allowed Senior DIP Lender Claim for 600 shares out of the total 1000 shares of Reorganized HGE Common Stock.

Any portion of the Allowed Senior DIP Lender Claim not exchanged for Reorganized HGE Common Stock pursuant to an election of the Subscription Option (the "**Unexchanged DIP Amount**"), shall be satisfied either (a) by payment in full, in Cash, by the Plan Sponsor on the Effective Date, which Cash shall be separate from and in addition to the Plan Consideration; or (b) if and only if agreed by the Plan Sponsor and the Senior DIP Lender, by non-Cash satisfaction through a dollar-for-dollar reduction in the funding of the Plan Consideration or other agreed offsets, in each case until the Unexchanged DIP Amount is reduced to $0.00. For the avoidance of doubt, no distribution on account of the Allowed Senior DIP Lender Claim shall be made from Cash-on-Hand, Surplus DIP Cash, the Settlement Party Payment, any D&O Claim Resolution, or the Liquidating Trust Assets under the Plan.

3.6     Junior DIP Lender Claim.  The Junior DIP Lender Claim shall be Allowed in full. On the Effective Date, in consideration for the settlement and releases contained herein, the Junior DIP Lender, in full and final satisfaction, release, settlement, and discharge of its Allowed Junior DIP Lender Claim, agrees that its Junior DIP Lender Claim shall be forgiven in its entirety.

23

3.7    <u>Class 1 (Bridge CN-3 Secured Lender Claims)</u>.

      3.7.1    *Impairment*.  Class 1 consists of the Bridge CN-3 Secured Lender Claims. Class 1 is Impaired, and the Holders of Claims in Class 1 are entitled to vote to accept or reject the Plan.

      3.7.2    *Treatment*.  Except to the extent a Holder of a Bridge CN-3 Secured Lender Claim agrees to less favorable treatment, on or as soon as practicable after the later of the Claims Objection Deadline and the date on which a Bridge CN-3 Secured Lender Claim becomes an Allowed Secured Claim, all Holders of Allowed Bridge CN-3 Secured Lender Claims shall be deemed to have waived their distribution under the Plan on account of their respective Allowed Bridge CN-3 Secured Lender Claims.

3.8    <u>Class 2 (WTI Secured Lender Claim)</u>.

      3.8.1    *Impairment*.  Class 2 consists of the WTI Secured Lender Claim.  Class 2 is Impaired, and the Holders of Claims in Class 2 are entitled to vote to accept or reject the Plan.

      3.8.2    *Treatment*.  On the Effective Date, Holders of WTI Secured Lender Claims, in full and final satisfaction, release, settlement, and discharge of such WTI Secured Lender Claims, shall waive its right to a distribution under the Plan on account of its WTI Secured Lender Claims.

3.9    <u>Class 3 (CN-1 Note Claims)</u>.

      3.9.1    *Impairment*.  Class 3 consists of the CN-1 Note Claims.  Class 3 is Impaired, and the Holders of Claims in Class 3 are entitled to vote to accept or reject the Plan.

      3.9.2    *Treatment*.  On or as soon as practicable after the Effective Date, except to the extent a Holder of Allowed CN-1 Note Claim agrees to less favorable treatment, each Holder of an Allowed CN-1 Note Claim shall receive, in full and final satisfaction of such CN-1 Note Claim, a beneficial interest in the Liquidating Trust.  Thereafter, each such Holder of an Allowed CN-1 Note Claim shall receive Cash distributions from the Liquidating Trust.  Distributions from the Liquidating Trust to Holders of Allowed CN-1 Note Claims shall be on a pro rata basis with all other Liquidating Trust Beneficiaries in accordance with the terms of the Liquidating Trust Agreement.  The CN-1 Note Claim held by the Girns is deemed a Disputed Claim under this Plan.  For the avoidance of doubt, all Settlement Parties that are also Holders of CN-1 Note Claims, the Girns, and any other Holder of a CN-1 Note Claim that accepts a proposal from Guidepost Global to become an investor or other creditor of Guidepost Global, shall be deemed to waive their distribution on account of their CN-1 Note Claims and shall receive no beneficial interest in or Cash distribution from the Liquidating Trust.

3.10    Class 4 (CN-2 Note Claims).

      3.10.1 *Impairment*.  Class 4 consists of the CN-2 Note Claims.  Class 4 is Impaired, and the Holders of Claims in Class 4 are entitled to vote to accept or reject the Plan.

      3.10.2 *Treatment*.  The CN-2 Note Claims are Allowed Claims under the Plan. All Holders of Allowed CN-2 Note Claims shall be deemed to have waived their distribution under the Plan on account of their respective Allowed CN-2 Note Claims; *provided*, *however*, that all CN-2 Note Claims held by the Plan Sponsor and Senior DIP Lender shall not be deemed satisfied, released, settled, and/or discharged under this Plan.

3.11    Class 5 (CN-3 Note Claims).

      3.11.1 *Impairment*.  Class 5 consists of the CN-3 Note Claims, the Holders of which (a) are Settlement Parties or (b) will be offered the right to become an investor or other creditor of Guidepost Global in lieu of receiving a distribution under the Plan. Class 5 is Impaired, and the Holders of Claims in Class 5 are entitled to vote to accept or reject the Plan.

      3.11.2 *Treatment*.  The CN-3 Note Claims held by the Settlement Parties are Allowed Claims under the Plan.  All Holders of Allowed CN-3 Note Claims shall be deemed to have waived their distribution under the Plan on account of their respective Allowed CN-3 Note Claims; *provided*, *however*, that all CN-3 Note Claims held by the Plan Sponsor and Senior DIP Lender shall not be deemed satisfied, released, settled, and/or discharged under this Plan.

For the avoidance of doubt, all Settlement Parties that are also Holders of CN-3 Note Claims, the Girns, and any other Holder of a CN-3 Note Claim that accepts a proposal from Guidepost Global to become an investor or other creditor of Guidepost Global, shall be deemed to waive their distribution on account of their CN-3 Note Claims and shall receive no beneficial interest in or Cash distribution from the Liquidating Trust.  Further, the CN-3 Note Claim held by the Girns is deemed a Disputed Claim under this Plan.

3.12    Class 6 (Other Secured Claims).

      3.12.1 *Non-Impairment*.  Class 6 consists of all Other Secured Claims.  Class 6 is Unimpaired, and pursuant to section 1126(f) of the Bankruptcy Code, the Holders of Claims in Class 6 are conclusively presumed to have accepted the Plan and are not entitled to vote to accept or reject the Plan.

      3.12.2 *Subclassification*.  Each Other Secured Claim, if any, shall constitute and comprise a separate Subclass numbered 6.1, 6.2, 6.3 and so on.

      3.12.3 *Treatment*.  Except to the extent a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, on or as soon as practicable after the later of the Claims Objection Deadline and the date on which an Other Secured Claim becomes Allowed, each Allowed Other Secured Claim, in full and final satisfaction, release,

settlement and discharge of such Allowed Other Secured Claim, shall be, at the Debtors' option, (a) Reinstated, (b) satisfied by the Debtors' surrender of the collateral securing such Claim (except to the extent such collateral constitutes Reorganized HGE Assets), (c) offset against, and to the extent of, the Debtors' claims against the Holder of such Claim, or (d) otherwise rendered Unimpaired (*provided* that such unimpairment shall not impact the Reorganized HGE Assets without the express consent of Plan Sponsor).   For the avoidance of doubt, all Settlement Parties and the Girns shall be deemed to waive their distribution or other treatment on account of their Other Secured Claims, if any.

3.13    Class 7 (Non-Tax Priority Claims).

3.13.1 *Non-Impairment*.  Class 7 consists of all Non-Tax Priority Claims.  Class 7 is Unimpaired, and pursuant to section 1126(f) of the Bankruptcy Code, the Holders of Claims in Class 7 are conclusively presumed to have accepted the Plan and are not entitled to vote to accept or reject the Plan.

3.13.2 *Treatment*.  The legal, equitable and contractual rights of the Holders of Allowed Non-Tax Priority Claims are unaltered by the Plan.  Except to the extent that a Holder of an Allowed Non-Tax Priority Claim agrees to a less favorable treatment, each Holder of an Allowed Non-Tax Priority Claim, in full and final satisfaction, release, settlement, and discharge of such Allowed Non-Tax Priority Claim, shall be paid in full, in Cash, on or as soon as reasonably practicable after the later of the Claims Objection Deadline and the date on which a Non-Tax Priority Claim becomes Allowed, or in accordance with the terms of any agreement between the Debtors, the Committee, the Plan Sponsor and the Holder of an Allowed Non-Tax Priority Claim.  For the avoidance of doubt, all Settlement Parties and the Girns shall be deemed to waive their distribution or other treatment on account of their Non-Tax Priority Claims, if any.

3.14    Class 8 (General Unsecured Claims).

3.14.1 *Impairment*.  Class 8 consists of all General Unsecured Claims.  Class 8 is Impaired, and the Holders of Class 8 Claims are entitled to vote on the Plan.

3.14.2 *Treatment*.  On or as soon as practicable after the Effective Date, except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment, each Holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction of such Allowed General Unsecured Claim, a beneficial interest in the Liquidating Trust.  Thereafter, each such Holder of an Allowed General Unsecured Claim shall receive Cash distributions from the Liquidating Trust.  Distributions from the Liquidating Trust to Holders of Allowed General Unsecured Claims shall be on a pro rata basis with all other Liquidating Trust Beneficiaries in accordance with the terms of the Liquidating Trust Agreement.  For the avoidance of doubt, all Settlement Parties and the Girns shall be deemed to waive their distribution or other treatment on account of their General Unsecured Claims, if any.

3.15    Class 9 (Intercompany Claims).

26

3.15.1 *Impairment*.   Class 9 consists of all Intercompany Claims.   Class 9 is Impaired, and pursuant to section 1126(g) of the Bankruptcy Code, the Holders of Intercompany Claims in Class 9 are deemed to reject the Plan and are not entitled to vote to accept or reject the Plan.

3.15.2 *Treatment*.   On the Effective Date, all Intercompany Claims shall be cancelled, and Holders of Intercompany Claims shall not receive or retain any Property under the Plan on account of their Intercompany Claims.

3.16    Class 10 (Equity).

3.16.1 Impairment.   Class 10 consists of all Equity Interests.   Class 10 is Impaired, and pursuant to section 1126(g) of the Bankruptcy Code, the Holders of Equity Interests in Class 10 are deemed to reject the Plan and are not entitled to vote to accept or reject the Plan.

3.16.2 Treatment.  On the Effective Date, all Equity shall be retired, cancelled, extinguished and discharged, and Holders of Equity Interests shall not receive or retain any Property under the Plan on account of such Equity Interests.

3.17    Class 11 (Subsidiary Equity Interests).

3.17.1 Impairment.  Class 11 consists of Subsidiary Equity Interests.  Class 11 is Impaired, and pursuant to section 1126(f) of the Bankruptcy Code, the Holders of Subsidiary Equity Interests in Class 11 are deemed to reject the Plan and are not entitled to vote to accept or reject the Plan.

3.17.2 Treatment.  On the Effective Date, all Subsidiary Equity Interests shall be retired, cancelled, extinguished and discharged, and Holders of Subsidiary Equity Interests shall not receive or retain any Property under the Plan on account of such Subsidiary Equity Interests; *provided*, *however*, that the Subsidiary Equity Interests in the Designated EB-5 Entities will not be retired, cancelled, extinguished and discharged and will be transferred to Guidepost Global in accordance with Article 4.8 of the Plan.

3.18    Elimination of Vacant Classes.  Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

3.19    Voting Classes; Deemed Accepted.  If Holders of Claims in a particular Impaired Class of Claims were given the opportunity to vote to accept or reject this Plan and notified that a failure of any Holders of Claims in such Impaired Class of Claims to vote to accept or reject this Plan would result in such Impaired Class of Claims being deemed to have accepted this Plan, but no Holders of Claims in such Impaired Class of Claims voted to accept or reject this

27

Plan, then the Debtors shall request the Bankruptcy Court to deem the Plan accepted by the Holders of such Claims or Interests in such Class.

      3.20    <u>Subordinated Claims</u>. The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtors, Reorganized HGE, or the Liquidating Trustee reserve the right to reclassify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

      3.21    <u>Controversy Concerning Impairment</u>. If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

      3.22    <u>Nonconsensual Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code</u>. Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by one or more of the Classes entitled to vote pursuant to <u>Article 3</u> of the Plan. The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.

      The Proponents reserve the right to jointly modify the Plan in accordance with <u>Article 6.3</u> and <u>Article 13.6</u> of the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims to render such Class of Claims Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules or to withdraw the Plan as to any Debtor.

# ARTICLE 4
## MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN

      4.1    <u>Sources of Consideration for Plan Distributions</u>. Sources of consideration for Plan distributions shall be (a) the Plan Sponsor Consideration, (b) the Surplus DIP Cash, (c) the Settlement Party Payment, (d) any D&O Claim Resolution, (e) the Liquidating Trust Assets, and (f) the D&O Insurance Policies.

      4.2    <u>Global Settlement</u>. The Debtors, the Committee, and the Settlement Parties have reached a global resolution of all issues among them in these Chapter 11 Cases. Pursuant to Bankruptcy Rule 9019, the Plan does, and shall, constitute a compromise, settlement, and release of all potential claims by and among the Debtors, the Committee, and Settlement Parties on the terms set forth below. Entry of the Confirmation Order shall constitute approval of the global resolution set forth below, which shall become effective upon the Effective Date.

      4.2.1    <u>The Settlement Party Payment</u>. On the Effective Date, the Settlement Parties shall pay or cause to be paid to the Debtors or Liquidating Trustee, as applicable,

aggregate Cash in the amount of $1,950,000 (the "Settlement Party Payment"). The amount of the Settlement Party Payment shall be reduced on a dollar-for-dollar basis by the amount of the Excess Surplus DIP Cash. For example, if the Excess Surplus DIP Cash is $100,000, then the Settlement Party Payment will be reduced by $100,000 to 1,895,000.

> 4.2.1.1.    Settlement Party Payment True-Up Mechanism. In the event the Debtors or the Liquidating Trustee, as applicable, receive Excess Surplus DIP Cash after the Settlement Parties contribute the Settlement Party Payment, then the Debtors or the Liquidating Trustee, as applicable, shall return such Excess Surplus DIP Cash to Reorganized HGE or otherwise true-up such Excess Surplus DIP Cash as agreed upon by the Settlement Parties.

4.2.2    Plan Sponsor Consideration. On the Effective Date, the Plan Sponsor shall distribute the Plan Sponsor Consideration, if any, to the Liquidating Trust.

4.2.3    Junior DIP Lender Consideration. On the Effective Date, in the event the Junior DIP Lender has not fully funded the Junior DIP Loan, the Junior DIP Lender shall contribute all remaining amounts outstanding and available to the Debtors under the Junior DIP Loan to the Liquidating Trust. Notwithstanding the foregoing, the Debtors shall be permitted to setoff valid amounts owed by the Debtors to the Junior DIP Lender against the Junior DIP Lender's remaining funding obligations under the Junior DIP Loan.

4.2.4    Pre-Effective Date Derivative Standing. Prior to the Effective Date, the Debtors shall stipulate and agree to confer to the Committee derivative standing for the purposes of sending one or more demands to one or more Non-Released D&Os and/or the applicable D&O Insurance Carriers.

> 4.2.4.1.    Retained Causes of Action Against Non-Released D&Os. On the Effective Date, all Debtors' Retained Causes of Action against all Non-Released D&Os shall be transferred and assigned to, and shall vest in, the Liquidating Trust for the benefit of the Liquidating Trust Beneficiaries.

> 4.2.4.2.    D&O Insurance Policies. On the Effective Date, the Debtors shall transfer and assign all the Debtors' rights and interests in the D&O Insurance Policies to the Liquidating Trust for the benefit of the Liquidating Trust Beneficiaries.

> 4.2.4.3.    Post-Effective Date Standing. On the Effective Date, the Liquidating Trust will have standing under 11 U.S.C. § 1123(b)(3) to consummate a D&O Claim Resolution by settlement or to pursue any and all Debtors' Retained Causes of Action against any and all Non-Released D&Os and the D&O Insurance Carriers, as applicable.

    4.2.5    <u>Settlement Parties Release of Certain Claims</u>.    On the Effective Date, unless as otherwise expressly set forth in this Plan, the Settlement Parties shall release and waive all Claims and Causes of Action against the Debtors' Estates.

    4.2.6    <u>Settlement Party Mutual Releases</u>.    On the Effective Date and upon payment in full of the Settlement Party Payment, the Releasing Parties and the Settlement Parties shall be mutually released as set forth in <u>Article 10.3</u> of the Plan.

    4.3    <u>Liquidating Trust</u>. On the Effective Date, the Liquidating Trust will be formed pursuant to the Liquidating Trust Agreement to receive and administer the Liquidating Trust Assets.  In addition, the Liquidating Trust shall serve as a successor to the Debtors pursuant to sections 1123(a)(5)(B) and (b)(3)(B) of the Bankruptcy Code to: (a) administer the terms of the Plan, including making payments in accordance with <u>Article 7</u> to all Holders of Allowed Claims and Interests; (b) make distributions pursuant to the Plan and the Liquidating Trust Agreement; (c) assert any Debtors' Retained Cause of Action that constitutes a Liquidating Trust Asset on behalf of the Debtors and their Estates; and (d) take such other action as may be authorized by the Liquidating Trust Agreement, including objecting to any and all Claims other than Professional Fee Claims.

    Except as otherwise provided in the Plan or the Plan Supplement, or in any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, all of the Liquidating Trust Assets shall automatically vest in the Liquidating Trust free and clear of all Liens, Claims, interests, charges, or other encumbrances.  On and after the Effective Date, except as otherwise provided in the Plan, the Liquidating Trustee may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, except as otherwise provided in the Liquidating Trust Agreement.

    Upon the transfer of the Liquidating Trust Assets, as more fully set forth in the Liquidating Trust Agreement, the Debtors will have no reversionary or further interest in or with respect to the Liquidating Trust Assets.  For U.S. federal income tax purposes, the Liquidating Trust Beneficiaries will be treated as grantors and owners thereof and it is intended that the Liquidating Trust be classified as a liquidating trust under Section 301.7701-4 of the Treasury Regulations.  Accordingly, for U.S. federal income tax purposes, it is intended that the Liquidating Trust Beneficiaries be treated as if they had received an interest in the Liquidating Trust Assets and then contributed such interests to the Liquidating Trust.

    On the Effective Date, the authority, power, and incumbency of the persons acting as managers, directors, and officers of the Debtors shall be deemed to have resigned and the Liquidating Trustee shall be appointed as the sole manager, director, and/or officer of the Debtors and shall succeed to the powers of the Debtors' managers, directors, and officers.  From and after the Effective Date, the Liquidating Trustee shall be the sole representative of, and shall act for, the Debtors' Estates.  The Liquidating Trustee, as applicable, shall be deemed to be substituted in lieu of the Debtors as the proper party in interest in all matters, including (a) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court, and (b) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the

4899-3615-0649.1

Bankruptcy Court, in each case without the need or requirement for the Liquidating Trustee to file motions or substitutions of parties or counsel in any such matter.

4.4    <u>Preservation of Debtors' Retained Causes of Action</u>.    Except as otherwise provided in this Plan, an agreement or document entered into in connection with the Plan, or in a Final Order of the Bankruptcy Court, pursuant to section 1123(b) of the Bankruptcy Code and as set forth more fully in the Disclosure Statement, the Debtors reserve and, as of the Effective Date, assign to the Liquidating Trust the Debtors' Retained Causes of Action identified in the Plan Supplement.    On and after the Effective Date, the Liquidating Trustee, as appropriate may pursue the Debtors' Retained Causes of Action on behalf of and for the benefit of the Liquidating Trust Beneficiaries.

No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Debtors' Retained Cause of Action against it as any indication that the Liquidating Trustee will not pursue any and all available Causes of Action against it.    Unless any Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order of the Bankruptcy Court, the Litigation Trustee expressly reserves all Debtors' Retained Causes of Action for later adjudication, and, therefore no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion (judicial, equitable, or otherwise), or laches, shall apply to such Debtors' Retained Causes of Action upon, after, or as a consequence of Plan confirmation or the Effective Date.

The Debtors or the Liquidating Trustee, as applicable, reserve such Debtors' Retained Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan.    The Liquidating Trustee shall retain and shall have, including through their authorized agents or representatives, the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Debtors' Retained Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

Except as otherwise provided in the Plan, the Confirmation Order, or in any settlement agreement approved during the Chapter 11 Cases:    (a) any and all rights, Claims, Causes of Action, defenses, and counterclaims of or accruing to the Debtors or their Estates with respect to the Debtors' Retained Causes of Action shall remain assets of and vest in the Liquidating Trust, whether or not litigation relating thereto is pending on the Effective Date, and whether or not any such rights, claims, Causes of Action, defenses, and counterclaims have been listed or referred to in the Plan, the Schedules, or any other document filed with the Bankruptcy Court; and (b) neither the Debtors nor the Liquidating Trust waive, relinquish, or abandon (nor shall they be estopped or otherwise precluded from asserting) any right, Claim, Cause of Action, defense, or counterclaim with respect to the Debtors' Retained Causes of Action that constitutes Property of the Estates:    (i) whether or not such right, Claim, Cause of Action, defense, or counterclaim has been listed or referred to in the Plan or the Schedules, or any other document filed with the Bankruptcy Court, (ii) whether or not such right, Claim, Cause of Action, defense, or counterclaim is currently known to the Debtors, and (iii) whether or not a defendant in any litigation relating to such right, Claim, Cause of Action, defense, or counterclaim filed a Proof of

Claim in the Chapter 11 Cases, filed a notice of appearance or any other pleading or notice in the Chapter 11 Cases, voted for or against the Plan, or received or retained any consideration under the Plan. Without in any manner limiting the generality of the foregoing, notwithstanding any otherwise applicable principle of law or equity, including, without limitation, any principles of judicial estoppel, res judicata, collateral estoppel, issue preclusion, or any similar doctrine, the failure to list, disclose, describe, identify, or refer to a right, Claim, Cause of Action, defense, or counterclaim with respect to the Debtors' Retained Causes of Action, or potential right, Claim, Cause of Action, defense, or counterclaim with respect to the Debtors' Retained Causes of Action, in the Plan, the Schedules, or any other document filed with the Bankruptcy Court shall in no manner waive, eliminate, modify, release, or alter the Debtors' or the Liquidating Trustee's, as applicable, right to commence, prosecute, defend against, settle, and realize upon any rights, Claims, Causes of Action, defenses, or counterclaims with respect to the Debtors' Retained Causes of Action that the Debtors or the Liquidating Trust has, or may have, as of the Confirmation Date. The Liquidating Trustee may commence, prosecute, defend against, settle, and realize upon any rights, Claims, Causes of Action, defenses, and counterclaims with respect to the Debtors' Retained Causes of Action in its sole discretion, in accordance with what is in the best interests, and for the benefit, of the Debtors' Estates.

4.5     Authorization and Issuance of Reorganized HGE Common Stock. On the Effective Date, 1,000 shares of the Reorganized HGE Common Stock, representing 100% of the equity of Reorganized HGE, shall be issued to the Plan Sponsor or an entity designated by the Plan Sponsor, in consideration for the Plan Sponsor Consideration and to the Senior DIP Lender, to the extent that it exercises the Subscription Option. The Reorganized HGE Common Stock shall be free and clear of all Liens, Claims, interests, and encumbrances of any kind. All the shares of Reorganized HGE Common Stock issued pursuant to the Plan shall be duly authorized, validly issued, fully paid, and non-assessable. On the Effective Date, none of the Reorganized HGE Common Stock will be listed on a national securities exchange. Reorganized HGE may take all necessary actions, if applicable, after the Effective Date to suspend any requirement to (a) be a reporting company under the Securities Exchange Act, and (b) file reports with the Securities and Exchange Commission or any other entity or party.

4.6     Contribution of Guidepost Global Assets. On the Effective Date, Guidepost Global will contribute the Guidepost Global Assets to Reorganized HGE, for the benefit of Plan Sponsor.

4.7     Assignment of Transferred Executory Contracts / Unexpired Leases to Guidepost Global. Unless previously assumed and assigned prior to the Effective Date or otherwise the subject of a motion or notice to assume or assume and assign filed on or before the Effective Date, on the Effective Date, the Transferred Executory Contracts / Unexpired Leases shall be assigned to Guidepost Global, CEA, and/or TNC, notwithstanding any anti-assignment and/or change of control provisions contained in such Executory Contracts and Unexpired Leases. Guidepost Global, CEA, and/or TNC, as applicable, shall be responsible for the payment of any Cure Claims and Administrative Expense Claims arising from any Transferred Executory Contract / Unexpired Lease.

4.8     Transfer of Designated EB-5 Entities to Guidepost Global. On the Effective Date, in consideration for Guidepost Global funding the Junior DIP Loan and contributing the

4899-3615-0649.1

Guidepost Global Assets, the Debtors will transfer the Designated EB-5 Entities (but not their assets, except as otherwise set forth in this section or in the Plan Supplement) to Guidepost Global free and clear of all liens, Claims, encumbrances, and other interests in the Designated EB-5 Entities; provided, however, such transfer shall not be free and clear of the Limited EB-5 Interests and all EB-5 Investors in the Designated EB-5 Entities shall retain their Limited EB-5 Interests in the Designated EB-5 Entities, notwithstanding any provision of this Plan to the contrary. The Debtors shall cooperate in good faith and execute, acknowledge, and deliver all such further documents, instruments, and assurances, and take all such further actions as may be reasonably necessary or desirable to effectuate and facilitate the transfer contemplated by this section. Following the Effective Date, Reorganized HGE and/or the Liquidating Trust, upon request by Guidepost Global, Yu Capital, TNC, or EB5AN, shall cooperate in good faith to promptly execute and deliver any additional documents or perform any acts that may be required to carry out the intent and purpose of this section and to complete the transfer in accordance with its terms; provided that the requesting party shall pay for Reorganized HGE's or the Liquidating Truste's documented costs in connection with same. Custody and control of all business records, documents, financial records, and related records of the Designated EB-5 Entities shall be transferred to Guidepost Global. Guidepost Global shall assume the obligation to provide the EB-5 Investors with the Immigration Information. Guidepost Global shall, promptly after the Confirmation Date, provide access to the Immigration Information to the EB-5 Investors individually through a data room or similar shared electronic storage site and shall cooperate in good faith with all EB-5 Investors with respect thereto, including (without limitation) by responding promptly to reasonable requests of EB-5 Investors for additional documents or certifications within their capacity or control and using commercially reasonable efforts to promptly obtain and provide to EB-5 Investors required Immigration Information from third parties, if applicable. Nothing in this section or the Plan shall modify the rights or obligations of any other parties to the EB-5 Investors, including (without limitation) pursuant to the applicable limited liability company agreements of the Designated EB-5 Entities.

4.9     Cancellation and Surrender of Securities and Agreements.     On the Effective Date, all Equity of Higher Ground Education and each other Debtor identified in the Plan Supplement shall be retired, cancelled, extinguished, and/or discharged in accordance with the terms of the Plan. Except as otherwise provided in the Plan or the Plan Supplement, on the Effective Date: (a) the obligations of the Debtors under any certificate, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document, directly or indirectly, evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Equity Interest shall be cancelled as to the Debtors and Reorganized HGE shall not have any continuing obligations thereunder and (b) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors shall be released and discharged.

4.10     Release of Liens.     Upon request by the Debtors, Reorganized HGE, the Liquidating Trustee, or the Plan Sponsor, any Person holding a Lien in any of the Debtors' Property shall execute any lien release or similar document(s) required to implement the Plan or reasonably requested by the Debtors, Reorganized HGE, the Liquidating Trustee, or the Plan

Sponsor in a prompt and diligent manner. Notwithstanding the foregoing, any of the Debtors, Reorganized HGE, the Liquidating Trustee, and the Plan Sponsor are authorized to execute any lien release or similar document(s) required to implement the Plan.

    4.11    <u>Vesting of Reorganized HGE Assets and Operation of Businesses into Reorganized HGE</u>.  On the Effective Date, except as otherwise expressly provided in the Plan or Confirmation Order, the Reorganized HGE Assets shall vest or re-vest in Reorganized HGE, in each instance free and clear of all Liens, Claims, interests, and encumbrances of any kind.  The Reorganized HGE Subsidiaries that are not Designated EB-5 Entities shall be retained by Reorganized HGE.  To the extent not prohibited by applicable non-bankruptcy law, all licenses, permits, certificates of occupancy, and similar rights and privileges in the name of any of the Reorganized HGE Subsidiaries that are required by any federal, state, or local governmental agency in order for Reorganized HGE to conduct education-related operations at the locations operated by Reorganized HGE prior to the Effective Date shall be deemed assumed by the Debtors without further action on the Effective Date pursuant to the Confirmation Order.

    Neither the issuance of Reorganized HGE Common Stock nor any transfer of Property through the Plan shall result in Reorganized HGE, or any of its subsidiaries or affiliates, (a) having any liability or responsibility for any Claim against or Interest in the Debtors, the Debtors' Estates, or any Insider of the Debtors, or (b) having any liability or responsibility to the Debtors, except as expressly provided in the Plan. Without limiting the effect or scope of the foregoing, and to the fullest extent permitted by applicable laws, neither the issuance of Reorganized HGE Common Stock nor the transfer of assets contemplated in the Plan shall subject Reorganized HGE or its properties, subsidiaries, assets, affiliates, successors, or assigns to any liability for Claims against the Debtors' interests in such assets by reason of such issuance of Reorganized HGE Common Stock or transfer of assets under any applicable laws, including, without limitation, any successor liability, except as expressly provided in the Plan.

    On the Effective Date, except as otherwise provided in the Plan, Reorganized HGE may operate its business and may use, acquire, or dispose of any and all of its property, without supervision of or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, except as expressly provided in the Plan.

    4.12    <u>Satisfaction of Claims or Interests</u>.  Unless otherwise provided in the Plan, any distributions and deliveries to be made on account of Allowed Claims shall be in full and final satisfaction, release, settlement, and discharge of such Allowed Claims.

    4.13    <u>Continuation of Bankruptcy Injunction or Stays</u>.  All injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

    4.14    <u>Administration Pending Effective Date</u>.  Prior to the Effective Date, the Debtors shall continue to operate their businesses as debtors-in-possession, subject to all applicable requirements of the Bankruptcy Code and the Bankruptcy Rules.  After the Effective Date, Reorganized HGE may operate their businesses, and may use, acquire, and dispose of Reorganized HGE Assets free of any restrictions of the Bankruptcy Code or the Bankruptcy

4899-3615-0649.1

Rules, but subject to the continuing jurisdiction of the Bankruptcy Court as set forth in Article 12 hereof.

4.15    Exemption From Securities Laws. Any rights issued under, pursuant to or in effecting the Plan, including, without limitation, the Reorganized HGE Common Stock and the offering and issuance thereof by any party, including without limitation the Debtors or the Estate, shall be exempt from Section 5 of the Securities Act of 1933, if applicable, and from any state or federal securities laws requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security, and shall otherwise enjoy all exemptions available for Distributions of securities under a plan of reorganization in accordance with all applicable law, including without limitation section 1145 of the Bankruptcy Code. If the issuance of the Reorganized HGE Common Stock does not qualify for an exemption under section 1145 of the Bankruptcy Code, the Reorganized HGE Common Stock shall be issued in a manner, which qualifies for any other available exemption from registration, whether as a private placement under Rule 506 of the Securities Act, Section 4(2) of the Securities Act, and/or the safe harbor provisions promulgated thereunder.

4.16    "Change of Control" Provisions.  For purposes of effectuating the Plan, none of the transactions contemplated herein shall constitute a change of control under any agreement, contract, or document of the Debtors, or create, or be deemed to create, any right or any other claim in connection therewith based upon a provision related to a "change of control," or comparable term in any Executory Contract or Unexpired Lease being assigned and/or assumed pursuant to the Plan.

4.17    Substantive Consolidation of the Debtors for Voting and Distribution Purposes Only.  On and after the Effective Date, and solely for purposes of voting on, and making distributions under, the Plan, each and every Claim in the Debtors' Chapter 11 Cases against any of the Debtors shall be deemed filed against the consolidated Debtors and shall be deemed a single consolidated Claim against and obligation of the consolidated Debtors.  Such limited consolidation shall in no manner affect or alter (other than for Plan voting and distribution purposes) (a) the legal and corporate structures of the Debtors or Reorganized HGE, or (b) pre- and post-Petition Date Liens, guarantees, and security interests that are required to be maintained for any reason.  From and after the Effective Date, Reorganized HGE and each of the Reorganized HGE Subsidiaries will be deemed a separate and distinct entity, properly capitalized, vested with all of the assets of such Debtor as they existed prior to the Effective Date and having the liabilities and obligations provided for under the Plan.  Notwithstanding anything in this Article 4.17 to the contrary, all post-Effective Date Statutory Fees payable to the U.S. Trustee pursuant to 28 U.S.C. §1930, if any, shall be calculated on a separate legal entity basis for each Debtor.

4.18    Dissolution of Certain Debtors.  On or after the Effective Date, certain of the Debtors may be dissolved without further action under applicable law, regulation, order, or rule, including any action by the stockholders, members, the board of directors, or similar governing body of the Debtors, Reorganized HGE, or the Liquidating Trustee.  Reorganized HGE and the Liquidating Trustee shall have the power and authority to take any action necessary to wind down and dissolve the foregoing Debtors, and may, to the extent applicable: (a) file a certificate of dissolution for such entities, together with all other necessary corporate and company

35

documents, to effect the dissolution of such entities under the applicable laws of their states of formation; (b) complete and file all final or otherwise required federal, state, and local tax returns and pay taxes required to be paid for such Debtors, and pursuant to section 505(b) of the Bankruptcy Code, request an expedited determination of any unpaid tax liability of any of such Debtors, as determined under applicable tax laws; and (c) represent the interests of such Debtors before any taxing authority in all tax matters, including any action, proceeding or audit.  For the avoidance of doubt, the Liquidating Trustee is not permitted to dissolve Reorganized HGE or the Reorganized HGE Subsidiaries.

4.19    <u>Dissolution of the Committee and Cessation of Fee and Expense Payments</u>.  On the Effective Date, the Committee will dissolve, and the members of the Committee and the Committee's Professionals will cease to have any role arising from or relating to the Chapter 11 Cases; *provided* that the Committee shall have post-Effective Date standing to object to Administrative Expense Claims and Professional Fee Claims and shall be entitled to file a Professional Fee Claim for services rendered to the Committee before the Effective Date, subject to rights of any party in interest to object thereto.  Nothing in the Plan shall prohibit or limit the ability of the Debtors' or Committee's Professionals to represent either the Liquidating Trustee or to be compensated or reimbursed per the Plan and the Liquidating Trust Agreement in connection with such representation.

## ARTICLE 5
## CORPORATE GOVERNANCE AND
## MANAGEMENT OF REORGANIZED HGE

5.1    <u>Corporate Action and Existence</u>.  The Debtors shall deliver all documents and perform all actions reasonably contemplated with respect to implementation of the Plan. The Debtors, or their designees, are authorized (a) to execute on behalf of the Debtors, in a representative capacity and not individually, any documents or instruments after the Confirmation Date or at the Closing that may be necessary to consummate the Plan and (b) to undertake any other action on behalf of the Debtors to consummate the Plan. Each of the matters provided for under the Plan involving the corporate structure of the Debtors or corporate action to be taken by or required of the Debtors will, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized, approved, and (to the extent taken before the Effective Date) ratified in all respects without any requirement of further action by stockholders, creditors, or directors of the Debtors. On the Effective Date, all matters provided for in the Plan involving the corporate structure of Reorganized HGE, and all corporate actions required by the Debtors, their Estates, and Reorganized HGE in connection with the Plan, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Debtors, their Estates, or Reorganized HGE.

Upon the Effective Date, and without any further action by the shareholders, directors, or officers of Reorganized HGE, Reorganized HGE's Corporate Documents shall be deemed amended (a) to the extent necessary, to incorporate the provisions of the Plan, and (b) to prohibit the issuance by Reorganized HGE of nonvoting securities to the extent required under section 1123(a)(6) of the Bankruptcy Code, subject to further amendment of such Corporate Documents as permitted by applicable law, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or

approval other than any requisite filings required under applicable state, provincial or federal law. The Corporate Documents shall be filed with the Plan Supplement.

Except as otherwise provided in the Plan, each Debtor shall continue to exist after the Effective Date as a separate corporate entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to its certificate of incorporation and bylaws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws (or other formation documents) are amended under the Plan, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial, or federal law).  Prior to the Effective Date, the Debtors may engage in such corporate and financial transactions, including mergers, asset transfers, consolidations, amalgamations, separations, series organizations, reorganization and otherwise for the purposes of optimizing the post Effective Date corporate and tax structure of Reorganized HGE.  If proposed prior to the Effective Date, any such transaction will be subject to Court approval, if such approval would be necessary under the Bankruptcy Code.

5.2    Management and Board of Reorganized HGE.    In accordance with Section 1129(a)(5)(A) of the Bankruptcy Code, the Debtors will disclose in the Plan Supplement the identities of those individuals proposed to serve, following the Effective Date, as directors and officers of Reorganized HGE and the Reorganized HGE Subsidiaries.  Upon the Effective Date, the current members of the Debtors' board of directors and officers shall no longer serve in any such capacity with Reorganized HGE and shall be discharged of all duties in connection therewith.

5.3    Disclosure of any Insiders to be Employed or Retained by Reorganized HGE.  In accordance with Section 1129(a)(5)(B) of the Bankruptcy Code, the Debtors will disclose on or before the Confirmation Date the identity of any Insider that will be employed or retained by Reorganized HGE, and the nature of any compensation for such Insider.

## ARTICLE 6
## VOTING

6.1    Voting Generally.  Prior to the Voting Deadline, the Debtors will deliver ballots and solicit the votes of each Holder of an Allowed Claim in an Impaired Class which is entitled to vote under the Plan.  Each such Holder is entitled to vote separately to accept or reject the Plan and to indicate such vote on a duly executed and delivered ballot.

6.2    Deemed Acceptance. If Holders of Claims in a particular Impaired Class of Claims are given the opportunity to vote to accept or reject this Plan and notified that a failure of any Holders of Claims in such Impaired Class of Claims to vote to accept or reject this Plan would result in such Impaired Class of Claims being deemed to have accepted this Plan, but no

Holders of Claims in such Impaired Class of Claims vote to accept or reject this Plan, then such Class of Claims shall be deemed to have accepted this Plan.

6.3    <u>Nonconsensual Confirmation</u>.  If any Impaired Class entitled to vote shall not accept the Plan by the requisite statutory majorities provided in section 1126 of the Bankruptcy Code, or if any Impaired Class is deemed to have rejected the Plan, the Proponents jointly reserve the right (a) to undertake to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code and (b) to amend the Plan to the extent necessary to obtain entry of the Confirmation Order.

**ARTICLE 7**
**DISTRIBUTIONS UNDER THE PLAN**

7.1    <u>Distributions to Holders of Allowed Claims Only</u>.  Until a Disputed Claim becomes an Allowed Claim, distributions of Cash and/or other Instruments or Property otherwise available to the Holder of such Claim shall not be made.  Prior to the Effective Date, Holders of Allowed Claims shall be required to provide the Debtors an Internal Revenue Service Form W-9 (or, if applicable, an appropriate Internal Revenue Service Form W-8).  After the Effective Date, Holders of Allowed Claims shall be required to provide the Liquidating Trustee an Internal Revenue Service Form W-9 (or, if applicable, an appropriate Internal Revenue Service Form W-8).

7.2    <u>Delivery of Distributions</u>.

7.2.1    <u>In General</u>.  Subject to Bankruptcy Rule 9010 and except as otherwise provided in this Plan, all distributions to any Holder of an Allowed Claim including, without limitation, distributions of Reorganized HGE Common Stock, and, to the extent applicable, Cash, to Holders of Allowed Claims, shall be made at the address of such Holder as set forth in the Debtors' books and records and/or on the Schedules filed with the Bankruptcy Court unless the Debtors, Reorganized HGE, or the Liquidating Trustee have been notified in writing of a change of address including, without limitation, by the filing of a Proof of Claim by such Holder that contains an address for such Holder different from the address reflected on such books and records or Schedules for such Holder.

7.2.2    <u>Timing of Distributions</u>.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, and if so completed shall be deemed to have been completed as of the required date.

7.2.3    <u>Distributions of Unclaimed Property</u>.  In the event that any distribution to any Holder is returned as undeliverable, the Liquidating Trustee shall use reasonable efforts to determine the current address of such Holder, but no distribution to such Holder shall be made unless and until the Liquidating Trustee has determined the then current address of such Holder, at which time such distribution shall be made to such Holder without interest or accruals of any kind.  Such distributions shall be deemed unclaimed

38

property under section 347(b) of the Bankruptcy Code on the six-month anniversary of the date of the attempted delivery of such distribution. After that date, all unclaimed property or interest in property shall revert to Reorganized HGE or the Liquidating Trust and the Claim of any Holder to such property or interest in property shall be discharged and forever barred.

7.3     <u>Time Bar to Cash Payments</u>.  Checks issued by Reorganized HGE or the Liquidating Trust on account of Allowed Claims shall be null and void if not negotiated within ninety (90) days from and after the date of issuance thereof.  Holders of Allowed Claims shall make all requests for reissuance of checks to Reorganized HGE or the Liquidating Trust.  Any Claim in respect of a voided check must be made on or before the six-month anniversary of the date of issuance.  After such date, all Claims and respective voided checks shall be discharged and forever barred and Reorganized HGE or the Liquidating Trust, as applicable, shall retain all monies related thereto.

7.4     <u>Setoffs</u>.  The Debtors, Reorganized HGE, or the Liquidating Trust may, but shall not be required to, set off or recoup against any Allowed Claim, and the payments or other distributions to be made pursuant to the Plan in respect of such Allowed Claim, any claims, rights or Causes of Action of any nature whatsoever that the Debtors, Reorganized HGE, or the Liquidating Trust may have against the Holder of such Claim; *provided*, *however*, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors, Reorganized HGE, or the Liquidating Trust of any such claims, rights, or Causes of Action.

## ARTICLE 8
## PROCEDURES FOR DISPUTED CLAIMS

8.1     <u>Resolution of Disputed Claims</u>.  Except as set forth in any order of the Bankruptcy Court (including prior bar date orders), any Holder of a Claim against the Debtors shall file a Proof of Claim with the Bankruptcy Court or with the agent designated by the Debtors for this purpose on or before the Claims Bar Date.  The Debtors prior to the Effective Date, and thereafter Reorganized HGE or the Liquidating Trustee, shall have the exclusive authority to file objections to Proofs of Claim on or before the Claims Objection Deadline, and to settle, compromise, withdraw, or litigate to judgment objections to any and all Claims, regardless of whether classified or otherwise.  From and after the Effective Date, Reorganized HGE or the Liquidating Trustee may settle or compromise any Disputed Claim without approval of the Bankruptcy Court.

8.2     <u>Estimation of Claims</u>.  Any Debtor may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether such Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal related to any such objection.  In the event the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum

limitation on such Claim, the Debtors may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. All of the aforementioned objection, estimation, and resolution procedures are cumulative and are not necessarily exclusive of one another. Claims may be estimated and thereafter resolved by any permitted mechanism.

8.3     No Partial Distributions Pending Allowance. Notwithstanding any other provision in the Plan, except as otherwise agreed by the Debtors, the Liquidating Trustee, or Reorganized HGE, no partial payments or distributions shall be made with respect to a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order.

8.4     Distributions After Allowance. To the extent that a Disputed Claim becomes an Allowed Claim, the Liquidating Trustee or Reorganized HGE, as applicable, shall distribute to the Holder thereof the distributions, if any, to which such Holder is then entitled under the Plan. Any such distributions shall be made in accordance with and at the time mandated by the Plan. No interest shall be paid on any Disputed Claim that later becomes an Allowed Claim.

# ARTICLE 9
# EXECUTORY CONTRACTS AND UNEXPIRED LEASES

9.1     Assumption or Rejection of Executory Contracts and Unexpired Leases. As of the Effective Date, all Executory Contracts and Unexpired Leases, including the Reorganized HGE Contracts or Leases and Transferred Executory Contracts / Unexpired Leases, to which any Debtor is a party and which are included in the Plan Supplement, shall be, and shall be deemed to be, assumed or assumed and assigned in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code. All Executory Contracts and Unexpired Leases not listed in the Plan Supplement, and not assumed or assumed and assigned prior to the Effective Date or otherwise the subject of a motion or notice to assume or assume and assign filed on or before the Effective Date, and that were not previously rejected, shall be rejected as of the Effective Date in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code. Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions or assumptions and assignments and rejections pursuant to sections 365 and 1123 of the Bankruptcy Code. Each Reorganized HGE Contract or Lease assumed or assumed and assigned pursuant to the Plan shall vest or re-vest in and be fully enforceable by Reorganized HGE in accordance with its terms, except as modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption or assumption and assignment or applicable federal law.

9.2     Cure of Defaults of Assumed Executory Contracts and Unexpired Leases.

9.2.1   Except as otherwise specifically provided in the Plan, any monetary defaults under each Executory Contract and Unexpired Lease to be assumed or assumed and assigned pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date or in the ordinary course of business, subject to the limitation described below, or on such other terms as the parties to such Executory Contract and Unexpired Lease may otherwise agree. Any and all Cure Claims related to designation of an Executory

40

Contract and Unexpired Lease by the Plan Sponsor shall be paid by the Plan Sponsor in addition to the funding of the Plan Sponsor Consideration. Any and all Cure Claims related to a Transferred Executory Contracts / Unexpired Leases shall be paid by Guidepost Global, CEA, or TNC, as applicable.  In the event of a dispute regarding: (1) the amount of any payments to cure such a default, (2) the ability of Reorganized HGE or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed or assumed and assigned, or (3) any other matter pertaining to assumption and/or assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption or assumption and assignment; *provided*, *however*, that based on the Bankruptcy Court's resolution of any such dispute, the applicable Debtor or Reorganized HGE shall have the right, within 14 days after the entry of such Final Order and subject to approval of the Bankruptcy Court pursuant to section 365 of the Bankruptcy Code, to reject the applicable Executory Contract and Unexpired Lease.

9.2.2   Assumption or assumption and assignment of any Executory Contract and Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed or assumed and assigned Executory Contract and Unexpired Lease at any time prior to the effective date of assumption and/or assignment. Any Proofs of Claim filed with respect to an Executory Contract and Unexpired Lease that has been assumed or assumed and assigned shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

9.3   <u>Rejection of Compensation and Benefit Programs</u>.  Except as set forth in <u>Article 9.5</u> of this Plan, all employment, retirement, indemnification, and other compensation or benefits agreements or arrangements shall be rejected, and neither the Plan Sponsor nor Reorganized HGE (nor its Subsidiaries) shall have any obligations in connection with any such employment, retirement, indemnification, and other compensation or benefits agreements or arrangements following the Effective Date.

9.4   <u>Pass-Through Assets</u>.  Any rights or arrangements or other assets necessary or useful to the operation of the Debtors' business that are not Designated EB-5 Entities or Liquidating Trust Assets (the "<u>Pass-Through Assets</u>"), shall, in the absence of any other treatment, but subject to the further agreement and consent of Plan Sponsor with respect to any such rights or arrangements or other assets, be passed through the bankruptcy proceedings for the benefit of Reorganized HGE (if constituting Reorganized HGE Assets) and shall otherwise be unaltered and unaffected by the bankruptcy filings or the Chapter 11 Cases.

9.5   <u>D&O Insurance Policies</u>.  Notwithstanding anything to the contrary herein, each of the D&O Insurance Policies and any agreements, documents, or instruments relating thereto issued to or entered into by the Debtors prior to the Petition Date shall not be considered Executory Contracts and shall neither be assumed nor rejected by the Debtors; provided,

4899-3615-0649.1

however, that to the extent a court of competent jurisdiction determines that any D&O Insurance Policy is an Executory Contract, such D&O Policy shall be assumed by Debtors and assigned to the Liquidating Trust as of the Effective Date. Subject to the occurrence of the Effective Date, the entry of the Confirmation Order shall constitute approval of such assumption and assignment pursuant to section 365 of the Bankruptcy Code. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of the Debtors existing as of the Confirmation Date with respect to the D&O Insurance Policies, and prior payments for premiums or other charges made prior to the Petition Date under or with respect to the D&O Insurance Policies shall be indefeasible. Nothing in the Plan, the Plan Supplement, the Confirmation Order, or any other order of the Bankruptcy Court, (a) alters, modifies, or otherwise amends the terms and conditions of (or the coverage provided by) the D&O Insurance Policies or (b) alters or modifies the duty, if any, that the insurers or third-party administrators pay claims covered by the D&O Insurance Policies. Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of D&O Insurance Policies, if applicable. For the avoidance of doubt, neither the Plan Sponsor nor Reorganized HGE shall have any obligations or personal or direct or indirect liability whatsoever in connection with any the foregoing, including, without limitation, any employment, retirement, indemnification, and other agreements or arrangements, following the Effective Date, and the sole recourse of any and all Persons and the sole source of any recovery in connection therewith (if any) shall be against the D&O Insurance Policy.

9.6    Modifications, Amendments, Supplements, Restatements, or Other Agreements.

9.6.1    Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed or assumed and assigned shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts or Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

9.6.2    Modifications, amendments, supplements, and restatements to prepetition Executory Contracts or Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

9.7    Bar Date for Filing Claims for Rejection Damages. If the rejection of an Executory Contract and Unexpired Lease pursuant to the Plan gives rise to a Claim, a Proof of Claim must be served upon the Debtors and the Debtors' counsel within 30 days after notice of entry of the Effective Date. Any such Claim not served within such time period will be forever barred. Each such Claim will constitute a General Unsecured Claim, to the extent such Claim is Allowed by the Bankruptcy Court.

4899-3615-0649.1

9.8     Reservation of Rights.     Nothing contained in the Plan shall constitute an admission by the Debtors that any Executory Contract or Unexpired Lease is in fact an Executory Contract or Unexpired Lease or that Reorganized HGE has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors, Reorganized HGE, Guidepost Global, CEA, or TNC, as applicable, shall have 30 days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

# ARTICLE 10

## SETTLEMENT, RELEASES, INJUNCTIONS, AND DISCHARGE

10.1     Comprise and Settlement of Claims, Interests, and Controversies.

Unless otherwise set forth in the Plan, pursuant to section 1123 of the Bankruptcy Code, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims and Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest. The Plan shall be deemed a motion to approve the good faith compromise and settlement of all such Claims, Interests, and controversies pursuant to Bankruptcy Rule 9019. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable. In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, Reorganized HGE or the Liquidating Trust may compromise and settle Claims against, and Interests in, the Debtors and their Estates and Causes of Action against other Entities. Subject to Article 7 and Article 8 of the Plan, all distributions made to Holders of Allowed Claims and Allowed Interests, as applicable, in any Class are intended to be and shall be final.

43

10.2    <u>Releases by the Debtors</u>.

Notwithstanding anything contained in this Plan or the Confirmation Order to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, including the obligations of the Debtors under this Plan and the contributions of the Released Parties in facilitating the reorganization of the Debtors and implementation of the Plan, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is hereby conclusively, absolutely, unconditionally, irrevocably, and forever released, waived, and discharged by and on behalf of each and all of the Debtors, their Estates, and if applicable, Reorganized HGE, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims, Interests, obligations, rights, suits, damages, and Causes of Action whatsoever (including any derivative claims and Avoidance Actions, asserted or assertable on behalf of the Debtors, Reorganized HGE, the Liquidating Trustee, and the Debtors' Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or herein-after arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, that such Holders or their Estates, Affiliates, heirs, executory, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against or Interest in a Debtor or other Entity, or that any holder of any Claim against or Interest in a Debtor or other Entity could have asserted on behalf of the Debtors, Reorganized HGE, and their Estates, including without limitation, based on or relating to, or in any manner arising from, in whole or in part, among other things, the Debtors or their Estates (including the capital structure, management, ownership, or operation thereof), the Chapter 11 Cases, the RSA, Reorganized HGE (including the capital structure, management, ownership, or operation thereof), the purchase, sale, or rescission of any Security of the Debtors, Reorganized HGE, and the Debtors' Estates, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements or interaction between or among any Debtor and any Released Party, the operations and financings in respect of the Debtors (whether before or after the Petition Date), the distribution of any Cash or other property of the Debtors to any Released Party, the assertion of enforcement of rights or remedies against the Debtors, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, including all prior recapitalizations, restructurings, or refinancing efforts and transactions, any Securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, the decision to file the Chapter 11 Cases, any intercompany transactions, any related adversary proceedings, the formulation, documentation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Disclosure Statement, this Plan, the Plan Supplement, the RSA, the DIP Loans, DIP Financing Documents, or any Definitive Document, contract instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the DIP

Loans, the DIP Documents, this Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of this Plan, including the issuance or distribution of Securities pursuant to this Plan, or the distribution of property under this Plan or any other related agreement, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place on or before, in respect of the foregoing clause, the Effective Date.

Notwithstanding anything to the contrary in the foregoing, the Debtors do not, pursuant to the releases set forth above, release: (a) any Debtors' Retained Causes of Action or any Person or Entity that is the subject thereof; (b) any post-Effective Date obligations of any Person or Entity under this Plan, the Confirmation Order or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan or transactions thereunder; (c) the rights of any Holder of Allowed Claims to receive distributions under this Plan; or (d) the Non-Released D&Os.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (a) in exchange for the good and valuable consideration provided by the Released Parties, including, the Released Parties' contribution to facilitating the transactions contemplated in the Plan and implementing this Plan; (b) a good faith settlement and compromise of the Claims or Causes of Action released by the Debtor Release; (c) in the best interests of the Debtors and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for a hearing; and (f) a bar to any of the Debtors, Reorganized HGE, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.

10.3    Releases by Releasing Parties.

Notwithstanding anything contained herein or the Confirmation Order to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, to the maximum extent permitted by applicable law, in exchange for good and valuable consideration, including the obligations of the Debtors under this Plan and the contributions and services of the Released Parties in facilitating the reorganization of the Debtors and implementation of the Plan, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party, is hereby conclusively, absolutely, unconditionally, irrevocably and forever, released, waived, and discharged by each and all of the Releasing Parties, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of any of the Debtors, Reorganized HGE, and their Estates), obligations, rights, suits, or damages, whether liquidated or unliquidated, fixed, or contingent, matured, or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or herein after arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any

46

other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, that such Holders or their Estates, Affiliates, heirs, executory, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, the Debtors, Reorganized HGE, and their Estates, including without limitation, based on or relating to, or in any manner arising from, in whole or in part, among other things, the Debtors or their Estates (including the capital structure, management, ownership, or operation thereof), the Chapter 11 Cases, the Plan, the RSA, Reorganized HGE (including the capital structure, management, ownership, or operation thereof), the purchase, sale, or rescission of any Security of the Debtors, Reorganized HGE, and their Estates, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements or interaction between or among any Debtor and any Released Party, the operations and financings in respect of the Debtors (whether before or after the Petition Date), the distribution of any Cash or other property of the Debtors to any Released Party, the assertion of enforcement of rights or remedies against the Debtors, the restructuring of any Claim or Interest before or during the Chapter 11 Cases including all prior recapitalizations, restructurings, or refinancing efforts and transactions, any Securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the decision to file the Chapter 11 Cases, any related adversary proceedings, the formulation, documentation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Disclosure Statement, this Plan, the Plan Supplement, the RSA, the DIP Loans, DIP Financing Documents, or any Definitive Document, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of this Plan, including the issuance or distribution of Securities pursuant to this Plan, or the distribution of property under this Plan or any other related agreement, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place on or before, in respect of the foregoing clause, the Effective Date; *provided* that the provisions of this Third-Party Release shall not operate to waive, release, or otherwise impair any Causes of Action arising from willful misconduct, actual or criminal fraud, or gross negligence of such applicable Released Party as determined by the Final Order of the Bankruptcy Court or any other court of competent jurisdiction.

In exchange for the foregoing Third-Party Release of the Settlement Parties, the Settlement Parties, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any causes of action, directly or derivatively, by, through, for, or because of the foregoing entities, shall be deemed to have released, and shall be permanently enjoined from any prosecution or attempted prosecution of, any and all claims, causes of action, interests, damages, remedies, demands, rights, actions, suits, debts, sums of money, obligations, judgments, liabilities, accounts, defenses, offsets, counterclaims, crossclaims, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, now existing or hereafter arising, contingent or non-contingent, liquidated or unliquidated, choate or inchoate,

47

secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise, which any of them has or may have against the Releasing Parties. For the avoidance of doubt, the Settlement Parties and the Girns, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any causes of action, directly or derivatively, by, through, for, or because of the foregoing entities, shall be deemed to have released, and shall be permanently enjoined from any prosecution or attempted prosecution of, any and all claims, causes of action, interests, damages, remedies, demands, rights, actions, suits, debts, sums of money, obligations, judgments, liabilities, accounts, defenses, offsets, counterclaims, crossclaims, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, now existing or hereafter arising, contingent or non-contingent, liquidated or unliquidated, choate or inchoate, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise, which any of them has or may have against the other Settlement Parties and the Girns.

Notwithstanding anything to the contrary in the foregoing, the Releasing Parties do not, pursuant to the releases set forth above, release: (a) any Debtors' Retained Causes of Action; (b) any post-Effective Date obligations of any Person or Entity under this Plan, the Confirmation Order, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan or transactions thereunder; or (c) the rights of any Holder of Allowed Claims or Interests to receive distributions under this Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (a) consensual; (b) essential to the Confirmation of this Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the transactions contemplated in the Plan and implementing this Plan; (d) in the best interests of the Debtors and their Estates; (e) fair, equitable, and reasonable; (f) given and made after due notice and opportunity for a hearing; and (g) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.

10.4    Exculpation.

To the fullest extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party will be exculpated from, any Claim or Cause of Action arising from the Petition Date through the Effective Date in connection with or arising out of the administration of the Chapter 11 Cases, the formulation, documentation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Disclosure Statement, this Plan, the Plan Supplement, the RSA, the DIP Loans, DIP Financing Documents, or any Definitive Document, the filing of the Chapter 11 Cases, the solicitation of votes for, or Confirmation or Consummation of, this Plan, the funding of this Plan, the

48

occurrence of the Effective Date, the administration of this Plan or the property to be distributed under this Plan, the issuance of Securities under or in connection with this Plan, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized HGE, if applicable, in connection with this Plan or the transactions in furtherance of any of the foregoing, other than Claims or Causes of Action in each case arising out of or related to any act or omission of an Exculpated Party that is a criminal act or constitutes actual fraud, willful misconduct, or gross negligence as determined by a Final Order, but in all respects such Persons will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan. The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of Securities pursuant to this Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan, including the issuance of Securities thereunder. The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

The Exculpated Parties have, and upon Confirmation shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to this Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan.

Solely with respect to the exculpation provisions, notwithstanding anything to the contrary in this Plan, each of the Exculpated Parties and the 1125(e) Exculpation Parties shall not incur liability for any Cause of Action or Claim related to any act or omission in connection with, relating to, or arising out of, in whole or in part, (a) the solicitation of acceptance or rejection of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code or (b) the participation, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, in the offer, issuance, sale, or purchase of a security, offered or sold under the Plan. No Entity or Person may commence or pursue a Claim or Cause of Action of any kind against any of the Exculpated Parties or 1125(e) Exculpation Parties that arose or arises from, in whole or in part, a Claim or Cause of Action subject to the terms of this paragraph, without this Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim for actual fraud, gross negligence, or willful misconduct against any such Exculpated Party or 1125(e) Exculpation Party and such party is not exculpated pursuant to this provision; and (ii) specifically authorizing such Entity or Person to bring such Claim or Cause of Action against any such Exculpated Party or 1125(e) Exculpation Party. The Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Causes of Action.

10.5    <u>Injunction</u>.

Except as otherwise expressly provided in this Plan or the Confirmation Order or for obligations or distributions issued or required to be paid pursuant to this Plan or the Confirmation Order, effective as of the Effective Date, all Entities that have held, hold, or may hold Claims, Interests, Causes of Action, or liabilities that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, Reorganized HGE, the Exculpated Parties, the 1125(e) Exculpation Parties, or the Released Parties: (a) commencing or continuing in any manner any action, suit, or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action or liabilities; (d) asserting any right of setoff or subrogation, or recoupment, of any kind against any obligation due from such Entities or against the property of such Entities or the Estates on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities unless such Holder has filed a motion requesting the right to perform such setoff on or before the Effective Date or has filed a Proof of Claim or proof of Interest indicating that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities released, settled or subject to exculpation pursuant to this Plan. Notwithstanding anything to the contrary in the foregoing, the injunction set forth above does not enjoin the enforcement of any obligations arising on or after the Effective Date of any Person or Entity under this Plan, any post-Effective Date transaction contemplated by the Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan.

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, managers, principals, and direct and indirect Affiliates, in their capacities as such, shall be enjoined from taking any actions to interfere with the implementation or Consummation of this Plan. Each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or reinstatement of such Claim or Interest, as applicable, pursuant to this Plan, shall be deemed to have consented to the injunction provisions set forth in this <u>Article 10.5</u>.

No Person or Entity may commence or pursue a Claim or Cause of Action, as applicable, of any kind against the Debtors, Reorganized HGE, the Exculpated Parties, the 1125(e) Exculpation Parties, or the Released Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action, as applicable, subject to <u>Article 10.2</u>, <u>Article 10.3</u>, <u>Article 10.4</u>, and <u>Article 10.5</u> hereof, without the Bankruptcy Court (a) first determining, after notice and a hearing, that such Claim or Cause of Action, as applicable, represents a

colorable Claim of any kind, and (b) specifically authorizing such Person or Entity to bring such Claim or Cause of Action, as applicable, against any such Debtor, Reorganized HGE, Exculpated Party, 1125(e) Exculpation Party, or Released Party, as applicable. The Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Causes of Action.

10.5.1 **BY ACCEPTING DISTRIBUTIONS PURSUANT TO THE PLAN, EACH HOLDER OF AN ALLOWED CLAIM OR ALLOWED INTEREST EXTINGUISHED, DISCHARGED, OR RELEASED PURSUANT TO THE PLAN WILL BE DEEMED TO HAVE AFFIRMATIVELY AND SPECIFICALLY CONSENTED TO BE BOUND BY THE PLAN, INCLUDING, WITHOUT LIMITATION, THE INJUNCTIONS SET FORTH IN THIS ARTICLE 10.5.**

10.5.2 **THE INJUNCTIONS IN THIS ARTICLE 10.5 SHALL EXTEND TO ANY SUCCESSORS OF THE DEBTORS, REORGANIZED HGE, THE RELEASED PARTIES, THE EXCULPATED PARTIES, AND THE 1125(E) EXCULPATED PARTIES, AND THEIR RESPECTIVE PROPERTY AND INTERESTS IN PROPERTY.**

10.5.3 <u>Violation of Injunctions</u>. **Any Person injured by any willful violation of such injunction may seek to recover actual damages, including costs and attorneys' fees and, in appropriate circumstances, may seek to recover punitive damages from the willful violator.**

10.6    <u>Discharge of Claims and Termination of Interests.</u>

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by Reorganized HGE), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (a) a Proof of Claim based upon such debt or right is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (c) the Holder of such a Claim or Interest has accepted the Plan or voted to reject the Plan. The Confirmation Order shall

be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date, except as otherwise specifically provided in the Plan.

## ARTICLE 11

## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

11.1    <u>Conditions Precedent to Confirmation</u>.  It shall be a condition precedent to Confirmation of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of <u>Article 11.3</u> hereof:

 (a) No termination event or continuing event of default under the DIP Loan Facility Order shall have occurred that has not been waived;

 (b) the Confirmation Order shall be in a form and substance acceptable to the Debtors, the Plan Sponsor, and the Committee, and for the avoidance of doubt, shall provide for the Plan Sponsor and Senior DIP Lender, subject to its exercise of the Subscription Option, to be issued 100% of the Reorganized HGE Common Stock free and clear of all liens, claims, rights, interests, security interests and encumbrances of any kind (other than those expressly identified in writing as acceptable to Plan Sponsor in its sole and absolute discretion);

 (c) the Plan shall be in form and substance reasonably acceptable to the Debtors, the Plan Sponsor, and the Committee;

 (d) the final version of the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been filed with the Bankruptcy Court and the same shall be in form and substance reasonably acceptable to the Debtors, the Plan Sponsor, and the Committee; and

 (e) no termination event, breach or failure to company with the terms of the Definitive Documents, the Confirmation Order, or any other material final order of the Bankruptcy Court shall have occurred and be continuing, unless waived by the relevant parties.

11.2    <u>Conditions Precedent to the Effective Date</u>.  It shall be a condition precedent to the Effective Date of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of <u>Article 11.3</u>:

 (a) all conditions to Confirmation in <u>Article 11.1</u> of the Plan shall have been either (and shall continue to be) satisfied or waived pursuant to <u>Article 11.3</u> of the Plan;

 (b) all documents required under the Plan, including lien releases, shall have been delivered;

(c)     the Confirmation Order, in form and substance reasonably acceptable to the Debtors, the Plan Sponsor, and the Committee and shall have been entered and shall have become a Final Order;

(d)     the Plan Sponsor Consideration, the Settlement Party Payment, and the Surplus DIP Cash shall be sufficient to fund all Plan Obligations;

(e)     the Debtors and Insiders shall not have caused or permitted to occur an "ownership change" as such term is used in section 382 of title 26 of the United States Code;

(f)     the Plan Sponsor shall have wired the Plan Sponsor Consideration to the Liquidating Trust;

(g)     the Settlement Parties shall have wired the Settlement Party Payment to the Liquidating Trust;

(h)     the Debtors shall have wired the Surplus DIP Cash, if any, to the Liquidating Trust;

(i)     all actions, documents, certificates, and agreements necessary to implement the Plan, including documents contained in the Plan Supplement, shall have been effected or executed and delivered, as the case may be, to the required parties and, to the extent required, filed with the applicable governmental units in accordance with applicable laws;

(j)     the Liquidating Trust shall be established and funded and the Liquidating Trustee shall have been appointed in accordance with the provisions of the Plan and the terms of the Liquidating Trust Agreement;

(k)     the Reorganized HGE Common Stock and any and all agreements and documents relating thereto shall have been executed, issued and delivered by Reorganized HGE; and

(l)     the Professional Holdback Escrow Account shall have been fully funded.

11.3    <u>Waiver of Conditions</u>.  The conditions to Confirmation and the Effective Date set forth in this <u>Article 11</u> may be waived by the Proponents, together by joint agreement, (with the express written consent of the Plan Sponsor) without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.

11.4    <u>Effect of Failure of Conditions</u>.  If Consummation does not occur, the Plan shall be null and void in all respects, and nothing contained in the Plan or the Disclosure Statement shall:  (a) constitute a waiver or release of any claims by the Debtors, any Holders of Claims or Interests, or any other Entity; (b) prejudice in any manner the rights of the Debtors, any Holders of Claims or Interests, or any other Entity; or (c) constitute an admission, acknowledgment,

offer, or undertaking by the Debtors, any Holders of Claims or Interests, or any other Entity in any respect.

     11.5   Substantial Consummation.  On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

## ARTICLE 12

## RETENTION OF JURISDICTION

     12.1   Retention of Jurisdiction.  Under sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the Plan's Confirmation and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction (except with respect to the purposes described under clauses (a) and (n) below, with respect to which jurisdiction shall not be exclusive) over all matters arising out of or related to the Chapter 11 Cases and the Plan, to the fullest extent permitted by law, including jurisdiction to:

          (a)    determine any and all objections to the allowance of Claims or Interests;

          (b)    determine any and all motions to estimate Claims at any time, regardless of whether the Claim to be estimated is the subject of a pending objection, a pending appeal, or otherwise;

          (c)    determine any and all motions to subordinate Claims or Interests at any time and on any basis permitted by applicable law;

          (d)    hear and determine all Administrative Expense Claims;

          (e)    hear and determine all matters with respect to the assumption or rejection of any Executory Contract or Unexpired Lease to which one or more of the Debtors are parties or with respect to which a one or more of the Debtors may be liable, including, if necessary, the nature or amount of any required cure or the liquidation of any Claims arising therefrom;

          (f)    hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Chapter 11 Cases;

          (g)    enter such orders as may be necessary or appropriate in aid of the Consummation hereof and to execute, implement, or consummate the provisions hereof and all contracts, Instruments, releases, and other agreements or documents created in connection with the Plan or the Confirmation Order;

          (h)    hear and determine disputes arising in connection with the interpretation, implementation, Consummation, or enforcement hereof and all

contracts, Instruments, and other agreements executed in connection with the Plan;

(i)    hear and determine any request to modify the Plan or to cure any defect or omission or reconcile any inconsistency herein or any order of the Bankruptcy Court;

(j)    issue and enforce injunctions or other orders, or take any other action that may be necessary or appropriate to restrain any interference with or compel action for the implementation, Consummation, or enforcement hereof or the Confirmation Order;

(k)    enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

(l)    hear and determine any matters arising in connection with or relating to the Plan, the Confirmation Order or any contract, Instrument, release, or other agreement or document created in connection with the Plan or the Confirmation Order;

(m)    enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Cases;

(n)    recover all assets of the Debtors and Property of the Debtors' Estates, wherever located;

(o)    hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(p)    hear and determine all disputes involving the existence, nature, or scope of the discharge of the Debtors;

(q)    hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

(r)    hear and determine all other motions, applications and contested or litigated matters which were pending but not resolved as of the Effective Date including, without limitation, any motions, applications and contested or litigated matters to sell or otherwise dispose of assets and/or grant related relief; and

(s)    enter a final decree closing the Chapter 11 Cases.

# ARTICLE 13

## MISCELLANEOUS PROVISIONS

13.1    <u>Immediate Binding Effect</u>.  Subject to <u>Article 11.2</u> hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, Reorganized HGE, the Liquidating Trust, and any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring Property under the Plan, and any and all parties to Executory Contracts or Unexpired Leases with the Debtors.

13.2    <u>Effectuating Documents; Further Transactions</u>.  The Debtors, Reorganized HGE, and or the Liquidating Trustee (as the case may be) are authorized to execute, deliver, file, or record such contracts, Instruments, releases, indentures, and other agreements or documents, and take such actions, as may be necessary or appropriate to effectuate and further evidence the terms, conditions and transactions contemplated by the Plan.  The secretary or any assistant secretary of the Debtors or Reorganized HGE or the Liquidating Trustee is authorized to certify or attest to any of the foregoing actions.  Each of the Debtors, Reorganized HGE, and/or the Liquidating Trustee shall take such actions and execute such documents as may be reasonably requested by one of the foregoing to effectuate and further evidence the terms, conditions and transactions contemplated by the Plan so long as such action does not require more than *de minimus* out-of-pocket expense by the Person for which action is requested. In the event that there is a dispute between Reorganized HGE and Guidepost Global regarding whether a particular asset constitutes a Reorganized HGE Asset or a Transferred Executory Contract / Unexpired Leases, Reorganized HGE and Guidepost Global will work in good faith to resolve such dispute.

13.3    <u>Entire Agreement</u>.  On the Effective Date, except as otherwise indicated, the Plan and the Plan Supplement shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

13.4    <u>Exhibits</u>.  All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address below or by downloading such exhibits and documents from the Debtors' restructuring website at www.veritaglobal.net/HigherGround or the Bankruptcy Court's website at www.txnb.uscourts.gov.  To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

13.5    <u>Exemption From Certain Transfer Taxes</u>.  Pursuant to section 1146(c) of the Bankruptcy Code, any transfers from the Debtors to Reorganized HGE or any other Person or Entity pursuant to or in connection with the Plan shall not be subject to any document recording

56

tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing Instruments or other documents without the payment of any such tax or governmental assessment.

13.6    <u>Amendment, Modification and Severability of Plan Provisions</u>.    If, prior to Confirmation, any term or provision hereof is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the joint request of the Proponents (with the express written consent of the Plan Sponsor), shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.    Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions hereof shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.    The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision hereof, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

(a)    The Plan may be amended or modified before the Effective Date by the joint agreement of the Proponents (with the express written consent of the Plan Sponsor) to the extent provided by section 1127 of the Bankruptcy Code.

(b)    The Proponents reserve the right to jointly modify or amend the Plan (with the express written consent of the Plan Sponsor) upon a determination by the Bankruptcy Court that the Plan, in its current form, is not confirmable pursuant to section 1129 of the Bankruptcy Code.    To the extent such a modification or amendment is permissible under section 1127 of the Bankruptcy Code, without the need to resolicit acceptances, the Debtors reserve the right to sever any provisions of the Plan that the Bankruptcy Court finds objectionable.

(c)    The Proponents reserve the right to jointly revoke or withdraw the Plan prior to the Confirmation Date.    If the Proponents jointly revoke or withdraw the Plan, or if Confirmation does not occur, then the Plan shall be null and void, and nothing contained in the Plan shall: (1) constitute a waiver or release of any Claims by or against, or any Interests in, the Debtors; or (2) prejudice in any manner the rights of the Debtors in any further proceedings.

13.7    <u>Withholding and Reporting Requirements</u>.    In connection with the Plan and all distributions hereunder, Reorganized HGE and the Liquidating Trustee shall, as applicable, to the extent applicable, comply with all tax withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements.    Reorganized HGE and the Liquidating Trustee, as applicable, shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements.

13.8    Closing of Chapter 11 Cases.  The Liquidating Trustee shall, promptly after the full administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

13.9    Conflicts.  To the extent that any provision of the Disclosure Statement, the Plan Supplement, or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control; *provided*, *however*, that in the event of a conflict between the Confirmation Order, on the one hand, and the Plan, on the other hand, the Confirmation Order shall govern and control in all respects.

13.10   Service of Documents.  Any notice, request, or demand required or permitted to be made or provided under the Plan or any Plan-related document shall be (i) in writing, (ii) served by (a) certified mail, return receipt requested, (b) hand delivery, (c) overnight delivery service, (d) first class mail, or (e) facsimile transmission, and (iii) deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

**If to the Debtors, at:**

    HIGHER GROUND EDUCATION, INC.
    1321 Upland Drive, PMB 20442
    Houston, TX 77043
    Attn: Jon McCarthy
    Email:  board@tohigherground.com

 with a copy to:

    FOLEY & LARDNER
    2021 McKinney Ave., Suite 1600
    Dallas, TX 75201
    Attn: Holland O'Neil, Esq.
    Email: honeil@foley.com

    and

    FOLEY & LARDNER
    1144 15th St, Suite 2200
    Denver, CO 80202
    Attn: Timothy Mohan
    Email: tmohan@foley.com

**If to the Plan Sponsor or Reorganized HGE, at:**

    2HR Learning, Inc.

2028 E. Ben White Blvd, Ste 240-2650
Austin, TX 78741
Attn:  Andrew Price
       Chief Financial Officer
Email: andy.price@trilogy.com

with a copy to:

COZEN O'CONNOR
3 WTC, 175 Greenwich Street
New York, NY 10007
Attn: Trevor R. Hoffmann
Telephone: (212) 453-3735
Email: thoffmann@cozen.com

**If to the Committee, at:**

Sophiea Kim, Co-Chairperson for the Official Committee of Unsecured Creditors of
Higher Ground Education, Inc., *et al.*
4149 Freedom Ln.
Frisco, TX 75033
Email: sophiea.jk@gmail.com

and

Terry Nugent, Co-Chairperson for the Official Committee of Unsecured Creditors of
Higher Ground Education, Inc., *et al.*
RTS Orchards, LLC
4831 Calloway Dr. Suite 102
Bakersfield, CA 93312
Email: terry@orovistafarms.com

with a copy to:

GRAY REED
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Attn:  Jason S. Brookner
       Aaron M. Kaufman
       Amber M. Carson
Email: jbrookner@grayreed.com
       akaufman@grayreed.com
       acarson@grayreed.com

**If to the Liquidating Trustee, at:**

[Address to be provided in the Plan Supplement]

59

13.11 <u>Binding Effect</u>.   The Plan shall be binding upon and inure to the benefit of the Debtors, all present and former Holders of Claims against and Interests in the Debtors, their respective successors and assigns, including Reorganized HGE and the Liquidating Trust, and all other parties-in-interest in the Chapter 11 Cases.

13.12 <u>No Admissions</u>.    Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed as an admission by the Debtors with respect to any matter set forth herein including, without limitation, liability on any Claim.

13.13 <u>Headings</u>.  Headings are used in the Plan for convenience and reference only and shall not constitute a part of the Plan for any other purpose.

*[Remainder of page intentionally left blank.]*

Dated:  November 20, 2025

HIGHER GROUND EDUCATION, INC., *et al.*,
*Debtors and Debtors in Possession*


By: */s/ Jonathan McCarthy*
    Jonathan McCarthy
    Interim President & Secretary

-and-

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS

By: */s/ Sophiea Kim*
    Sophiea Kim
    Co-Chair

By: */s/ Terry Nugent*
    Terry Nugent
    Co-Chair

**Schedule 1.1.48**

**List of Debtors**

1. Higher Ground Education, Inc. (Delaware)
2. Guidepost A LLC (Delaware)
3. Prepared Montessorian LLC (Delaware)
4. Terra Firma Services LLC (Delaware)
5. Guidepost Birmingham LLC (Delaware)
6. Guidepost Bradley Hills LLC (Delaware)
7. Guidepost Branchburg LLC (Delaware)
8. Guidepost Carmel LLC (Delaware)
9. Guidepost FIC B LLC (Delaware)
10. Guidepost FIC C LLC (Delaware)
11. Guidepost Goodyear LLC (Delaware)
12. Guidepost Las Colinas LLC (Delaware)
13. Guidepost Leawood LLC (Delaware)
14. Guidepost Muirfield Village LLC (Delaware)
15. Guidepost Richardson LLC (Delaware)
16. Guidepost South Riding LLC (Delaware)
17. Guidepost St Robert LLC (Delaware)
18. Guidepost The Woodlands LLC (Delaware)
19. Guidepost Walled Lake LLC (Delaware)
20. HGE FIC D LLC (Delaware)
21. HGE FIC E LLC (Delaware)
22. HGE FIC F LLC (Delaware)
23. HGE FIC G LLC (Delaware)
24. HGE FIC H LLC (Delaware)
25. HGE FIC I LLC (Delaware)
26. HGE FIC K LLC (Delaware)
27. HGE FIC L LLC (Delaware)
28. HGE FIC M LLC (Delaware)
29. HGE FIC N LLC (Delaware)
30. HGE FIC O LLC (Delaware)
31. HGE FIC P LLC (Delaware)
32. HGE FIC Q LLC (Delaware)
33. HGE FIC R LLC (Delaware)
34. LePort Emeryville LLC (Delaware)
35. AltSchool II LLC (Delaware)

# **Exhibit B**

Holland N. O'Neil (TX 14864700)
Thomas C. Scannell (TX 24070559)
**FOLEY & LARDNER LLP**
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667
honeil@foley.com
tscannell@foley.com

Timothy C. Mohan
(admitted *pro hac vice*)
**FOLEY & LARDNER LLP**
1144 15th Street, Suite 2200
Denver, CO 80202
Telephone: (720) 437-2000
Facsimile: (720) 437-2200
tmohan@foley.com

Nora J. McGuffey (TX 24121000)
Quynh-Nhu Truong (TX 24137253)
**FOLEY & LARDNER LLP**
1000 Louisiana Street, Suite 2000
Houston, TX 77002
Telephone: (713) 276-5500
Facsimile: (713) 276-5555
nora.mcguffey@foley.com
qtruong@foley.com

**COUNSEL TO DEBTORS AND
DEBTORS IN POSSESSION**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § § § § § § § | Chapter 11 |
| Higher Ground Education, Inc., *et al.*,[1] | | Case No.: 25-80121-11 (MVL) |
| Debtors. | | (Jointly Administered) |

**NOTICE OF (I) ENTRY OF AN ORDER (I) APPROVING THE DEBTORS'
DISCLOSURE STATEMENT AND (II) CONFIRMING THE MODIFIED
SECOND AMENDED JOINT PLAN OF REORGANIZATION OF
HIGHER GROUND EDUCATION, INC., ITS AFFILIATED DEBTORS, AND
THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND
(II) OCCURRENCE OF THE EFFECTIVE DATE**

**PLEASE TAKE NOTICE** that on November __, 2025, the Honorable Michelle V. Larson, United State Bankruptcy Judge for the United Stated Bankruptcy Court for the Northern District of Texas (the "**Bankruptcy Court**") entered the *Order (I) Approving the Debtors' Disclosure Statement and (II) Confirming the Modified Second Amended Joint Plan of Reorganization of Higher Ground Education, Inc., Its Affiliated Debtors, and the Official Committee of Unsecured Creditors* [Docket No. [●] (the "**Confirmation Order**"), confirming the

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal identification number, are: Higher Ground Education Inc. (7265); Guidepost A LLC (8540); Prepared Montessorian LLC (6181); Terra Firma Services LLC (6999); Guidepost Birmingham LLC (2397); Guidepost Bradley Hills LLC (2058); Guidepost Branchburg LLC (0494); Guidepost Carmel LLC (4060); Guidepost FIC B LLC (8609); Guidepost FIC C LLC (1518); Guidepost Goodyear LLC (1363); Guidepost Las Colinas LLC (9767); Guidepost Leawood LLC (3453); Guidepost Muirfield Village LLC (1889); Guidepost Richardson LLC (7111); Guidepost South Riding LLC (2403); Guidepost St Robert LLC (5136); Guidepost The Woodlands LLC (6101); Guidepost Walled Lake LLC (9118); HGE FIC D LLC (6499); HGE FIC E LLC (0056); HGE FIC F LLC (8861); HGE FIC G LLC (5500); HGE FIC H LLC (8817); HGE FIC I LLC (1138); HGE FIC K LLC (8558); HGE FIC L LLC (2052); HGE FIC M LLC (8912); HGE FIC N LLC (6774); HGE FIC O LLC (4678); HGE FIC P LLC (1477); HGE FIC Q LLC (3122); HGE FIC R LLC (9661); LePort Emeryville LLC (7324); AltSchool II LLC (0403). The Debtors' mailing address is 1321 Upland Dr. PMB 20442, Houston, Texas 77043.

*Modified Second Amended Joint Plan of Reorganization of Higher Ground Education, Inc., Its Affiliated Debtors, and the Official Committee of Unsecured Creditors* [Docket No. 649] (as amended, restated, supplemented, revised, or otherwise modified, the "**Plan**")[2] of the above-captioned debtors and debtors in possession (the "**Debtors**").

      **PLEASE TAKE FURTHER NOTICE** that the Effective Date of the Plan occurred on [●], **2025**. Each of the conditions precedent to consummation enumerated in Article 11 of the Plan have been satisfied or waived in accordance with the Plan and Confirmation Order.

      **PLEASE TAKE FURTHER NOTICE** that the Bankruptcy Court has approved certain discharge, release, exculpation, injunction, and related provisions in Article 10 of the Plan.

      **PLEASE TAKE FURTHER NOTICE** that the Plan and its provisions are binding on the Debtors, Reorganized HGE, and any Holder of a Claim or an Interest and such Holder's respective successors and assigns, whether or not the Claim or the Interest of such Holder is Impaired under the Plan, and whether or not such Holder voted to accept the Plan.

      **PLEASE TAKE FURTHER NOTICE** that, pursuant to the Plan and the Confirmation Order, the deadline for filing requests for payment of Administrative Claims (other than Professional Fee Claims) shall be **5:00 p.m. prevailing Central Time on [●], 2026 (*i.e.*, thirty (30) days after the Effective Date)**, unless otherwise ordered by the Court.

      **PLEASE TAKE FURTHER NOTICE** that all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts and/or Unexpired Leases, pursuant to the Plan or Confirmation Order, if any, must be Filed with the Bankruptcy Court **by the later of thirty (30) days from** (i) the date of entry of an order of the Bankruptcy Court approving such rejection, (ii) the effective date of the rejection of such Executory Contract or Unexpired Lease, and (iii) the Effective Date. Any Claims arising from the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan and Confirmation Order that are not timely Filed will be disallowed automatically, forever barred from assertion, and shall not be enforceable against, as applicable, the Debtors, Reorganized HGE, or any of their respective assets and properties.

      **PLEASE TAKE FURTHER NOTICE** that, in accordance with the Confirmation Order, all final requests for payment of Professional Fee Claims shall be filed no later than **5:00 p.m. prevailing Central Time on [●], 2026 (*i.e.*, sixty (60) days after the Effective Date)**, unless otherwise ordered by the Court.

      **PLEASE TAKE FURTHER NOTICE** that the Plan and the Confirmation Order contain other provisions that may affect your rights. You are encouraged to review the Plan and the Confirmation Order in their entirety.

      **PLEASE TAKE FURTHER NOTICE** that the Plan and the Confirmation Order are available for inspection. If you would like to obtain a copy of the Confirmation Order or the Plan, you may contact Kurtzman Carson Consultants LLC dba Verita Global, the notice, claims, and

---

[2]    Capitalized terms used but not defined herein have the meanings ascribed to them in the Plan or the Confirmation Order, as applicable.

4930-9523-9804.1

solicitation agent retained by the Debtors in these Chapter 11 Cases, by: (a) calling the Debtors' restructuring hotline at (888) 7331431 (US/Canada toll free) or +1 (310) 751-2632 (international); (b) visiting the Debtors' restructuring website at: https://veritaglobal.net/higherground; or (c) emailing counsel for the Debtors at: Foley & Lardner LLP, 1144 15th Street, Suite 2200, Denver, CO 80202, Attn: Tim Mohan (tmohan@foley.com), and Foley & Lardner LLP, 1000 Louisiana Street, Suite 2000, Houston, Texas 77002, Attn: Nora McGuffey (nora.mcguffey@foley.com) and Quynh-Nhu Truong (qtruong@foley.com).. You may also obtain copies of any pleadings filed in these Chapter 11 Cases for a fee via PACER at: www.txnb.uscourts.gov.

DATED: [●], 2025                    Respectfully submitted by:

/s/
Holland N. O'Neil (TX 14864700)
Thomas C. Scannell (TX 24070559)
**FOLEY & LARDNER LLP**
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667
honeil@foley.com
tscannell@foley.com

-and-

Timothy C. Mohan (admitted *pro hac vice*)
**FOLEY & LARDNER LLP**
1144 15th Street, Suite 2200
Denver, CO 80202
Telephone: (720) 437-2000
Facsimile: (720) 437-2200
tmohan@foley.com

-and-

Nora J. McGuffey (TX 24121000)
Quynh-Nhu Truong (TX 24137253)
**FOLEY & LARDNER LLP**
1000 Louisiana Street, Suite 2000
Houston, TX 77002
Telephone: (713) 276-5500
Facsimile: (713) 276-5555
nora.mcguffey@foley.com
qtruong@foley.com

**COUNSEL TO DEBTORS
AND DEBTORS IN POSSESSION**

3

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on [●], 2025, a true and correct copy of the foregoing document was served electronically by the Court's PACER system.

*/s/ Nora J. McGuffey*
Nora J. McGuffey